UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR, ZAYA PERYSIAN, SAWYER SOE, CHASTAIN ANDERSON, DREW HALL, BELLA BOE, and REID SOLOMON-LANE, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:25-cv-10313-JEK |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PROCEED UNDER PSEUDONYM**

Plaintiffs Bella Boe and Sawyer Soe (collectively, the "Doe Plaintiffs") move to proceed under pseudonyms to protect their privacy and safety. Courts have repeatedly granted similar requests from similarly situated transgender and nonbinary plaintiffs in similar litigation.

Boe and Soe are a transgender woman and as a nonbinary person, respectively.[1] Both seek to renew their passports with the sex designation that reflects the sex they live and express themselves as. Plaintiffs bring this action for declaratory and injunctive relief arising out of the

---

[1] The other five plaintiffs in this action are not seeking to proceed under pseudonym even though they share many of Bella Boe's and Sawyer Soe's concerns about the impact of Defendants' actions on their privacy and safety. For purposes of being identified in this proceeding, however, those other plaintiffs are willing to proceed under their true names.

United States government's new arbitrary and unlawful policy, under which Defendants are refusing to issue passports to otherwise eligible Americans because they are transgender, intersex, or nonbinary—except on terms that expose them to grievous harms and violate their constitutional rights to equal protection, travel, privacy, and speech and flout the Administrative Procedure Act (the "APA").

Given the compelling privacy interests in this case, Doe Plaintiffs respectfully request that the Court allow them to proceed by using pseudonyms and redacting identifying information. Doe Plaintiffs wish to protect their privacy and safety and avoid exposure to discrimination and harassment. As transgender and nonbinary people, Doe Plaintiffs are members of a group subject to frequent discrimination, harassment, and even violence on account of their transgender or nonbinary status. Moreover, Doe Plaintiffs' transgender or nonbinary status is highly personal and involves private information and revealing it publicly without their consent would disclose sensitive medical information.

For the reasons set forth below, Doe Plaintiffs respectfully ask this Court for permission to bring this action using pseudonyms to safeguard their privacy and safety. Doe Plaintiffs have no objection, however, to providing the names they use to Defendants, their counsel, and the Court, under an appropriate protective order. Finally, in moving to proceed under pseudonyms, Plaintiffs do not intend to prevent the public from observing the proceedings or rulings of this Court under adequate protections, but only to prevent public disclosure of their identities.

**LEGAL STANDARD**

Courts in this Circuit "enjoy broad discretion" to allow parties to proceed under a pseudonym. *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 70 (1st Cir. 2022); *see id*. at 67–69 (explaining that presumption of public access does not foreclose use of pseudonym in civil litigation). To assess whether proceeding under a pseudonym is warranted, courts must balance "the interests asserted by the movant in favor of privacy against the public interest in transparency" considering the totality of the circumstances and any prejudice (or lack thereof) to the opposing party. *Id*. at 72. The First Circuit has identified four paradigmatic situations in which proceeding under a

pseudonym is appropriate, including when (1) there is a risk of "unusually severe harm"; (2) identifying the plaintiffs would harm "non-parties"; (3) it is "necessary to forestall a chilling effect on future litigants who may be similarly situated"; or (4) the lawsuit is "bound-up with a prior proceeding made confidential by law." *Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023). But courts have cautioned that these are "non-exhaustive 'paradigms,'" *Doe v. Del Toro*, 2024 WL 816511, at *2 (D. Mass. Feb. 27, 2024) (quoting *Mass. Inst. of Tech.*, 46 F.4th at 70–72), that are "rough cuts," and do not "capture the entire universe of cases in which pseudonymity may be appropriate," *Mass. Inst. of Tech.*, 46 F.4th at 72.

