# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR, *et al.*, | Case No. 1:25-cv-10313-JEK |
| *Plaintiffs*, | |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

    A.    Plaintiffs ................................................................................................. 3

    B.    Gender Identity ...................................................................................... 6

    C.    The Passport Policy................................................................................ 7

    D.    Procedural History ................................................................................. 8

III.  ARGUMENT ...................................................................................................... 8

    A.    Legal Standard ....................................................................................... 8

    B.    The Proposed Classes Satisfy Rule 23(a). ............................................ 9

        1.    Both Proposed Classes Are Sufficiently Numerous.................................... 9

        2.    Both Proposed Classes Present Common Questions of Law and Fact........................................................................................... 10

        3.    Each Named Plaintiff's Claims Are Typical of Those of the Class Members. ........................................................................... 14

        4.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes................................................................ 16

    C.    Both Proposed Classes Also Meet the Requirements of Rule 23(b)(2). ............... 19

    D.    The Court Should Appoint Plaintiffs' Attorneys as Class Counsel....................... 19

IV.   CONCLUSION................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................19

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..............................................................................................9, 10

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)...................................................................................17

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008)....................................................................15, 16, 17

*DeRosa v. Mass. Bay Commuter Rail Co.*,
    694 F. Supp. 2d 87 (D. Mass. 2010) .......................................................................19

*Diggs v. Mici*,
    2024 WL 4425654 (D. Mass. Sept. 30, 2024) ..........................................................9

*Does 1-10 v. Univ. of Wash.*,
    2020 WL 5526679 (W.D. Wash. Sept. 15, 2020)..............................................13, 14

*Flack v. Wis. Dep't of Health Servs.*,
    331 F.R.D. 361 (W.D. Wis. 2019)...........................................................................12

*Fleming v. Select Portfolio Servicing*,
    342 F.R.D. 361 (D. Mass. 2022)..............................................................................10

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)................................................................................9, 10

*Harris v. Rainey*,
    299 F.R.D. 486 (W.D. Va. 2014)...............................................................................1

*Knox v. Westly*,
    2006 WL 3147683 (E.D. Cal. Nov. 1, 2006)..........................................................14

*LaMarche v. Mayorkas*,
    2024 WL 2502929 (D. Mass. May 22, 2024)............................................................9

*MacNamara v. City of New York*,
    275 F.R.D. 125 (S.D.N.Y. 2011) .............................................................................14

*Maldonado v. Houstoun*,
    177 F.R.D. 311 (E.D. Pa. 1997)...............................................................................13

*Matamoros v. Starbucks Corp.*,
   699 F.3d 129 (1st Cir. 2012).........................................................................15

*McCuin v. Sec'y of Health & Hum. Servs.*,
   817 F.2d 161 (1st Cir. 1987)...........................................................................8

*McLaughlin v. Liberty Mut. Ins. Co.*,
   224 F.R.D. 304 (D. Mass. 2004)...............................................................15, 16

*Monroe v. Meeks*,
   335 F.R.D. 201 (S.D. Ill. 2020) ....................................................................13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)..............................................................................10

*Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*,
   934 F.3d 13 (1st Cir. 2019)............................................................................11

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003).............................................................14, 15, 16

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988)....................................................................16

*Raposo v. Garelick Farms, LLC*,
   293 F.R.D. 52 (D. Mass. 2013).......................................................................11

*Savino v. Souza*,
   453 F. Supp. 3d 441 (D. Mass. 2020) .............................................................19

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003)............................................................................8

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) .....................................................................12

*Swack v. Credit Suisse First Bos.*,
   230 F.R.D. 250 (D. Mass. 2005).....................................................................9

*Swanson v. Univ. of Haw. Pro. Assembly*,
   269 F. Supp. 1252 (D. Haw. 2003).................................................................14

*Toomey v. Arizona*,
   2020 WL 2465707 (D. Ariz. May 12, 2020) ...................................................12

*Unknown Parties v. Johnson*,
   163 F. Supp. 3d 630 (D. Ariz. 2016) ..............................................................13

*Vara v. DeVos*,
    2020 WL 3489679 (D. Mass. June 25, 2020) .......................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................................9, 10, 19

**Statutes and Rules**

5 U.S.C. §§ 551 *et seq.* ..................................................................................................1, 2, 11

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

5 Moore's Federal Practice § 23.24[4] ..............................................................................15

Newberg and Rubenstein on Class Actions § 3:7 (6th ed.) ...........................................9

## I.  INTRODUCTION

Defendants have enacted a policy imposing a definition of "sex" that affects every person in the country in the same way: Americans can only obtain passports that match their sex as this Administration defines it.  That means Defendants' Passport Policy (the "Passport Policy" or the "Policy") has the uniform effect of denying usable passports to all individuals whose lived experience is different from their sex as defined by Executive Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (the "Executive Order") or by the State Department.  All individuals who wish to obtain a passport with an "F" or "M" sex designation that is different from their sex assigned under those definitions are unable to do so.  And all individuals who wish to obtain a passport with an "X" sex designation—because they were not assigned a sex designation at birth, do not identify as either or exclusively "Female" or "Male," or do not wish to disclose their sex assigned at birth—are similarly unable to do so.  Defendants inflict the same constitutional and statutory injuries across each class—violating the constitutional guarantees of equal protection, privacy, the right to travel, and free speech, and the protections of the Administrative Procedure Act ("APA").  Defendants have therefore "acted or refused to act on grounds that apply generally to the [two] class[es]," Fed. R. Civ. P. 23(b)(2), their Policy has a uniform impact on each of the two classes, and resolution of these claims will be driven by the same answers to common questions.  The Court should accordingly certify the two classes under Rule 23(b)(2).[1]

