**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ASHTON ORR, *et al.*,<br>*Plaintiffs*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | Case No. 1-25-cv-10313-JEK |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO APPLY THE PRELIMINARY INJUNCTION TO THE CLASSES**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..... 1

II. BACKGROUND ..... 1

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. The PI Class Members Who Are Subject to this Motion ..... 5

B. Likelihood of Success on the Merits ..... 7

1. Equal Protection Claim ..... 7

2. APA Claim ..... 8

C. Irreparable Harm ..... 9

D. Balance of the Equities and Public Interest ..... 11

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Carr v. Becerra*,
2023 WL 1280172 (D. Conn. Jan. 31, 2023)....................3, 4, 11

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985)....................8

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir. 2009)....................3

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
699 F.3d 1 (1st Cir. 2012)....................4

*United States v. Virginia*,
518 U.S. 515 (1996)....................7

*Yolton v. El Paso Tenn. Pipeline Co.*,
2007 WL 3037709 (E.D. Mich. Oct. 17, 2007)....................4

*Youth Just. Coal. v. City of Los Angeles*,
2018 WL 11302063 (C.D. Cal. Mar. 15, 2018)....................3, 4, 10

**Statutes**

5 U.S.C. §§ 551 *et seq.*....................1, 2, 4, 8, 9

44 U.S.C. §§ 3501 *et seq.*....................2, 9

**Other Authorities**

22 C.F.R. § 51.21(b)(2)....................6

Fed. R. Civ. P. 23(b)(2)....................3

State Department, *U.S. Passports*,
https://travel.state.gov/content/travel/en/passports.html....................7

State Department, *Passport FAQs*,
https://travel.state.gov/content/travel/en/passports/passport-help/faqs.html....................7

## I. PRELIMINARY STATEMENT

The Court has already granted preliminary injunctive relief to six of the seven plaintiffs named in the original complaint in this case (the "Original Plaintiffs"), finding that (a) the federal government's challenged passport policy (the "Policy") likely is unconstitutional and likely violates the Administrative Procedure Act ("APA"); (b) the Policy causes irreparable injury to those six plaintiffs; and (c) the equities and public interest favor immediate injunctive relief for them. Concurrently with the filing of this Motion, Plaintiffs move to certify two classes of similarly situated people. As to the members of those classes who face the same irreparable injuries as those six of the Original Plaintiffs (hereafter referred to as the "PI Class Members" and defined further in Section IV.A. hereof, below), they are equally entitled to the same preliminary injunctive relief as the Court has afforded those six Original Plaintiffs. Accordingly, Plaintiffs respectfully request that the Court—assuming it certifies the classes and appoints class representatives and counsel as requested in Plaintiffs' Motion for Class Certification—apply its preliminary injunction to the PI Class Members.

## II. BACKGROUND

On February 7, 2025, Plaintiffs filed a class action complaint seeking injunctive and declaratory relief on behalf of seven Original Plaintiffs and two putative classes those Plaintiffs sought to have certified. *See* ECF 1. On February 18, 2025, Plaintiffs moved for a stay of agency action under the APA and for a preliminary injunction as to the Original Plaintiffs. *See* ECF 29, 30.[1] On April 18, 2025, the Court granted Plaintiffs' motion in part, issuing an injunction that

---

[1] That motion only sought preliminary injunctive relief as to the Original Plaintiffs, as the Court previously noted. ECF 74 at 55. Contingent upon the Court granting Plaintiffs' Motion for Class Certification, Plaintiffs now seek to apply such relief to those class members upon whom the Policy inflicts the same irreparable injury as the six Original Plaintiffs now protected by the Court's preliminary injunction.

applied to six of the Original Plaintiffs—namely, those who do not "currently possess[] a valid passport that bears a sex marker consistent with [their] gender identity." Memorandum and Order on Plaintiffs' Motion to Stay Agency Action and for Preliminary Injunction ("PI Order") (ECF 74) at 50. The Court declined to issue a preliminary injunction as to one of the Original Plaintiffs because he possessed a passport with an accurate sex designation that would not "expire until 2028," so he was not "likely to experience irreparable harm prior to the full adjudication of this case on the merits." *Id.*

