IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ASHTON ORR, et al.,

    *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States et al.,

    *Defendants*.

Civil Action No. 1:25-cv-10313

## SECOND DECLARATION OF MATTHEW PIERCE

I, Matthew Pierce, do hereby state and declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am Deputy Assistant Secretary for Passport Services of the U.S. Department of State, Bureau of Consular Affairs, Passport Services Directorate. I submit this declaration in connection with Defendants' Opposition to Plaintiffs' Motion to Apply the Preliminary Injunction to the Classes (ECF No. 79). The statements made herein are based on my personal knowledge and on information provided to me in the course of my official duties with the Department of State (the "Department"). I have served in the Passport Directorate for 17 years and have been in my current position since November 2024.

2. I have previously submitted a declaration dated March 12, 2025, in connection with Defendants' Opposition to Plaintiffs' Motion to Stay Agency Action and for Preliminary Injunction in this matter. ECF No. 53-1. I hereby incorporate my statements from that declaration.

3. Consistent with the Executive Order 14168, the Department's current Passport Policy permits issuing passports with only an "M" or "F" sex marker and, requires U.S. passports to reflect the holder's biological sex at birth.

4. In compliance with the preliminary injunction issued by the District Court on April 18, 2025 (ECF No. 75) (the "Preliminary Injunction"), the Department has provided instructions for five of the six original named Plaintiffs granted relief by the Court—Ashton Orr, Zaya Perysian, Chastain Anderson, Drew Hall, and Bella Boe—to replace their U.S. passports with the sex marker, "F" or "M," based on their self-selection on their recent passport applications.[1] The Department has further provided instructions for the remaining Plaintiff granted relief by the Court—Sawyer Soe—to apply for a new U.S. passport with an "X" sex marker.[2]

5. In their Motion for Class Certification (ECF No. 77) ("Class Certification Motion"), Plaintiffs seek certification of two classes: (1) all people who "currently want, or in the future will want, a U.S. passport issued with an "F" or "M" sex designation that is different from the sex assigned to that individual under the Passport Policy—the "M/F Designation Class"[3]; and (2) all people who "currently want, or in the future will want, a U.S. passport and wish to use an "X" sex designation"—the "X Designation Class."[4]

---

[1] To comply with the Preliminary Injunction, the Department provided these five Plaintiffs with passport replacement forms (Forms DS-5504, ver. 2022) for which OMB approval was extended to May 31, 2025.

[2] To comply with the Preliminary Injunction, the Department provided Plaintiff Soe with a passport application form (Form DS-11, ver. 2022) for which OMB approval was extended to May 31, 2025. At the time of adjudication for issuance of passports complying with the Preliminary Injunction (or, in the case of Plaintiff Sawyer Soe, issuance of a new passport complying with the Preliminary Injunction more than 15 years after issuance of a previous passport), each Plaintiff will be subject to the Department's standard name-check procedures to verify their continuing eligibility to be issued a U.S. passport under applicable statutes and regulations.

[3] In the Class Certification Motion, Plaintiffs seek to have Plaintiffs Ashton Orr, Zaya Perysian, Chastain Anderson, Drew Hall, Bella Boe, Reid Solomon-Lane, Viktor Agatha, David Doe, AC Goldberg, and Chelle LeBlanc represent the M/F Designation Class.

[4] In the Class Certification Motion, Plaintiffs seek to have Plaintiffs Sawyer Soe and Ray Gorlin represent the X Designation Class.

6. In their Motion to Apply the Preliminary Injunction to the Classes (ECF No. 79), Plaintiffs seek to obtain the same relief granted by the Court to six named Plaintiffs in the Preliminary Injunction to an indeterminate number of U.S. citizens and nationals entitled to U.S. passports who may fall into one of the two putative classes. Specifically, assuming the Court certified those two classes, Plaintiffs seek to extend the preliminary relief to a "PI Class" consisting of members from both classes if: "(a) they do not have a currently-valid passport; (b) they need to renew their current passport because it expires within one year; (c) they need to make changes to their passport to have the sex designation on it align with their gender identity or to reflect a name change; or (d) they need to apply to receive another passport because their passport was lost, stolen, or damaged." ECF No. 80 at 6.

