# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ASHTON ORR, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Case No. 1:25-cv-10313-JEK

(Leave to file granted on May 15, 2025)

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION TO APPLY THE PRELIMINARY INJUNCTION TO THE CLASSES

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    ARGUMENT .................................................................................................. 1

    A.    PI Class Members Face Irreparable Harm Without Injunctive Relief. ................... 1

    B.    Defendants Fail to Show Any Meaningful Burden. ................................................ 4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A.R.P. v. Trump*,
    605 U.S. __, No. 24A1007 (May 16, 2025)......................................................................1

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
    2025 WL 1142968 (D. Mass. Apr. 18, 2025), *opinion clarified*, 2025 WL
    1323697 (D. Mass. May 7, 2025) .............................................................................2

*Ely v. Saul*,
    572 F. Supp. 3d 751 (D. Ariz. 2020) ........................................................................2

*Fish v. Kobach*,
    840 F.3d 710 (10th Cir. 2016) ..................................................................................5

*Flack v. Wisconsin Department of Health Services*,
    331 F.R.D. 361 (W.D. Wis. 2019) ...........................................................................3

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ................................................................................2

*LaForest v. Former Clean Air Holding Co.*,
    376 F.3d 48 (2d Cir. 2004)........................................................................................2

**Other Authorities**

U.S. Constitution, Amendment V .......................................................................................2

Federal Rule of Civil Procedure 23 .............................................................................1, 2, 3

State Department, Sex Marker in Passports,
    https://travel.state.gov/content/travel/en/passports/passport-help/sex-
    marker.html ..............................................................................................................5

## I.    INTRODUCTION

This Court has already found that Defendants' Passport Policy likely violates the Constitution and the APA and granted preliminary injunctive relief to six people.  Plaintiffs simply seek to apply that injunction to similarly-situated individuals.  Defendants, however, seek to preserve an unlawful Policy by arguing that class-based injunctive relief is inappropriate.  Ironically, the government has taken the very opposite position elsewhere—just last week, in opposing "universal" injunctions, the Solicitor General insisted that "Rule 23 would be one natural path [to broad injunctive relief]."[1]  And the Supreme Court has again confirmed that well-settled principle of class-based relief, issuing preliminary injunctive relief to a *putative* class to prevent constitutional injuries.  *See A.A.R.P. v. Trump*, 605 U.S. __, No. 24A1007 (May 16, 2025).

Defendants' arguments are meritless.  *First*, Defendants assert that PI Class Members will not be irreparably harmed absent relief.  That is wrong: like the six Named Plaintiffs, every PI Class Member is deprived of equal protection of the laws and subjected to an arbitrary and capricious policy.  The harms to the Named Plaintiffs are representative of the harms to the Classes.  *Second*, Defendants recycle arguments based on purported burden that this Court already rejected.  As before, any burden is substantially outweighed by the need to enjoin a Policy that "offend[s] our Nation's constitutional commitment to equal protection for all Americans."  PI Order (ECF 74) at 3.

## II.    ARGUMENT

### A.    PI Class Members Face Irreparable Harm Without Injunctive Relief.

Defendants' primary argument is that PI Class Members do not face irreparable harm— apparently because the (millions of) class members have not submitted individualized evidence about their respective emotional harms and travel plans.  *See* Opp. at 3–5.  They are wrong.

---

[1]    *Trump v. CASA, Inc.*, No. 24A884, May 15, 2025 Tr. at 29:1–4, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/24a884_2c83.pdf.

*First*, Defendants ignore that all PI Class Members are necessarily injured due to the nature of the legal violations. As the Court found, the Policy deprives transgender and nonbinary people of equal protection. *See* PI Order at 16–32. *Every* person who is denied an appropriate sex marker under the Policy is, therefore, necessarily injured because they are subject to a discriminatory Policy that runs afoul of the Fifth Amendment. So too for the APA violation: as the Court found, this Policy is arbitrary and capricious. *Id.* at 33–46. *Every* person who is denied an appropriate sex marker under the Policy is, therefore, necessarily injured because they are subject to an arbitrary policy that runs afoul of the APA. Defendants do not mention—let alone rebut—these core points. These are the types of injuries for which Courts routinely grant relief to Rule 23(b)(2) classes. *See, e.g.*, *Ely v. Saul*, 572 F. Supp. 3d 751, 774–75 (D. Ariz. 2020) (equal protection violations based on prior denial of same-sex marriage necessarily applied to entire class, warranting class-wide relief); *see also, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1142968, at *19 (D. Mass. Apr. 18, 2025), *opinion clarified*, 2025 WL 1323697 (D. Mass. May 7, 2025) (same for due process).

