# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ASHTON ORR, *et al.*,

    *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

    *Defendants*.

Case No. 1:25-cv-10313-JEK

(Leave to file granted on May 27, 2025)

# PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING CLASS DEFINITIONS

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. CLASS DEFINITIONS ................................................................................................. 1

III. IMPLEMENTATION .................................................................................................... 3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*,
   618 F.3d 1066 (9th Cir. 2010) ....................................................................................... 5

*Hodges v. Comcast Cable Commc'ns*,
   21 F.4th 535 (9th Cir. 2021) ........................................................................................... 5

*Missouri v. Trump*,
   128 F.4th 979 (8th Cir. 2025) ......................................................................................... 5

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015) ............................................................................................... 4

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ...................................................................................... 4

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*,
   402 U.S. 1 (1971) ........................................................................................................ 3, 5

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ....................................................................................................... 5

**Other Authorities**

Federal Rule of Civil Procedure 23 ................................................................................ *passim*

**I.     INTRODUCTION**

Plaintiffs appreciate the Court's consideration of their Motion for Class Certification and the Court's work in crafting proposed revised class definitions. Plaintiffs generally agree with the Court's proposed revised definitions (ECF 104) and wish to raise two discrete issues to ensure complete relief is accorded to all those with viable claims.

*First*, Plaintiffs propose minor modifications to the Court's proposed definitions to make clear that all transgender, nonbinary, and intersex people receive relief to which they are entitled.

*Second*, Plaintiffs seek to ensure that class members are not unnecessarily or unduly burdened in applying to receive passports under an injunction based on these definitions. Accordingly, Plaintiffs maintain that reverting to the status quo ante—the policy in effect before the Passport Policy—is the most straightforward way to achieve relief for the Classes consistent with the Court's PI Order (ECF 74), prevents forced disclosure of sensitive information to Defendants for class members to get relief, and is consistent with Rule 23 and principles of equity. If, however, the Court is inclined to impose a requirement to determine whether passport applicants fall within the Court's proposed class definitions, Plaintiffs request that it be as minimally burdensome on class members as possible through use of a plain-language "checkbox."

**II.     CLASS DEFINITIONS**

Plaintiffs largely agree with the Court's proposed revised class definitions and believe they satisfy Rule 23 for the same reasons identified in Plaintiffs' prior briefing. Plaintiffs propose a discrete modification to each definition (with deletions ~~struck~~ and additions *emphasized*):

- **M/F Designation Class:** A class of all people (1) ~~who are transgender~~ ***whose gender identity is different from the sex assigned to them under the Passport Policy*** and/or ***who*** have been diagnosed with gender dysphoria, and (2) who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport issued with an "M" or "F" sex designation that is different from the sex assigned to that individual under the Passport Policy.

1

- **X Designation Class:** A class of all non-binary*, transgender, and/or intersex people, and/or people who were not assigned a binary sex at birth,* who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport with an "X" designation.

For the M/F Designation Class, Plaintiffs' modification provides clarity for laypeople attempting to determine their rights in a nuanced area. The record reflects that "transgender" means those whose gender identity is different than their sex assigned at birth (including if they are nonbinary and were assigned a binary sex, or are intersex and were assigned a binary sex different from their gender identity). *See* Corathers Decl. (ECF 78-13) ¶¶ 49–50. But that is not always the lay understanding of the term, and different people (including class members) may have different understandings. Some nonbinary and intersex people do not identify as "transgender" in their everyday lives, *id.*, and would therefore be at risk of not receiving relief under the Court's proposed definition if they incorrectly believed they were not members of the M/F Designation Class. This modification is not intended to differ in substance from the Court's proposal.

For the X Designation Class, Plaintiffs' requested modification clarifies that transgender and intersex people are entitled to relief as part of that Class (as they would be under Plaintiffs' original definition). For many intersex people, for instance, the Passport Policy will either assign them a sex with which they do not identify (*e.g.*, because it is marked on their birth certificate based on examination of external genitalia) or perhaps not assign them a sex at all (*e.g.*, because no sex was marked on their birth certificate). At the same time, neither "M" nor "F" may fully or accurately reflect their gender identity. As a result, "X" may best reflect who they are. They have equal protection and APA claims (and all other claims) that are as viable as any other class member, and the reasoning of the Court's PI Order applies equally to them. Relatedly, Plaintiffs propose adding "people who were not assigned a binary sex at birth," regardless of how they currently identify to ensure that all individuals without birth-assigned binary sex markers will receive relief.

Even for transgender and intersex people who *do* identify as male or female, being forced to use an "M" or "F" on a passport if they do not want to still subjects them to an unconstitutional sex classification that is unnecessary in light of the "X" option. *See* PI Order at 17–21. And being forced to *disclose* that "M" or "F" gender identity every time they use their passport burdens their right to travel and right to informational privacy. *See* ECF 30 at 20–26. As a result, being able to use an "X" marker provides them equal protection and safeguards other constitutional rights. Plaintiffs do not interpret the Court's PI Order to say otherwise. *See* PI Order at 19–20.[1]

## III.   IMPLEMENTATION

Plaintiffs also seek to ensure that, if the Court enters its proposed class definitions or those requested by Plaintiffs here, implementing those class definitions avoids burdening class members as much as possible. *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

The most efficient approach is to revert to the Government's passport sex marker policies that existed before the Passport Policy and that the State Department utilized without problems for years. That option comes with important benefits. It is non-burdensome on class members because they are required only to apply for passports in the ordinary course and select their correct sex marker. It requires no additional process by Defendants, obviating any arguable burden. And it ensures that no one is forced to "out" themselves to the Government by disclosing that they are transgender, nonbinary, intersex, or have a gender dysphoria diagnosis to get relief. On this last

---

[1] To the extent the Court's proposed revised definition was based on the lack of a named plaintiff who is intersex or transgender and wants an "X" marker, no such named plaintiff is needed to satisfy Rule 23: the claims of the X Class representatives satisfy typicality for *any* person for whom a binary marker is inappropriate or whose rights would be violated by forcing them to use a binary marker, ECF 78 at 10–19, and Defendants have not argued otherwise, ECF 95 at 1.