## ARGUMENT

The Court should grant Doe Plaintiffs' motion to proceed under pseudonym. Doe Plaintiffs' privacy and safety interests are strong because disclosing their identities and transgender and nonbinary status without their consent would inflict considerable harm. Allowing Doe Plaintiffs to proceed pseudonymously will result in no prejudice to Defendants because Doe Plaintiffs are not objecting to providing their names to Defendants (under appropriate confidentiality restrictions) or this Court. In addition, although not required, Doe Plaintiffs' circumstances satisfy the first and third paradigms from *MIT*: revealing Doe Plaintiffs' identities publicly would cause unusually severe psychological and emotional harm and have a chilling effect on other transgender and nonbinary people.

## I. Revealing Either Doe Plaintiff's Identity Would Cause Them Unusually Severe Harm.

Federal courts, including in this circuit, have recognized the inherently sensitive nature of a litigant's gender identity, and therefore have granted motions to proceed under a pseudonym brought by adult transgender litigants. *See, e.g., Doe v. United States*, No. 1:24-CV-11445-JEK, 2024 WL 4495107, at *2 (D. Mass. Oct. 15, 2024) (granting motion in a suit involving a transgender woman bringing an action against a United States Customs and Border Protection officer who allegedly subjected her to unwanted sexual contact while in custody); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (holding that "forced disclosure of a

transgender person's most private information"—that being "their transgender status"--violates "their constitutional right to informational privacy"); *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 72–73 (D.R.I. 1992) (granting motion in suit involving transgender-related healthcare coverage, listing other cases reaching the same result, and recognizing "the highly sensitive and personal nature of each person's sexuality" and the refusal to "strip plaintiff of the cloak of privacy which shields him"); *see also Doe v. Pa. Dep't of Corr.*, 585 F. Supp. 3d 797 (W.D. Pa. 2022) (granting nonbinary inmate's motion due to reasonable fear of severe harm and invasions of privacy, and finding anonymity would not materially impair public's right); *Doe v. Genesis Healthcare*, 535 F. Supp. 3d 335, 340 (E.D. Pa. 2021) (granting motion in employment dispute as plaintiff had kept transgender status confidential and faced threat of future harm; requiring disclosure would significantly deter similarly situated plaintiffs from litigating similar claims); *Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-cv-753, 2019 WL 2392958 at *4 (S.D. Ohio Jan. 30, 2019) (granting motion because "the information Doe seeks to protect is 'of the utmost intimacy' and … there continues to be a serious social stigma associated with transgender identity with the potential for harmful repercussions"); *Doe v. Trump*, No. 1:17-cv-1597, Dkt. 3 (D.D.C. Aug. 10, 2017) (granting transgender military members' motion); *Bd. of Educ. of the Highland Local School District v. U.S. Dep't of Educ.*, No. 2:16-cv-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016) (granting motion and listing cases allowing "non-minor transgender plaintiffs to proceed anonymously due to the social stigma associated with their gender identity.").

Other courts have also recognized that involuntary disclosure of a person's gender identity, which does not align with their sex assigned at birth, exposes individuals "to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez,* 305 F. Supp. 3d at 333; *see also Blue Cross*, 794 F. Supp. at 73 (noting that "in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure"); *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009) (shielding the publication of a transgender individual's name in seeking a court order regarding a

4

name change based upon threat to "personal safety in the event his transgender status is made public").

The stigma associated with being transgender or nonbinary means that public association with this lawsuit could subject Doe Plaintiffs to substantial harassment, severe mental harm, and even physical violence. Bella Boe is a transgender woman who was diagnosed with gender dysphoria in 2017.[2] Boe has lived as female in all aspects of her life since she was 11 years old. Boe is currently known only as female to her family, to staff and peers at her school, and in her communities in New Jersey and Cambridge. Sawyer Soe is a nonbinary person. Their sex assigned at birth was female, but they do not identify with a binary sex. The term "nonbinary" accurately captures their identity. Soe has lived as a nonbinary person in all aspects of their life since 2019. They have always known their gender identity to some degree, as they are naturally an androgynous person and that is typically how others perceive them. Due to the threat of harassment and violence faced by transgender and nonbinary people, both Boe and Soe carefully choose whom they decide to share this information with. *See* ECF No. 30.5 ¶ 8; ECF No. 30.9 ¶¶ 6-7. Both Boe and Soe have changed their state-issued driver's licenses, which has allowed them to live without fear of their gender identity being questioned when using those licenses. *See* ECF No. 30.5 ¶ 7*;* ECF No. 30.9 ¶ 7. This fear, however, has become exacerbated by the recent public discourse over transgender issues, which has become emotionally charged—and, in many cases, vitriolic. As stated by the Seventh Circuit, "[t]here is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity." *See Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017).