Plaintiffs Ashton Orr, Zaya Perysian, Chastain Anderson, Drew Hall, Bella Boe, Reid Solomon-Lane, Viktor Agatha, David Doe, AC Goldberg, and Chelle LeBlanc are individuals who

---

[1] Plaintiffs request that the Court order no plaintiff in *Schlacter, et al. v. U.S. Dep't of State, et al.*, 1:25-cv-01344 (D. Md. filed Apr. 25, 2025), currently pending before the U.S. District Court for the District of Maryland, be included in either class, at the request of the *Schlacter* plaintiffs' counsel.  *See, e.g.*, *Harris v. Rainey*, 299 F.R.D. 486, 498 (W.D. Va. 2014).

currently want, or in the future will want, U.S. passports with an "F" or "M" sex designation that does not match how their sex is defined by the Passport Policy. These Plaintiffs therefore seek to represent a class of similarly situated individuals—the "M/F Designation Class." Plaintiffs Sawyer Soe and Ray Gorlin are individuals who currently want, or in the future will want, U.S. passports with an "X" sex designation consistent with their gender identity being neither or not exclusively female or male, or because of their choice not to disclose their sex assigned at birth. These Plaintiffs seek to represent a class of similarly situated individuals—the "X Designation Class."[2]

The proposed classes readily satisfy the requirements of Rule 23(a). Numerosity is satisfied: according to the Williams Institute, there are approximately 1.6 million Americans who are transgender, and there are approximately 1.2 million Americans who identify as nonbinary. Decl. of Sarah Corathers (Feb. 18, 2025) ("Corathers Decl.") ¶¶ 48–49. And United Nations estimates suggest there are as many as 5.6 million intersex people in the United States. *Id.* ¶ 34.

All proposed class members suffer a common injury. Members of both classes are currently unable to secure passports with their requested sex designation. M/F Designation Class members are being improperly denied the ability to obtain U.S. passports with sex designations that match their lived experience. *See* Am. Compl. ¶¶ 9–10. This subjects them all to the same violations of the Constitution and federal law. *See id.* X Designation Class members are being denied the ability to obtain U.S. passports with an "X" designation consistent with their lived identity, or their choice not to disclose their sex assigned at birth, all also in violation of the Constitution and federal law. *See id.* Each class thus raises common questions that will yield common answers, including whether the Policy unconstitutionally violates equal protection, the rights of privacy, travel, and free speech, and the APA. *Id.* ¶ 276. Further, the Named Plaintiffs'

---

[2] The representatives of the classes are together referred to as the "Named Plaintiffs."

legal claims are typical of the claims of those individuals whom they seek to represent. *Id.* ¶ 277. Plaintiffs and the putative class members all face the same injury: the inability to obtain a passport bearing a sex designation that aligns with their gender identity or that has an "X" designation, respectively, which is based on the same government practice—the Executive Order and the State Department's related Policy. *See* Perysian Decl. ¶ 11; Amended Decl. of Ashton Orr ("Am. Orr Decl.") ¶ 12; Anderson Decl. ¶ 11; Gorlin Decl. ¶ 10; Amended Decl. of Drew Hall ("Am. Hall Decl.") ¶ 12; Goldberg Decl. ¶¶ 16–18; Soe Decl. ¶ 11; Amended Decl. of Reid Solomon-Lane ("Am. Solomon-Lane Decl.") ¶¶ 11–12; Agatha Decl. ¶ 13; Doe Decl. ¶¶ 14–16; Amended Decl. of Bella Boe ("Am. Boe Decl.") ¶ 13; LeBlanc Decl. ¶¶ 12–15. The Named Plaintiffs will fairly and adequately protect the interests of the classes and have no conflicts with absent class members. In addition, proposed class counsel have many decades of combined practice and significant expertise litigating class actions and representing transgender clients. *See* Am. Compl. ¶ 278. Finally, both proposed classes satisfy Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the entirety of each class.

## II.  FACTUAL BACKGROUND

### A.    Plaintiffs

Ashton Orr is a transgender man. Am. Orr Decl. ¶ 5. On January 16, 2025, Ashton filed a passport renewal application and requested a passport with an "M" sex designation. *Id.* ¶ 12. On March 27, 2025, Ashton received a replacement passport with an "F" sex designation. *Id.* ¶ 14. Ashton is a proposed representative of the M/F Designation Class.