The Court found that the Original Plaintiffs had demonstrated a likelihood of success on the merits on three separate grounds. First, it found that the Policy, which classifies on the basis of sex, likely fails to satisfy intermediate scrutiny as required by the equal protection guarantee of the Fifth Amendment. *Id.* at 25. The Court explained that Defendants failed to assert almost any important government interest and failed to show how the Policy is substantially related to the single purported interest of uniformity in defining sex across different government agencies. *Id.* at 22, 25. Second, the Court found that the Policy is likely driven by animus towards transgender and nonbinary people, an impermissible governmental interest under the Fifth Amendment's equal protection safeguards. *Id.* at 30–32. Third, the Court found that the Policy—a reviewable, final agency action—likely violates the APA because it lacks a reasoned explanation (let alone an adequate one) and because the Agency Defendants failed to follow the requirements of the Paperwork Reduction Act ("PRA") when implementing the Policy. *Id.* at 42–43, 46.

The Court found that traveling with a passport that does not align with one's gender identity exposes the bearer to increased risk of violence and harassment. *See id.* at 48–49. The Court also found that having identity documents that reflect one's gender identity is medically and psychologically important (including as part of treatment for gender dysphoria) and can, among

other things, reduce the risk of suicide and serious psychological distress. *Id.* at 47. The Court then held that because six of the seven Original Plaintiffs—Orr, Perysian, Soe, Anderson, Hall, and Boe—did not have passports consistent with their gender identity, they faced irreparable harm if forced either to use passports bearing sex designations different from their gender identity or to forgo use of a passport entirely. *Id*. at 49–50.

The Court found that Plaintiff Solomon-Lane did not face irreparable harm only because his current passport bears an accurate "M" sex designation and does not expire until 2028, so he was "not likely to experience irreparable harm prior to the full adjudication of this case on the merits." *Id.*

Finally, the Court held that the balance of the equities and the public interest weighed in favor of granting injunctive relief to the six Original Plaintiffs who face acute, imminent harm if relief is not granted. *Id.* at 50–51.

On April 25, 2025, Plaintiffs filed an Amended Complaint that added five individual plaintiffs who are transgender, nonbinary, and/or intersex to the case and made certain other minor adjustments, including to the precise wording of the class definitions. At the same time as Plaintiffs file this Motion, they are also filing a motion to certify classes under Rule 23(b)(2).

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 23(b)(2), courts have the authority to issue injunctions that apply to certified classes of plaintiffs. *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 461 (1st Cir. 2009). District courts frequently modify injunctions issued in favor of named plaintiffs to apply to class members upon class certification. *See, e.g.*, *Carr v. Becerra*, 2023 WL 1280172, at *14 (D. Conn. Jan. 31, 2023); *Youth Just. Coal. v. City of Los Angeles*, 2018 WL 11302063, at *3 (C.D. Cal. Mar. 15, 2018). When they do so, courts employ the same four-factor test as for any preliminary injunction, examining "(1) the plaintiff's likelihood of success on the merits; (2) the potential for

irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (cleaned up); *see, e.g.*, *Carr*, 2023 WL 1280172, at *14 (applying the four-factor test to a motion to apply a preliminary injunction to a class).

In applying existing preliminary injunctions to class members, courts take into account the representative nature of the original plaintiffs' claims and the prior analysis. *See, e.g.*, *Youth Justice*, 2018 WL 11302063, at *4–7 (granting motion to apply preliminary injunction to certified class upon finding that plaintiff "was a typical class member, because he had allegedly suffered the same or similar . . . injury as the proposed class"); *Carr*, 2023 WL 1280172, at *15 ("[T]he named Plaintiffs submitted evidence of particularized harms . . . and it is reasonable to infer that they are similarly situated to the class members . . . and that the harms they face are representative of those of the class members."); *Yolton v. El Paso Tenn. Pipeline Co.*, 2007 WL 3037709, at *5 (E.D. Mich. Oct. 17, 2007) ("The Court addressed the remaining [irreparable harm, balance of the equities, and public interest] factors . . . in its [original preliminary injunction order]. The Court's prior reasoning with respect to those factors applies equally to the decision of whether to extend the preliminary injunction to the [class].").