7. Were the Court to grant the motion, the scope of the proposed injunctions sought by Plaintiffs would impose a significant administrative burden on the Department prior to any ruling on the merits, especially if it needs to review the individual circumstances of each applicant to evaluate the applicant's likelihood of injury. Indeed, although the proposed PI Class definition does not reference the need to determine the PI Class members' irreparable injury, Plaintiffs motion to expand the PI is hinged on the PI Class members suffering "the same irreparable injury as those six of the Original Plaintiffs." ECF No. 80 at 1.

8. The Department would expect to receive potentially thousands of passport applications from members of the PI Class for a passport with a sex marker inconsistent with the Passport Policy, *i.e.*, a passport with a "M" or "F" sex marker that is inconsistent with the applicant's biological sex or a passport with an "X" sex marker. The Department does not maintain statistics on the number of passport applicants who, based on supporting evidence of surgical or clinical

treatment, sought or were issued "M" or "F" sex markers on passports prior to June 30, 2021, that did not reflect their biological sex at birth. Estimates of the number of transgender Americans from the Household Pulse Survey, the Williams Institute, the Gallup Poll, and the Pew Research Center range from 0.6% to 1.6% of the adult population. Although it is difficult to estimate the likely number of persons to request a passport with an X gender marker, from April 11, 2022, to January 19, 2025, the Department issued more than 44,000 U.S. passports with an "X" sex marker, an average of more than 1,300 per month.

9. Were the Court to grant Plaintiffs' motion, it would be administratively burdensome for the Department to track every passport issued in compliance with such order for purposes of restoring the status quo ex ante if the Government were to ultimately prevail on the merits in this case. For example, depending on their supporting documentation, for first-time passport applicants seeking a passport with a sex marker that differs from their biological sex at birth and who select either an "M" or an "F" (and not an "X"), absent self-identification by the class member there may be no way to identify their passports for later replacement in the event the Government prevails in this litigation.

10. When adjudicating a passport renewal application, the Department also does not currently have an automated system to identify from historic applications (except the application immediately before the renewal application) whether the applicant previously changed their sex marker. If a change in passport sex marker occurred prior to the passport being renewed, the only way at present to verify whether a particular renewal applicant had such a previous change in their passport sex marker is to retrieve and manually review their historic applications, a time-consuming and labor-intensive process. It would be impracticable for the Department to engage

in such a manual review of all previous applications as part of the adjudication of each application to renew a U.S. passport.

11. Moreover, if the Court were to issue a more limited preliminary injunction focused on applicants who would otherwise incur irreparable harm, it still would not be feasible for the Department to assess whether the applicants would suffer any irreparable harm. The Court's preliminary injunction was predicated on not only the original six Plaintiffs' imminent travel plans, but also the fact that most have been diagnosed with gender dysphoria, all "would experience anxiety or distress, or fear for their safety, if required to use a passport with a sex marker that corresponds to their sex assigned at birth rather than their gender identity," and some have experienced harassment. ECF 74 at 47. Passport adjudicators would either need to make the requisite irreparable harm determination—which they are not equipped to do—or be required to issue passports in contravention of the Executive Order simply on the basis of an applicant's representation that they are a PI Class member.

12. Further, the Department of State and all other federal agencies, were ordered by the President on January 20 to follow and implement E.O. 14168. The Court's April 18 Preliminary Injunction and any similar court orders that may arise from Plaintiffs' Motion to Apply the Preliminary Injunction to the Classes to issue passports with an "X" marker or to issue passports in a sex other than the applicant's biological sex would create a conflict between the Department and other federal agencies that issue identification documents reflecting the holder's sex. This would result in inconsistencies within the federal government and frustrates the governmental interest in uniformity.

13. In sum, the proposed extension of the preliminary injunction to the PI class, if granted, would impose a significant burden on the Department, be nearly impossible to completely reverse, and undermine the uniformity throughout the government that the Department seeks in implementing the Executive Order.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: May 14, 2025.

Matthew Pierce