*Second*, Defendants ignore basic principles of class-action law. A "principal purpose" of Rule 23(b)(2) "is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights." *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019). Defendants' position subverts this long-recognized goal, foreclosing relief to class members without detailed, personalized evidence from each—creating the practical impossibilities that Rule 23(b)(2) was intended to avoid.

Accordingly, evidence of class representatives' injuries is sufficient for the Court to "engage in inductive reasoning to reach the conclusion that *every* plaintiff suffered the [same] threat of irreparable harm." *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 58 (2d Cir. 2004) (relying on six plaintiff affidavits to show harm to class). As explained in the Memorandum of Law in Support of the Motion for Class Certification (ECF 78), the Named Plaintiffs are representative

of the Classes under Rule 23, and the Opposition (ECF 88) does not dispute that. Defendants also fail to mention the authorities showing that the Named Plaintiffs' "evidence of particularized harms" allows the Court to "infer" injuries to similarly situated individuals. *See* Mot. (ECF 80) at 9–10 (collecting cases). The harms to the Named Plaintiffs apply equally to every PI Class Member.

**Third**, Defendants ignore the direct evidence of irreparable harm to PI Class Members. *See id.* at 10. The expert declarations show that the harms from the Policy affect *anyone* whose sex marker does not match their gender identity. *See, e.g.*, Corathers Decl. (ECF 78-13) ¶¶ 82–90 (harms to "transgender, nonbinary, and intersex people" from the Policy); Scheim Decl. (ECF 78-14) ¶¶ 20–43 (harms from identity documents that do not match gender identity). Similarly, the safety risks from having a passport that does not match their gender identity apply to *anyone*. *See, e.g.*, Scheim Decl. ¶¶ 20–43. The Court relied on this same evidence in finding irreparable harm. *See* PI Order at 47–48. Defendants dismiss this evidence as "[u]nsupported generalizations" or speculation, Opp. at 4, but it is detailed, competent expert evidence about the harms that naturally result from the Policy. Defendants have not introduced any countervailing evidence.[2]

Finally, Defendants' argument that the definition of a PI Class Member "undermines Plaintiffs' assertion of imminent harm" boils down to the contention that a Class Member needs imminent travel plans to be irreparably injured by the Policy. *See* Opp. at 4. That is flawed many times over. The Court has already recognized that lacking an appropriate passport is *itself* a harm because, for example, it causes severe psychological distress, including an increased risk of suicide.

---

[2] This is the type of evidence on which courts rely to issue class-based injunctions. For example, in *Flack v. Wisconsin Department of Health Services*, 331 F.R.D. 361 (W.D. Wis. 2019), the court certified a class and applied its injunction against a statute denying gender-affirming care to a class of transgender individuals. *Id.* at 368. In finding irreparable injury, the court examined similar claims and evidence, noting that the equal protection violations applied to named plaintiffs and class members alike and the plaintiffs' experts introduced evidence of harm generally. *Id.* at 371–73. The court did not require specific evidence from every single class member.

*See* PI Order at 47–48.  Travel plans can also arise unexpectedly and even urgently—for instance, when a family member in another country has a medical crisis.  And not having an appropriate passport necessarily creates a chilling effect on planning for and engaging in travel (and engaging in other activities for which a passport is needed).  Defendants' position that there is only an irreparable injury once travel plans are made is not grounded in any law or this Court's PI Order.