3

point, forcing disclosure of such sensitive information from class members will in itself create new and considerable privacy concerns on top of the privacy concerns on which Plaintiffs' claims are based. These concerns are compounded because Defendants' actions here were motivated by unlawful animus against class members. *See* PI Order at 26–32.

At the May 27 hearing, the Court considered whether an injunction like this could be slightly overbroad in that a person who is cisgender, binary, and non-intersex could theoretically select a sex marker that did not align with their gender identity or an "X." That possibility does not conflict with Rule 23, violate principles of equity, or undermine this remedial approach.

As for Rule 23, there is no dispute that the overwhelming majority of those benefited by the injunction will be class members with full sets of claims: the record reflects legitimate reasons that transgender, nonbinary, and intersex people would seek these sex markers, *see* ECF 30; no reason that others would do so in meaningful numbers; and no evidence that this was an issue in practice under the prior policy. And if certification is warranted, as here, it cannot be defeated by "speculative or hypothetical" concerns. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015). Further, neither Rule 23(a) nor Rule 23(b)(2) demand complete overlap of claims across the class or between representatives and class members. ECF 78 at 9–19; *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (upholding (b)(2) certification and explaining that a "class will often include persons who have not been injured by the defendant's conduct [and that] possibility or indeed inevitability does not preclude class certification" (cleaned up)).[2]

As for equity, the Court has explained that Plaintiffs' request to revert to the status quo before the Passport Policy is a "prototypical example of an injunction." PI Order at 53. There is

---

[2] As noted at the hearing, the individual in this hypothetical could still have viable claims: an APA claim (they are subject to an arbitrary and capricious policy) and privacy claim (they are forced to reveal their sex assigned at birth when they use their passport without sufficient justification).

4

nothing unusual or improper about injunctions having "incidental benefit[s]" for individuals other than the plaintiffs. *Hodges v. Comcast Cable Commc'ns*, 21 F.4th 535, 546 (9th Cir. 2021). Even if the rare individual in the Court's hypothetical sought the benefits of the injunction, that incidental benefit is no reason to narrow the scope of relief in a way that prejudices all class members. *E.g.*, *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1083 (9th Cir. 2010) ("An injunction is not necessarily made overbroad by extending benefit or protection to persons other than the prevailing parties . . . if such breadth is necessary to give prevailing parties the relief to which they are entitled." (cleaned up)); *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) ("injunctions [may properly] advantage[] nonparties" when the "benefit was merely incidental," such as "[i]njunctions barring public nuisances").

That said, if the Court is inclined to impose further process to implement its new class definitions, the Court should exercise its discretion in crafting relief, *see Swann*, 402 U.S. at 15, to require no more than a simple "checkbox" accompanying the process of applying for a passport that describes in plain and understandable terms who qualifies as a member of the Classes and asks individuals to check the box if they are in the Classes (and not be required to do more, such as submitting medical documentation).[3] *See, e.g.*, *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025) (crafting terms of injunction to avoid "chaos and uncertainty" for plaintiffs). Doing so best vindicates class members' rights by avoiding imposition of unnecessary barriers to relief and reducing (though not eliminating) the concerns discussed above of forcing people to out themselves as transgender, nonbinary, and/or intersex to the Government to receive relief.

---

[3] Plaintiffs propose: "If I am selecting a sex that is different than the sex on my original birth certificate, or if I am selecting an "X" sex marker, I confirm that at least one of the following is true: (1) I identify as transgender, nonbinary, and/or intersex; (2) I have been diagnosed with gender dysphoria; or (3) my original birth certificate does not reflect a sex (because, for example, the sex marker is blank or is an "X")."

5

|  |  |
|---|---|
| | Respectfully submitted, |
| June 3, 2025 | */s/ Isaac D. Chaput*<br>Isaac D. Chaput (*pro hac vice*)<br>William P. Kasper (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone: 415-591-6000<br>Facsimile: 415-591-6091<br>ichaput@cov.com<br>wkasper@cov.com<br><br>Jessie J. Rossman (BBO # 670685)<br>Zoe Kreitenberg (BBO # 715356)<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF MASSACHUSETTS, INC.<br>One Center Plaza, Suite 850<br>Boston, MA 02108<br>Telephone: 617-482-3170<br>jrossman@aclum.org<br>zkreitenberg@aclum.org<br><br>Jon W. Davidson (*pro hac vice*)<br>   (admitted only in California)<br>Li Nowlin-Sohl (*pro hac vice*)<br>   (admitted only in Washington)<br>Sruti J. Swaminathan (*pro hac vice*)<br>Malita V. Picasso (*pro hac vice*)<br>James D. Esseks (*pro hac vice*)<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Telephone: 212-549-2500<br>Facsimile: 212-549-2650<br>jondavidson@aclu.org<br>lnowlin-sohl@aclu.org<br>sswaminathan@aclu.org<br>mpicasso@aclu.org<br>jesseks@aclu.org |

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-5891
Facsimile: 202-778-5891
jothompson@cov.com
sbender@cov.com

Robert Gianchetti (*pro hac vice*)
Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: 212-841-1000
Facsimile: 212-841-1010
rgianchetti@cov.com
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

*/s/ Isaac D. Chaput*
Isaac D. Chaput