In addition to Doe Plaintiffs' desire to protect themselves from danger, Plaintiffs' claims necessarily involve the intimate, sensitive, and in some cases intensely private medical information

---

[2] Gender dysphoria is a medically recognized condition defined by a marked incongruence between a person's gender identity and the sex they were assigned at birth, when accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning. *See, e.g.*, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders: DSM-5-TR at 512–13 (2022).

5

and treatment. *See* ECF No. 30.5 ¶¶ 6-8; ECF No. 30.9 ¶ 11. Boe and Soe have an acute interest in keeping their medical information private. *See Doe*, 2024 WL 4495107, at *2 (allowing a transgender plaintiff to proceed under pseudonym because "disclosure of her identity would risk further exacerbating" her issues with "heightened her gender dysphoria" that lead to depression and anxiety); *Blue Cross & Blue Shield of R.I.*, 794 F. Supp. at 74 ("As a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion."). It would be psychologically devastating to both Boe and Soe if this information were to be publicly linked to their real names, to say nothing of the potential deleterious impact it could have on their ability to find employment in their desired fields or more specifically for Boe, the impacts that it could have on her higher education. *See* ECF No. 30.9 ¶ 6; ECF No. 30.5 ¶ 8.

Lastly, it would be paradoxical and unjust to require a plaintiff to subject themself to the very harms of discrimination and harassment they seek to prevent through litigation by requiring them to disclose their identity publicly against their will. *See Roe v. Ingraham*, 364 F. Supp. 536, 541 N.7 (S.D.N.Y. 1973) (explaining "If plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid"); *see also Doe v. O'Neill,* No. C.A. W.C. 86-354, 1987 WL 859818, at *2 (R.I. Super. Jan. 6, 1987).

Doe Plaintiffs' well-founded fears are based on the widespread misunderstanding of, and hostility towards, transgender and nonbinary persons, which has resulted in discrimination and harassment, as well as the prevalence of violence against transgender and nonbinary individuals. The threat of physical harm to transgender and nonbinary individuals due to the disclosure of their transgender or nonbinary status is real.[3] Based on the above, Doe Plaintiffs' fears that they will be

---

[3] *See e.g.* The National Center for Transgender Equality, *Injustice at Every Turn, A Report of the National Transgender Discrimination Survey* (2011), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf (last accessed Feb. 14, 2025); See, e.g., Human Rights Campaign Foundation, The Epidemic of Violence Against the Transgender & Gender-Expansive Community in the U.S.: The 2024 Report (Nov. 2024), https://reports.hrc.org/an-epidemic-of-violence-2024 (last accessed Feb. 6, 2025); The Trevor Project, The Mental Health and Well-being of LGBTQ (continued…)

exposed to an increased risk of discrimination, harassment, and even violence should their transgender or nonbinary status become publicly known are eminently reasonable, especially because the harm threatened is particularly severe. These circumstances are consistent with the first *MIT* paradigm. Revealing the identity of the Doe Plaintiffs would undoubtably pose "a risk of retaliatory physical or mental harm." *See Mass. Inst. of Tech.*, 46 F.4th at 71.

## II.     Revealing Plaintiffs' Identity Risks a Chilling Effect on Similarly Situated Individuals.

Allowing Doe Plaintiffs to proceed pseudonymously is independently necessary to forestall a chilling effect on future litigants who may be similarly situated. *See Mass. Inst. of Tech.*, 46 F.4th at 71. The First Circuit has explained that a deterrence concern typically arises in cases involving "intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors." *Id.* (citing *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). One's gender identity is "among the most intimate parts of one's life." *See Blue Cross & Blue Shield of R.I.*, 794 F. Supp. at 74.