Zaya Perysian is a transgender woman. Perysian Decl. ¶ 4. On January 23, 2025, Zaya submitted an expedited application to change the sex designation on her passport from "M" to "F." *Id.* ¶ 10. On January 28, 2025, her passport was returned to her with a male sex designation and a notice stating: "the date of birth, place of birth, name, or sex was corrected on your passport

3

application," with "sex" circled in red.  The stated reason was "to match our records."  *Id.* ¶¶ 11–12.  Zaya is a proposed representative of the M/F Designation Class.

Chastain Anderson is a transgender woman.  Anderson Decl. ¶¶ 3–5.  On December 27, 2024, Chastain sent her passport in for expedited processing to have the sex designation on her passport changed from "M" to "F."  *Id.* ¶ 10.  On February 14, 2025, Chastain's passport was returned to her through the mail with an "M" sex designation rather than an "F" as she had requested.  *Id.* ¶ 11.  Chastain is a proposed representative of the M/F Designation Class.

Drew Hall identifies as a nonbinary femme person.  Am. Hall Decl. ¶ 7.  On January 9, 2025, Drew sent their passport in to have their name changed to reflect their current name and to have the sex designation on their passport changed from "M" to "F."  *Id.* ¶ 12.  On February 11, 2025, Drew received an email from the State Department stating that their passport application was approved and that they would receive their new passport on February 17.  *Id.*  When Drew's passport was returned on February 19, 2025, it contained an "M" marker instead of the requested "F" marker.  *Id.*  Drew is a proposed representative of the M/F Designation Class.

Bella Boe is a transgender woman.  Am. Boe Decl. ¶¶ 5–6.  On January 23, 2025, Bella submitted her passport, which had an "F" designation on it, for renewal by the State Department.  *Id.* ¶ 13.  On February 26, 2025, Bella received a new passport with an "M" sex designation instead of the "F" sex designation from the passport she had submitted.  *Id.*  Bella is a proposed representative of the M/F Designation Class.

Reid Solomon-Lane is a transgender man.  Am. Solomon-Lane Decl. ¶ 5.  Reid's U.S. passport currently reflects an accurate name and male sex designation and expires in 2028.  *Id.* ¶ 11.  Reid is a proposed representative of the M/F Designation Class.

Sawyer Soe is a nonbinary person, which means they do not identify with a binary sex. Soe Decl. ¶ 5. Sawyer seeks to renew their expired passport, and to obtain an "X" designation. *Id.* ¶¶ 9–11. Sawyer is a proposed representative of the X Designation Class.

Viktor Agatha is a transgender man, intersex, and comfortable being referred to by many pronouns. Agatha Decl. ¶ 5. Based on the information reflected on his original birth certificate, he expects that the State Department will issue him a passport with an "F" sex designation when he requests a renewal. *Id.* ¶ 13. Viktor is a proposed representative of the M/F Designation Class.

David Doe is a transgender man. Doe Decl. ¶ 5. David applied to renew his passport in February 2025, and, on March 21, 2025, he received his renewed passport back, but with an "F" sex designation. *Id.* ¶¶ 11–12. On approximately April 17, 2025, David received a letter stating that the "sex" was changed on his passport "to match [his] biological sex at birth." *Id.* ¶ 13. David is a proposed representative of the M/F Designation Class.

AC Goldberg is a transgender man and is also intersex. Goldberg Decl. ¶ 5. AC's current passport contains an "M" sex designation and expires in February 2027. *Id.* ¶ 12. AC is a proposed representative of the M/F Designation Class.

Ray Gorlin is a nonbinary person. Gorlin Decl. ¶ 5. Their current passport expires in November 2027; that passport has an "F" sex designation but Ray wishes to obtain a replacement with an "X" sex designation. *Id.* ¶ 10. Ray is a proposed representative of the X Designation Class.

Chelle LeBlanc is a transgender woman. LeBlanc Decl. ¶ 5. She applied to renew her passport and update the sex designation on her passport from "M" to "F" on January 19, 2025. *Id.* ¶ 9. Her renewed passport was issued on February 12, 2025 with an "M" sex designation. *Id.* ¶ 10. Chelle is a proposed representative of the M/F Designation Class.

### B.     Gender Identity

As explained in the accompanying declaration of endocrinologist Dr. Sarah Corathers, "gender identity" refers to a person's core, internal sense of belonging to a particular sex. Corathers Decl. ¶ 40.  "Sex" refers to multiple physiologic attributes, such as chromosomal and hormonal makeup, anatomy, secondary sex characteristics, and gender identity.  *Id.* ¶ 18.  "Sex assigned at birth" refers to the designation of sex generally noted on a birth certificate shortly after birth, almost always based solely on the appearance of an infant's external genitalia.  *Id.* ¶¶ 24, 26. A person's gender identity is an essential part of their identity and often informs how they will be identified by others more accurately than their sex assigned at birth.  *Id.* ¶ 42.  Because of this, a person's gender identity is the most important and accurate characteristic for determining what sex designation should be on their passport.  *Id.*