## IV. ARGUMENT

The Court's analysis in issuing the preliminary injunction as to six of the Original Plaintiffs applies equally to the PI Class Members. The constitutional and APA claims that the Court found the Original Plaintiffs likely to prevail on are no different with respect to the PI Class Members than they were with respect to the Original Plaintiffs. As explained below, the PI Class Members also face the same irreparable injuries as the Court identified for the six Original Plaintiffs as to whom the Court granted preliminary injunctive relief. And, likewise, the balance of equities and

public interest are the same with regard to the Original Plaintiffs and the PI Class Members. The Court therefore should apply the preliminary injunction to these PI Class Members as well.[2]

**A. The PI Class Members Who Are Subject to this Motion**

Plaintiffs maintain that all members of both classes are similarly situated and ultimately entitled to relief in this lawsuit. Most of the Court's preliminary injunction analysis applies equally to all class members. Through this Motion, however, Plaintiffs seek to have the preliminary injunction applied only to the PI Class Members—those members of the classes as to whom the irreparable injury analysis in the Court's PI Order applies equally.

As explained above, the Court found that six of the Original Plaintiffs demonstrated that they are likely to suffer irreparable harm if the Policy is not enjoined because they "will be unable to obtain passports bearing sex markers that align with their gender identity and expression." PI Order at 49. The Court found that Plaintiff Solomon-Lane did not face an irreparable injury that was likely to occur before final judgment in this case because he already possessed a passport aligned with his gender identity that would not expire until 2028. *Id*. at 49–50.

Should the Court grant Plaintiffs' Motion for Class Certification, the members of the two classes will be all individuals who want or in the future will want either a U.S. passport with an "F" or "M" sex designation that is different from the sex assigned to that class member under the Policy or who want or will want a U.S. passport with an "X" sex designation. Some of the members of those classes already have a passport with the sex designation they want that will not expire or need to be changed or replaced in the near future, and therefore are in a position akin to

[2] As noted above, this Motion is conditioned on the Court granting Plaintiffs' Motion for Class Certification, appointing the individual Plaintiffs named in the Amended Complaint as class representatives, and appointing the undersigned counsel as class counsel.

Plaintiff Solomon-Lane, whom the Court concluded did not face irreparable harm because he has a passport with the sex designation he wants that will not expire for three years.

But all members of either of those classes face the same irreparable harm as the six Original Plaintiffs for whom the Court has granted a preliminary injunction if they are unable to obtain a passport with the sex designation they want, because they will be forced either to use passports bearing sex designations different from their gender identity or to forgo use of a passport entirely. PI Order at 49–50. Such class members are considered PI Class Members if: (a) they do not have a currently-valid passport; (b) they need to renew their current passport because it expires within one year; (c) they need to make changes to their passport to have the sex designation on it align with their gender identity or to reflect a name change;[3] or (d) they need to apply to receive another passport because their passport was lost, stolen, or damaged. Absent a preliminary injunction, the PI Class Members are likely to experience the same "irreparable harm prior to the full adjudication of this case on the merits," *id*. at 49–50, as the six Original Plaintiffs to whom the Court's preliminary injunction already applies.

The requirement that a class member falls within the PI Class under item (b) above when a renewal application is within one year of the passport's expiration is consistent with the State Department's rules that individuals cannot apply online to renew their passport until they enter an eligibility window of one year prior to expiration of their current passport. 22 C.F.R. § 51.21(b)(2). It also balances people's need to reduce the risk that their passport expires before they can get a

---

[3] Under the terms of the Policy, the State Department will no longer issue passports with a sex designation that is inconsistent with an individual's sex assigned at birth. Therefore, if a transgender individual has legally changed their name and applies for a passport that reflects that name change, the State Department, pursuant to the Policy, will send them back a passport with the name change they sought, but with a sex designation inconsistent with their gender identity, even if their previous passport bore a sex designation that was consistent with their gender identity.

replacement, potentially long passport processing times,[4] and the visa requirements of many countries that a person's passport still have at least six months of validity to be able to enter that country,[5] while avoiding the issues that the Court found existed for Plaintiff Solomon-Lane.

**B. Likelihood of Success on the Merits**

The Court previously found that all Original Plaintiffs demonstrated a likelihood of success on the merits. Those findings apply equally to the other members of the classes.

**1. Equal Protection Claim**

As with the Original Plaintiffs, Defendants' Policy classifies the members of the classes on the basis of sex. *See* PI Order at 18 ("The differential treatment—in whether the applicant can obtain a passport with a sex marker that reflects their gender identity—is entirely dependent on the applicant's sex assigned at birth."). That is because *all* U.S. passport holders or applicants are subject to the Policy's definition of sex. For this sex classification to pass constitutional muster, Defendants must demonstrate that the classification "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 524 (1996); *see* PI Order at 17–22. And the Court has already found that Defendants failed to meet this burden: "On the record before the Court there is no evidence of a substantial relationship between the Passport Policy and the asserted governmental interest in maintaining a consistent definition of sex across the federal government." PI Order at 25. Because the Policy itself classifies all individuals on the basis of sex, all members

---

[4] Current passport processing and mailing times are up to 10 weeks, as of April 25, 2025. *See* State Department, *U.S. Passports*, https://travel.state.gov/content/travel/en/passports.html.