### B.    Defendants Fail to Show Any Meaningful Burden.

The Court has explained that Defendants "contend[], in vague terms, that the injunctive relief sought by the plaintiffs will impair the State Department's ability to operate effectively, but it has not produced any evidence specifically supporting this contention."  PI Order at 51.  That is just as true today: Defendants still offer only a vague declaration as to burden and *no* other evidence.

Defendants first argue that "the Department would have to determine whether each applicant has in fact suffered such injury," Opp. at 6, but that is incorrect.  Plaintiffs crafted the scope of relief such that all PI Class Members necessarily face sufficiently imminent irreparable injury, *see* Mot. at 5–7; when those individuals submit an application, the State Department simply has to process that application in the ordinary course.  It would have to make only one change: permitting the selections of sex markers in the manner it did for years prior to the Policy.  Defendants assume that they would need to engage in some further analysis, but that is not required under Plaintiffs' proposed injunction:

- For **those who do not have a valid passport**, the Department processes the application for a passport, as for anyone who applies.

- For those who **need to renew their current passport because it expires within one year**, the Department processes the renewal, as for anyone who applies to renew a passport within the one-year window the Department *already* uses for online renewals.

- For those who **need to make changes to their passport to have the sex designation on it align with their gender identity or to reflect a name change** (and will be given the wrong sex marker by the Department when they do so), the Department reissues a passport with the corrected name or gender, as for anyone who applies to change.

4

- For those who **need to apply to receive another passport because their passport was lost, stolen, or damaged,** the Department processes the application as for anyone whose passport was lost, stolen, or damaged.

Next, Defendants argue that it would be burdensome to "unwind[]" the issuance of passports if the Court's order were dissolved.  Opp. at 6.  Defendants identify *no* authority that this consideration is appropriate, especially because the Court has already concluded that Plaintiffs are likely prevail on the merits.  *See* PI Order at 55–56.  In addition, it is startling that Defendants appear to be threatening *revocation* of valid passports issued pursuant to court order on the unfounded assumption that the order is later reversed.  That is especially so in light of the State Department's commitment that "[a]ll passports – including those with an X marker or those listing a sex different from your sex at birth – will remain valid for travel until their expiration date."[3]  In any event, there is no reason Defendants would need to invalidate current passports if the injunction were dissolved— as opposed to issuing passports under the Policy going forward—and by the government's estimates, there are already tens of thousands of passports with X markers.  Pierce Decl. (ECF 89-1) ¶ 8.

Last, Defendants argue that the injunction would create "confusion," "uncertainty," and "[i]nconsisten[cy]."  Opp. at 6.  Even assuming these concerns were valid, Defendants' assertions are as vague as could be—and, so, are insufficient to demonstrate undue burden.  *See* PI Order at 50–51.  More fundamentally, Defendants overlook that there is still *no* "evidence that the State Department's functioning was impaired during the nearly three years that it processed and issued passports in precisely the manner requested by the plaintiffs."  *Id.* at 51.  In any event, "[t]here is no contest between the mass denial of a fundamental constitutional right and the modest administrative burdens to be borne by" the government.  *Fish v. Kobach*, 840 F.3d 710, 755 (10th Cir. 2016).

---

[3]    *See* State Department, Sex Marker in Passports, https://travel.state.gov/content/travel/en/passports/passport-help/sex-marker.html (last accessed May 19, 2025).

Respectfully submitted,

May 21, 2025

*/s/ Isaac D. Chaput*
Isaac D. Chaput (*pro hac vice*)
William P. Kasper (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
ichaput@cov.com
wkasper@cov.com

Jessie J. Rossman (BBO # 670685)
Zoe Kreitenberg (BBO # 715356)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: 617-482-3170
jrossman@aclum.org
zkreitenberg@aclum.org

Jon W. Davidson (*pro hac vice*)
    (admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
    (admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso (*pro hac vice*)
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org
jesseks@aclu.org

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-5891
Facsimile: 202-778-5891
jothompson@cov.com
sbender@cov.com

Robert Gianchetti (*pro hac vice*)
Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: 212-841-1000
Facsimile: 212-841-1010
rgianchetti@cov.com
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

/s/ Isaac D. Chaput
Isaac D. Chaput

8