This case implicates multiple of the "intimate issues" the First Circuit identified as creating a deterrence concern, including: bodily autonomy and medical concerns. *See id.* Doe Plaintiffs' fears of being outed in the process of vindicating their rights under the U.S. Constitution—and having their medical diagnoses, treatments, and their need for bodily autonomy laid bare—is so palpable that they would have to consider dropping their claims against Defendants should this motion be denied. *See* ECF No. 30.5 ¶ 8; ECF No. 30.9 ¶ 7. Plaintiffs would not be alone in having to weigh their desire in vindicating their constitutional rights against the danger of being publicly exposed. While some individuals may be willing to undertake the risks of proceeding publicly in a case of this nature but not the risks presented by having to show a passport to officials, including officials in other countries, many (including Plaintiffs Boe and Soe) are not willing to be identified as plaintiffs in a lawsuit like this one in light of the vitriolic public discourse over

---

Youth who are Intersex at 4 (2021), https://www.thetrevorproject.org/wp-content/uploads/2021/12/Intersex-Youth-Mental-Health-Report.pdf (last accessed Feb. 6, 2025).

transgender and nonbinary issues, the documented incidents of transgender and nonbinary individuals being victimized in hate crimes, and the exposure to additional anguish not already caused by gender dysphoria and that can exacerbate that condition.  Without sufficient confidentiality, these factors will inevitably deter individuals similarly situated to Sawyer Soe and Belle Boe from litigating.

### III.     Granting Doe Plaintiffs' Motion Will Not Prejudice Defendants.

Defendants will suffer no prejudice from Doe Plaintiffs proceeding under pseudonyms. *See Mass. Inst. of Tech.*, 46 F.4th at 71 (explaining that denial for prejudice is "rare" and requires showing of "prospect of serious prejudice").  Doe Plaintiffs' request is narrowly tailored: it does not affect any aspect of the case other than revealing two Plaintiffs' identities widely to the public.

Second, the fact that each Defendant in this action is either a government entity or official weighs in favor of leave to proceed under a pseudonym. *See, e.g., E.W. v. N.Y. Blood. Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity … the plaintiff's interest in proceeding anonymously is considered particularly strong.").  This is because the plaintiff "presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights," while "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *Id.; see also Doe v. U.S. Dep't of State*, No. 1:15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015).  As such, the fact that Plaintiffs here sue only governmental defendants weighs in favor of allowing them to proceed using pseudonyms.

### CONCLUSION

In short, forcing Doe Plaintiffs to use their real names would expose their private medical information and subject them to intolerable risks of harassment, and severe mental and physical harm.  Conversely, by pursing this case under pseudonyms, Plaintiffs would be able to vindicate their constitutional rights in court without detracting from Defendants' ability to litigate this case or from the public's ability to appreciate the issues at stake.

For the foregoing reasons, Doe Plaintiffs respectfully request that their Motion to Proceed Under Pseudonyms be granted.

<div style="text-align: center;">Respectfully submitted,</div>

February 19, 2025

<div style="margin-left: 3em;">

*/s/ Isaac D. Chaput*
Isaac D. Chaput (*pro hac vice*)
William P. Kasper (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
ichaput@cov.com
wkasper@cov.com

Jessie J. Rossman (BBO # 670685)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: 617-482-3170
jrossman@aclum.org

Jon W. Davidson (*pro hac vice*)
   (admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
   (admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso  (*pro hac vice pending*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org

</div>

Aditi Fruitwala (*pro hac vice pending*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: 202-662-5891
Facsimile: 202-778-5891
jothompson@cov.com
sbender@cov.com

Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212-841-1000
Facsimile: 212-841-1010
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF).

*/s/ Isaac D. Chaput*
Isaac D. Chaput