As Dr. Corathers explains, the American Medical Association, the American Psychiatric Association, and dozens of other major medical professional associations all concur that "variations in . . . gender identity are a normal part of human development" and "research and experience shared by scholars, clinicians, and patients have shown that . . . efforts [to change someone's gender identity have not succeeded] and are harmful."  *Id.* ¶ 44.  Transgender people have a gender identity different from their sex assigned at birth.  *Id.* ¶ 48.  "Nonbinary" people have a gender identity that is neither exclusively male nor exclusively female.  *Id.* ¶ 49.  The term "intersex" describes a wide range of natural bodily variations.  *Id.* ¶ 33.  Intersex people are born with sex characteristics that do not fit binary notions of bodies designated "male" or "female."  *Id.* Intersex variations include variations in chromosomes, external genitals, internal reproductive organs, and/or hormone production.  *Id.*  Intersex traits may be discovered at birth, at puberty, or not at all.  *Id.*  Some intersex people do not produce either the "large reproductive cell" or "small

reproductive cell"—ovum and sperm—that are at the core of the definitions of female and male in the Executive Order. *Id.* ¶ 32.

### C.    The Passport Policy

On January 20, 2025, President Trump issued the Executive Order that sets forth definitions of sex that rely on inaccurate descriptions of biology. *See* Corathers Decl. ¶¶ 28–29. In doing so, the Executive Order effectively denies the existence of transgender, intersex, and nonbinary people. Implementing the Executive Order's directive, Secretary Rubio ordered the State Department to integrate these definitions of sex into the issuance and renewal of passports. As widely reported, in a State Department cable (the "Cable"), Secretary Rubio declared that "[t]he policy of the United States is that an individual's sex is not changeable" and that "sex, and not gender, shall be used" on passports. Decl. of Isaac Chaput (Feb. 18, 2025) ("Chaput Decl."), Ex. A. Secretary Rubio ordered State Department agency staff to "suspend any application where the applicant is seeking to change their sex maker" and "suspend any application requesting an 'X' sex marker." *Id.* Shortly after the Cable was issued, the State Department removed existing passport application forms, DS-11, DS-82, and DS-5504, from its website and replaced them with older, expired versions of the documents that do not permit self-selection of one's sex designation on a passport or an "X" sex designation. *Compare id.*, Exs. M, N, O, *with id.*, Exs. P, Q, R.

The Policy was implemented immediately: by January 28, 2025, the State Department issued transgender people—including some Plaintiffs—passports with sex designations reflecting the Policy's sex definitions, rather than the designation sought by applicants. *See, e.g.*, Perysian Decl. ¶ 11; Anderson Decl. ¶ 11; Am. Orr Decl. ¶ 14; Doe Decl. ¶¶ 11–12; LeBlanc Decl. ¶ 10. The State Department suspended others' applications pending review. On February 8, 2025, the State Department issued a directive (the "Directive") ordering all passport issuances and renewals to comply with the Executive Order. *See* Chaput Decl., Ex. I. The State Department updated its

website on February 12, 2025 to state that, pursuant to the Executive Order, it "will only issue passports with an M or F sex marker that match the customer's biological sex at birth" and "will no longer issue U.S. passports . . . with an X marker." *Id.*, Ex. H.  Several Plaintiffs have received passports with the wrong sex designation, while others are unable to apply for a new passport or renew their passport with the correct sex designation.  *See, e.g.*, Perysian Decl. ¶ 11; Anderson Decl. ¶ 11; Am. Orr Decl. ¶ 14; Doe Decl. ¶¶ 11–12; LeBlanc Decl. ¶ 10; *see also* Agatha Decl. ¶ 13; Goldberg Decl. ¶ 17; Gorlin Decl. ¶ 10.

### D.    Procedural History

President Trump issued the Executive Order on January 20, 2025.  The original Complaint, on behalf of seven Plaintiffs, was filed less than three weeks later, on February 7, 2020.  ECF No. 1.  Promptly thereafter, Plaintiffs filed their Motion for Stay of Administrative Action and for Preliminary Injunction ("Motion for Preliminary Injunction"), along with two expert declarations, declarations from each original named Plaintiff, and 19 fact exhibits.  ECF Nos. 31–33.  After this Court granted Plaintiffs' Motion for Preliminary Injunction in part, ECF No. 74, Plaintiffs filed the First Amended Complaint, clarifying certain facts and claims and adding five Plaintiffs: AC Goldberg, Chelle LeBlanc, David Doe, Ray Gorlin, and Viktor Agatha.  ECF No. 76.  This Motion for Class Certification followed.

## III. ARGUMENT

### A.    Legal Standard

This Court has "broad discretion to grant" class certification.  *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).  Before certifying a class, the Court must evaluate whether the named plaintiffs seeking class certification have satisfied their burden of proving all elements of Rule 23(a) and one Rule 23(b) requirement.  *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).  Rule 23(a) requires the plaintiff to establish that: (1) "the

class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)–(4); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).[3]

Once a plaintiff has established that the proposed class meets the requirements of Rule 23(a), they must show that each putative class meets one of the requirements of Rule 23(b).  *See Dukes*, 564 U.S. at 345.  Here, class certification is appropriate under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final [equitable] relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

While the Court may need to grapple some with Plaintiffs' underlying claims, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant" to the Rule 23 analysis.  *LaMarche v. Mayorkas*, 2024 WL 2502929, at *4 (D. Mass. May 22, 2024) (quoting *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).  This Court is not required to conduct a "mini-trial" on the merits of plaintiffs' claims to certify a class.  *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 257 (D. Mass. 2005).