[5] State Department, *Passport FAQs*, https://travel.state.gov/content/travel/en/passports/passport-help/faqs.html.

of either class are likely to succeed on a claim of impermissible sex discrimination against Defendants.

Further, like the Original Plaintiffs, all members of either class are likely to succeed on their claim that the Policy is motivated by unlawful animus. The Court found that the Executive Order on which the Policy is based "facially demeans transgender people's identity," and "is candid in its rejection of the identity of an entire group—transgender Americans—who have always existed and have long been recognized in, among other fields, law and the medical profession." *Id.* at 27–28. The Policy is also "part of a constellation of close-in-time executive actions directed at transgender Americans that contained powerfully demeaning language." *Id.* at 30. Accordingly, the Court found that the Policy itself is motivated by "irrational prejudice." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 449–50 (1985); *see* PI Order at 27–29. That finding does not change whether the claim is made by an Original Plaintiff or by a similarly situated member of one of the classes. All class members, including the PI Class Members, are therefore also likely to succeed on the merits of an animus-based equal protection claim against the Policy.

**2. APA Claim**

The Court's finding that the Original Plaintiffs are likely to succeed on their APA claims applies equally to claims brought by all members of either class. The Court found that the Policy was arbitrary and capricious at least because it lacked the reasoned explanation that the APA requires. *See* PI Order at 39–43. That is an inherent flaw in the Policy and in the Agency Defendants' process of developing and implementing it. Nothing in the identity of the passport seeker—whether they are an Original Plaintiff or a member of either of the classes—can remedy the reality that Defendants "considered virtually nothing aside from the Executive Order's directive when [they] developed the Passport Policy." *Id.* at 42. Defendants also defended the Policy on one uniform basis that did not depend on the identity of a plaintiff—and the Court

rejected that defense wholesale. *See id.* at 41–42 (observing that the Agency Defendants failed to "explain why the facts supporting the Department's prior passport policy no longer carry weight" or to "address reliance interests affected by its reversal of the prior policy"). Indeed, as the Court recognized, the standard final remedy for an APA violation is vacatur of the action and reinstatement of the prior policy—not party-limited relief. *See id.* at 54–55.

The same logic applies to the likelihood members of either class would succeed on an APA claim based on failure to comply with the PRA. Defendants' failure to follow the procedures required by the PRA by employing unlawful application forms, *id.* at 46, is equally applicable to all those subject to the Policy, including all members of either class. Accordingly, like the Original Plaintiffs, all members of either class, including the PI Class Members, are likely to succeed on the merits of a PRA claim under the APA.

Because the Court's reasoning in its assessment of the likelihood of success on the merits would apply equally and identically to the claims brought by all members of either class as it did to claims brought by Original Plaintiffs, the PI Class Members have satisfied the first factor of the preliminary injunction test.

### C. Irreparable Harm

The PI Class Members have experienced and will continue to experience irreparable injury from the Policy that is identical to the injuries experienced by Plaintiffs Orr, Perysian, Soe, Anderson, Hall, and Boe that the Court found sufficient to warrant preliminary injunctive relief. In particular, the PI Class Members are subject to a discriminatory, animus-driven, and irrational policy; they are only able to obtain passports that expose them to serious risks of harassment, discrimination, or physical harm; and they face extreme psychological harm from having an identity document that does not match their identity. *See* PI Order at 46–50. As the Court held, the Policy requires those subject to it to "choose between forgoing international travel plans . . . or

travelling with passports bearing sex markers that correspond to their sex assigned at birth." *Id.* at 49–50. The dangers inherent in the second option are grave and concrete: "Transgender individuals are also more likely to experience violence or harassment if required to use passports bearing a sex marker corresponding to their sex assigned at birth." *Id.* at 48. That is the precise injury that all PI Class Members face.