**B.    The Proposed Classes Satisfy Rule 23(a).**

**1.    Both Proposed Classes Are Sufficiently Numerous.**

"Numerosity is a 'low threshold.'"  *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but

---

[3] The First Circuit has held that ascertainability is not required where, as here, plaintiffs seek to certify a Rule 23(b)(2) class.  *See, e.g.*, *Diggs v. Mici*, 2024 WL 4425654, at *3 n.1 (D. Mass. Sept. 30, 2024) ("Ascertainability does not apply to classes seeking injunctive or declaratory relief under Rule 23(b)(2).") (citations omitted); *see also* Newberg and Rubenstein on Class Actions § 3:7 (6th ed.) ("ascertainability" not required for 23(b)(2) classes in the First Circuit).

generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Fleming v. Select Portfolio Servicing*, 342 F.R.D. 361, 365 (D. Mass. 2022) (citing *Garcia-Rubiera*, 570 F.3d at 460).

Each proposed class here numbers potentially in the millions: there are approximately 1.6 million people in the United States who identify as transgender. Corathers Decl. ¶ 48. Additionally, more than 1.2 million Americans identify as non-binary. *Id.* ¶ 49. Moreover, according to estimates by the United Nations, there are potentially as many as 5.6 million intersex people in the United States. *Id.* ¶ 34. Many of those people want and need to obtain passports with a sex designation that the State Department refuses to issue them under the Policy and therefore fall within one of the proposed classes. Chaput Decl., Ex. H; *see also* Decl. of Ayden Scheim (Feb. 18, 2025) ("Scheim Decl.") ¶ 17. Each proposed class exceeds the 40-person general rule, making joinder of the putative class members as individual plaintiffs impracticable and satisfying numerosity. *See Garcia-Rubiera*, 570 F.3d at 460.

### 2. Both Proposed Classes Present Common Questions of Law and Fact.

A common question is one that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single [common] question will do[.]" *Id.* at 359 (quotations omitted). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *See Fleming*, 342 F.R.D. at 365 (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008)). A common question need not be one that "will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Rather, it must present a question whose resolution will settle an issue that is central to the validity of each one of the claims. *Dukes*, 564 U.S. at 350.

Here, the State Department has implemented a policy that applies to all class members in the same way: it prohibits all people from having on their passport a sex designation different from that mandated by the Policy. The Policy raises questions of law and fact common to the classes, including whether the Policy violates the APA and plaintiffs' constitutional rights to equal protection, travel, privacy, and free speech. And all plaintiffs seek the same relief: vacatur and an injunction of the Policy.

Therefore, common questions will drive resolution of Plaintiffs' claims.

> a)     Common Questions to Resolve APA Claims.

Courts in this District have certified classes under Rule 23(b)(2) seeking resolution of APA claims alleging that an executive department's policies were arbitrary and capricious, without observance of procedure required by law, or otherwise not in accordance with law. *See, e.g.*, *Vara v. DeVos*, 2020 WL 3489679, at *16–17 (D. Mass. June 25, 2020) (holding that varying default statuses in putative class of student loan borrowers were "immaterial to class-wide resolution of plaintiffs' [APA] claims"). Questions of whether the Policy is arbitrary and capricious, against procedural law, and otherwise unconstitutional such that it should be vacated under the APA will "resolve . . . issue[s] that [are] central to the validity" of Plaintiffs' APA claims and turn on common proof. *Id.* at 15 (quoting *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13, 28 (1st Cir. 2019)); *see also DeVos*, 2020 WL 3489679, at *16 (listing as sufficiently common questions both whether the Education Secretary's loan relief denials lacked a reasoned decision under the APA, and whether the denials were arbitrary and capricious under the APA). Answering these common questions will "drive the resolution of the litigation." *Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 56 (D. Mass. 2013).

    b)  Common Questions to Resolve Equal Protection Claims.

   Whether transgender, nonbinary, or intersex individuals have been denied equal protection by a "uniformly enforced . . . policy" is a question that courts have determined can be resolved on a class-wide basis. *See, e.g.*, *Flack v. Wis. Dep't of Health Servs.*, 331 F.R.D. 361, 369 (W.D. Wis. 2019); *see also Toomey v. Arizona*, 2020 WL 2465707, at *2–4 (D. Ariz. May 12, 2020) (finding that "facial challenge to [Arizona's] 'gender reassignment surgery' exclusion under Title VII and the Fourteenth Amendment Equal Protection Clause" presented the "same" issues "for all class members" so "the commonality prerequisite [was] satisfied"). Additional questions that can be resolved on a class-wide basis include: (1) whether the Policy is a sex-based classification; (2) whether transgender status is a quasi-suspect classification; (3) whether a heightened level of constitutional scrutiny applies to the challenged government action, and, if so, whether the government's conduct satisfies that heightened scrutiny; and (4) whether the Policy as applied to passports is motivated by impermissible animus. Courts routinely find similar questions "common" for purposes of equal protection claims. *See, e.g.*, *Flack*, 331 F.R.D. at 369 (holding that issues of whether the challenged health policy violated the Equal Protection clause, whether the policy warranted heightened scrutiny because of "sex-based distinctions," and whether transgender status was a quasi-suspect class warranting heightened scrutiny were all common questions warranting certification).

    c)  Common Questions to Resolve the Claims Under Fifth Amendment Due Process Rights to Travel and Privacy.