The PI Class Members are also similarly situated to Plaintiffs Orr, Perysian, Soe, Anderson, Hall, and Boe with regard to the imminence of their harm. Specifically, the PI Class Members face the injuries the Court identified because they lack a passport entirely; were sent a passport with a gender marker that is not aligned with their sex assigned at birth as a result of the Policy; have a passport that will expire within a year, and when they seek to renew their passport, application of the Policy will result in them receiving a passport bearing a sex marker that does not align with their gender identity; or in the future they have their passport lost, stolen, or damaged and, when they seek a replacement of that passport, application of the Policy will result in them receiving a passport bearing a sex marker that does not align with their gender identity. The PI Class Members therefore necessarily face the same irreparable injuries that the Court previously found sufficient to warrant relief. *Id.*

The evidence in the record, the Court's prior findings, and the law support findings of irreparable injury for all PI Class Members. As explained, courts frequently hold that representative injuries by named plaintiffs are sufficient to find irreparable injuries by similarly situated class members when (as here) those class members will necessarily face the same type of injury. *See, e.g.*, *Youth Justice*, 2018 WL 11302063, at *4–7. As one court has explained, "the named Plaintiffs submitted evidence of particularized harms . . . and it is reasonable to infer that they are similarly situated to the class members . . . and that the harms they face are representative

of those of the class members." *Carr*, 2023 WL 1280172, at *15. Here, the injuries that the Court identified for the Original Plaintiffs are inherently representative of the same injuries inflicted by the same Policy across members of both classes who are also PI Class Members. And, as explained, because the preliminary injunction would be limited only to PI Class Members, those injuries are equally as imminent as those the Court previously found sufficient.

The evidence in the record further supports this conclusion. As detailed in Plaintiffs' preliminary injunction briefing, the evidence shows that all PI Class Members with inaccurate identity documents are subjected to severe harms. For example, as one of Plaintiffs' experts explains, "[f]orcing transgender, non-binary, and intersex people to use identity documents that do not align with what they know their sex to be and present themself as . . . can cause anxiety and distress to individuals who are transgender and result in discrimination and violence against them. Additionally, for those who have struggled for years with the impact of external invalidation of their identity, the knowledge that one's identification documents label one with the wrong sex can, by itself, cause serious psychological injury." Decl. of Sarah D. Corathers ¶ 82. Or as another expert highlights, "[i]n the 2015 United States Transgender Survey . . . 32% of respondents who had presented an identity document that did not match their gender presentation had at least one negative experience, including verbal harassment (25%), denial of service (16%), being asked to leave a venue (9%), and assault (2%)." Decl. of Ayden Scheim ¶¶ 22–24.

Accordingly, all PI Class Members face irreparable injuries that warrant preliminary injunctive relief.

**D. Balance of the Equities and Public Interest**

The balance of the equities and the public interest counsel in favor of applying the preliminary injunction to the PI Class Members. As explained above, the PI Class Members face the same injuries that the Court found to be "significant hardships" in its equitable analysis. PI

Order at 50. And the Court found that those burdens outweighed any purported harm to Defendants, who had "not produced any evidence specifically supporting [their] contention" that injunctive relief would impair the State Department's ability to "operate effectively." *Id.* at 51. That finding is also not specific to the Original Plaintiffs: Defendants' briefing was focused on the alleged harms from a court order requiring that they return to the prior passport policy writ large. *See, e.g.*, ECF 53 at 27. And while the Court did note that the relief it granted was "narrow and limited to the named plaintiffs," it also held that there was no evidence presented of an impairment to government functioning *at all*. PI Order at 51. "Nor [wa]s there evidence that the State Department's functioning was impaired during the nearly three years that it processed and issued passports in precisely the manner requested by the plaintiffs." *Id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court apply the preliminary injunction to the PI Class Members.

April 30, 2025

Respectfully submitted,

/s/ Isaac D. Chaput
Isaac D. Chaput (*pro hac vice*)
William P. Kasper (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
ichaput@cov.com
wkasper@cov.com

Jessie J. Rossman (BBO # 670685)
Zoe R. Kreitenberg (BBO #715356)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: 617-482-3170
jrossman@aclum.org
zkreitenberg@aclum.org

Jon W. Davidson (*pro hac vice*)
(admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
(admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso (*pro hac vice*)
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org
jesseks@aclu.org

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION

FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: 202-662-5891
Facsimile: 202-778-5891
jthompson@cov.com
sbender@cov.com

Robert C. Gianchetti*
Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212-841-1000
Facsimile: 212-841-1010
rgianchetti@cov.com
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

**Pro hac vice* application forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

*/s/ Isaac D. Chaput*
Isaac D. Chaput