   Denials of substantive due process rights under the Fifth Amendment are questions that can be resolved on a class-wide basis. *See, e.g.*, *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1193, 1197 (10th Cir. 2010) (typicality and commonality requirements were met when plaintiffs demonstrated they "shared [a] risk of being subjected to the purportedly unconstitutional

practices," which included plaintiffs' right to privacy); *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 636 (D. Ariz. 2016) (putative class of civil immigration detainees challenging conditions of detention presented common facts on Fifth Amendment due process claims).

As with Plaintiffs' other constitutional claims, numerous factual and legal issues on Plaintiffs' Fifth Amendment claims can be resolved on a class-wide basis. For example, examination of the right to travel claim will require determination of whether the burden on Plaintiffs' right to travel is an actionable restriction of that right and whether Defendants have put forward a sufficient need to restrict the right. *See, e.g.*, *Maldonado v. Houstoun*, 177 F.R.D. 311, 320–21 (E.D. Pa. 1997) (finding commonality where "Plaintiffs . . . have alleged . . . numerous questions of fact and law, [such as] whether the multi-tier durational residency requirement violates plaintiffs' and proposed class members' fundamental right to travel and migrate interstate"). Plaintiffs' privacy claims will depend on a determination of whether forced disclosure of one's sex assigned at birth is an invasion of the right to privacy. Plaintiffs and members of either putative class might have slight differences in *how* their identity differs from their sex as defined in the Policy. But in similar class actions, courts have found that "[a]ny dissimilarities among the proposed class members will not impede the generation of common answers in this case." *Monroe v. Meeks*, 335 F.R.D. 201, 205–06 (S.D. Ill. 2020) (differences among class of gender dysphoria patients were insufficient to prevent certification of claim of constitutionally inadequate medical care); *Does 1-10 v. Univ. of Wash.*, 2020 WL 5526679, at *7 (W.D. Wash. Sept. 15, 2020) (finding commonality where "[a]ll class members have personally identifying information in the documents at issue and assert that their . . . privacy rights will be violated if this information is released").

d)      Common Questions to Resolve Free Speech Claims.

First Amendment claims can provide common questions when a government official advances a policy that forces plaintiffs to state something contrary to their views. *See, e.g.*,

*Swanson v. Univ. of Haw. Pro. Assembly*, 269 F. Supp. 1252, 1256 (D. Haw. 2003) (noting certification of class in lawsuit involving claims of compelled speech); *see also Knox v. Westly*, 2006 WL 3147683, at *1–2 (E.D. Cal. Nov. 1, 2006) (certifying class with compelled speech claims described in an earlier order (2006 WL 2374763, at *1 (E.D. Cal. Aug. 16, 2006))).

The Policy forces members of both the M/F Designation Class and the X Designation Class to disclose their sex assigned at birth to the Government when applying for a passport and when presenting their passport to border agents and other individuals or entities requiring passport checks. Factual and legal issues on Plaintiffs' First Amendment claim that are common to all putative class members and capable of class-wide resolution include: (1) whether the sex designation on a passport or passport application is personal or government speech; (2) whether forced disclosure of sex assigned at birth on a passport or passport application is compelled speech; and (3) whether the Policy is narrowly tailored to serve a compelling government interest. These questions are similar to questions that other courts have found to be common to the members of classes alleging violations of the First Amendment. *See, e.g.*, *MacNamara v. City of New York*, 275 F.R.D. 125, 149 (S.D.N.Y. 2011) (concluding common questions included whether plaintiff protestors' post-Republican National Convention "detainment violated the First, Fourth, or Fourteenth Amendments"); *Univ. of Wash.*, 2020 WL 5526679, at *7 (finding commonality as to the question of "whether the release of their personally identifying information in response to the PRA requests . . . violated" the First Amendment).

### 3. Each Named Plaintiff's Claims Are Typical of Those of the Class Members.

The "typicality" requirement goes hand-in-hand with "commonality" and is focused on the congruence between the particular claims of the named class representatives and the generalized claims that are common to the class. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D.

Mass. 2003). "The typicality requirement is not highly demanding" because "the claims only need to share the same essential characteristics and need not be identical." *Id.* (quoting 5 Moore's Federal Practice § 23.24[4]); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("perfect symmetry of interest is not required" for typicality). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Goodyear Tire*, 216 F.R.D. at 26. In both classes, each proposed class member, including the proposed class representatives, faces the same injury: for the M/F Designation Class, the inability to obtain a passport bearing a sex designation that aligns with their gender identity, and, for the X Designation Class, the inability to obtain an "X" designation. And for both classes, this common injury stems from the same government Policy. *See, e.g.*, Perysian Decl. ¶ 11; Am. Orr Decl. ¶¶ 12–13; Anderson Decl. ¶ 11; Agatha Decl. ¶ 13; Doe Decl. ¶¶ 11–12; Soe Decl. ¶ 11; Am. Boe Decl. ¶ 13; Am. Hall Decl. ¶ 12; Am. Solomon-Lane Decl. ¶ 12; LeBlanc Decl. ¶ 15; Gorlin Decl. ¶ 13; Goldberg Decl. ¶¶ 16–18. Plaintiffs' claims therefore "arise from the same course of conduct that gave rise to the claims of the absent members." *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 310 (D. Mass. 2004). Under the Policy, the Named Plaintiffs' injuries are typical of the class: they have received or will be issued an unusable passport that exposes them to serious threats of harm, harassment, and discrimination. *See, e.g.*, Scheim Decl. ¶¶ 22–24; Corathers Decl. ¶ 82; *see also* Am. Orr Decl. ¶¶ 7, 13–14; Am. Boe Decl. ¶¶ 13–14; Anderson Decl. ¶ 13; Doe Decl. ¶¶ 15–16; Soe Decl. ¶ 7; Goldberg Decl. ¶ 14; Am. Solomon-Lane Decl. ¶¶ 11–12; Agatha Decl. ¶ 13; Gorlin Decl. ¶ 14; Am. Hall Decl. ¶¶ 13–15; Agatha Decl. ¶ 14; LeBlanc Decl. ¶ 10.

Any factual differences that might exist between the Named Plaintiffs and the class members they seek to represent do not undermine or defeat typicality. *See Goodyear Tire*, 216 F.R.D. at 24–26 (typicality is "not highly demanding because the claims only need to share the same essential characteristics, and need not be identical"). In the M/F Designation Class, Plaintiffs are individuals whose gender identity does not align with their sex as defined by the Policy. In the X Designation Class, Plaintiffs are individuals who seek to have a passport with an "X" sex designation, which Defendants will not issue under the Policy. *See* Perysian Decl. ¶ 4; Am. Orr Decl. ¶ 5; Anderson Decl. ¶ 5; Am. Boe Decl. ¶ 5; Am. Solomon-Lane Decl. ¶ 5; Am. Hall Decl. ¶ 7; Goldberg Decl. ¶ 5; Soe Decl. ¶ 5; Doe Decl. ¶ 5; LeBlanc Decl. ¶ 5; Gorlin Decl. ¶ 5; Agatha Decl. ¶ 5. Though the putative class members may need a passport with a sex designation other than what the Policy allows for different reasons, all have experienced and will continue to experience identical *harms* from the Policy, including the inability to obtain a passport that does not expose them to serious risks of harassment, discrimination, or physical harm. Am. Compl. ¶¶ 68–72. Accordingly, such differences that may exist between the Named Plaintiffs and putative members of each class are not a barrier to class-wide relief. *See McLaughlin*, 224 F.R.D. at 310; *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. at 23 ("Rule 23(a)(3), however, does not require that the representative plaintiff's claims be identical to those of absent class members.").

### 4.    The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes.

Adequacy of representation has two components: (1) "the interests of the representative party will not conflict with the interests of any of the class members," and (2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed

16

litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see also In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. at 23. Both are satisfied here.

a)    The Representative Parties Have No Conflict with Class Members.

The proposed class representatives have no antagonistic or conflicting interest with members of their respective classes. Each Named Plaintiff seeks a passport with a sex designation that differs from that available to them under the Policy. *See* Perysian Decl. ¶¶ 4, 11; Am. Orr Decl. ¶¶ 5, 13; Anderson Decl. ¶¶ 5, 10; Am. Solomon-Lane Decl. ¶¶ 5, 12; Am. Boe Decl. ¶¶ 13–14; Soe Decl. ¶¶ 5, 11; Agatha Decl. ¶ 13; LeBlanc Decl. ¶¶ 12–15; Am. Hall Decl. ¶ 12; Goldberg Decl. ¶¶ 5, 17; Doe Decl. ¶¶ 5, 11–12; Gorlin Decl. ¶¶ 5, 10–11. Each of the Named Plaintiffs thus has a substantial stake in the proceedings and aims to protect the same interests as the putative class members in stopping unlawful Policy enforcement.

b)    Plaintiffs' Counsel Are Competent to Represent the Classes.

Plaintiffs' counsel are competent to represent the classes. Plaintiffs have retained highly qualified and competent counsel with substantial experience litigating all stages of class actions and on behalf of LGBTQ+ individuals. Combined, proposed class counsel have many decades of practice in the areas of civil rights, complex litigation, and class actions.

The national ACLU has represented LGBTQ+ individuals seeking to protect their civil rights for more than a half century and has been counsel in many prominent LGBTQ+ rights cases, including numerous cases dealing specifically with the rights of transgender individuals and cases involving transgender individuals' rights to accurate identity documents, such as *United States v. Skrmetti*, No. 23-477 (U.S.) (pending challenge to Tennessee's ban on gender-affirming health care for adolescents), and *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) (holding that transgender status and sexual orientation discrimination is covered by Title VII); *see also* Decl. of Jon W. Davidson ("Davidson Decl.") ¶¶ 5–12; *id.*, Ex. A at 7–10 (listing additional LGBTQ+ rights and class action

cases as counsel).  The national ACLU has devoted the time of six attorneys to this case, who have invested substantial time and resources litigating this matter, including interacting with Plaintiffs, locating and working with Plaintiffs' expert witnesses, performing factual and legal research and analysis, reviewing and editing all pleadings in the case, and arguing the Motion for Preliminary Injunction.  Davidson Decl. ¶¶ 5–13.  The national ACLU has partnered in this matter with experienced counsel from ACLU of Massachusetts ("ACLUM") and Covington & Burling LLP.

The ACLUM litigation team is composed of the Legal Director—who has co-counseled numerous class actions and cases involving the Equal Protection clause and the APA—as well as a legal fellow whose academic career and first year in practice have largely focused on protecting the rights of LGBTQ+ people.  Rossman Decl. ¶¶ 5–7.  ACLUM has dedicated many hours to performing legal research and assisting with drafting and editing the filings in this matter and will continue to commit its resources to this case.  *Id.* ¶ 8.

The Covington team of nine lawyers is led by a partner in Covington's Class Action practice group with more than a decade of experience in high-profile and complex litigation, including class actions.  Decl. of Isaac Chaput (Apr. 29, 2025) ¶¶ 5–8.  Covington has already devoted substantial resources to this case, consistent with its longstanding commitment to public service, including payment of necessary expenses.  *Id.*  Covington has taken responsibility for researching and preparing initial drafts of all pleadings filed in this matter, including the Complaint, Motion to Proceed under Pseudonym, Motion for Preliminary Injunction, Joint Motion for a Protective Order, Amended Complaint, and this Motion for Class Certification.  *Id.*  Covington intends to continue contributing substantial resources to this matter regardless of the outcome of this Motion.  *Id.*

### C.    Both Proposed Classes Also Meet the Requirements of Rule 23(b)(2).

Rule 23(b)(2) requires that plaintiffs show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  Courts routinely recognize that civil rights class actions are "in general, 'uniquely suited' to Rule 23(b)(2) certification."  *See DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 103 (D. Mass. 2010); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of class actions that satisfy Rule 23(b)(2)).

Both classes here seek injunctive and declaratory relief because Defendants have both acted and refused to act on grounds applying generally to each class.  Defendants' promulgation and enforcement of the Policy applies generally to each class: Defendants will not issue passports with an "F" or "M" sex designation unless that designation aligns with the Policy's definition of sex, and Defendants will not issue passports with an "X" sex designation to anyone.  The relief sought would provide redress for each class's members and would in no way differentiate between class members.  Such relief would resolve class members' claims "in one stroke." *Dukes*, 564 U.S. at 350.  Members of the M/F Designation Class and the X Designation Class are each entitled to a single "indivisible remedy" of enjoining the Policy from its enforcement against members of the classes, which shows that certification under Rule 23(b)(2) is proper. *See Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020).

### D.    The Court Should Appoint Plaintiffs' Attorneys as Class Counsel.

Upon certifying the classes, the Court must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  Under Rule 23(g), a court considers: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.*

As shown above, Plaintiffs' attorneys possess substantial expertise litigating constitutional and civil rights challenges to governmental action, including specific experience representing LGBTQ+ individuals, as well as class actions.  *Supra* Part III.B.4.b.  Covington has covered numerous necessary expenses, including expert fees.  The initial Complaint was filed a mere 18 days after the Executive Order was issued.  Counsel have interviewed numerous putative class members, prepared the Complaint and the Amended Complaint, prepared and argued the Motion for Preliminary Injunction, and worked with Plaintiffs and their experts to prepare two expert declarations and 12 Plaintiff declarations.  Counsel will continue to devote the resources necessary to litigate this matter.

## IV. CONCLUSION

Plaintiffs request the Court certify the proposed classes and appoint the undersigned attorneys as class counsel pursuant to Rule 23(g).

*[Signatures follow on the next page.]*

April 30, 2025

Respectfully submitted,

/s/ *Isaac D. Chaput*
Isaac D. Chaput (*pro hac vice*)
William P. Kasper (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
ichaput@cov.com
wkasper@cov.com

Jessie J. Rossman (BBO # 670685)
Zoe R. Kreitenberg (BBO #715356)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: 617-482-3170
jrossman@aclum.org
zkreitenberg@aclum.org

Jon W. Davidson (*pro hac vice*)
   (admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
   (admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso (*pro hac vice*)
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org
jesseks@aclu.org

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION

21

FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: 202-662-5891
Facsimile: 202-778-5891
jthompson@cov.com
sbender@cov.com

Robert C. Gianchetti*
Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212-841-1000
Facsimile: 212-841-1010
rgianchetti@cov.com
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

**Pro hac vice* application forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

/s/ Isaac D. Chaput
Isaac D. Chaput