JOSHUA HARRELL
(they/them/their/theirs)
935 Kearny St #65
San Francisco, CA 94133
650-334-9427
joshuaj1729@gmail.com
Self-represented

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR *et al.*, | Case No.: 1:25-cv-10313-JEK |
| Plaintiffs, | |
| vs. | |
| DONALD TRUMP *et al.*, | |
| Defendants, | |
| JOSHUA HARRELL, | |
| Intervenor. | |

This Court invited the parties (ECF 104) to submit briefing by June 3 regarding two proposed class definitions ahead of a potential class certification. Intervenor Joshua Harrell supports Plaintiffs' proposed class definition and opposes the alternative class definition considered by this Court.

Harrell is a United States citizen. Like all US citizens, Harrell has an interest in traveling internationally, using a US passport that correctly identifies Harrell. Harrell's sex and gender are nonbinary. Harrell applied for and obtained a California driver's license with their sex listed as X for nonbinary in September 2020. This sex marker remained the same when Harrell replaced their license in July 2024. Under the status quo, Defendants' passport policy, which Plaintiffs seek to

overturn, only allows the issuance of US passports with male or female markers, apparently denying nonbinary American citizens like Harrell passports, and with them, the right to travel internationally under the imprimatur of the Secretary of State. This Court has already determined that this system is unconstitutional in violation of the Fifth Amendment (ECF 74-75). However, this Court only granted relief to the named Plaintiffs. Now before this Court is the question of whether a class should be certified for relief, and if so, how the class should be defined (ECF 77, 79, 104).

**Definitions:** Plaintiffs' proposed class definition (ECF 77), which appears the same as that in their Complaint except that it has now been modified to exclude the Schlacter plaintiffs:

1. A class of all people who currently want, or in the future will want, a U.S. passport issued with an "F" or "M" sex designation that is different from the sex assigned to that individual under the Passport Policy ("M/F Designation Class"); and

2. A class of all people who currently want, or in the future will want, a U.S. passport and wish to use an "X" sex designation ("X Designation Class").

This Court's proposed class definition (ECF 104):

1. A class of all people (1) who are transgender and/or have been diagnosed with gender dysphoria, and (2) who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport issued with an "M" or "F" sex designation that is different from the sex assigned to that individual under the Passport Policy ("M/F Designation Class"); and

2. A class of all non-binary people who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport with an "X" designation ("X Designation Class").

This Court's definition changes two things:

a. limits the class to (1) people "who are transgender and/or have been diagnosed with gender dysphoria" and (2) non-binary people, and

b. predicates the class on passport application rather than mere wishes.

With respect to (b), Plaintiffs acknowledge (ECF 95, p. 5) that "Someone can demonstrate that they want a passport by applying". Thus, the distinction of (b) seems trivial to Harrell, and for simplicity, Harrell expresses no opinion on which definition is better with respect to (b). Harrell instead focuses the remainder of this brief on (a).

**Plaintiffs' definition is the most natural definition of a Rule 23(b)(2) class.** Plaintiffs have made clear from the beginning that they seek a Rule 23(b)(2) class – where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". It is undisputed that the prior status quo, prior to Defendants' passport policy, was to allow the choice of M, F, or X on passports based on self-identification. Plaintiffs have clearly sought this prior status quo. Plaintiffs' class definition perfectly fits the actions and omissions of the opposing party, making it a perfect definition under Rule 23(b)(2). Limiting the class to transgender people, those diagnosed with gender dysphoria, or nonbinary people would mismatch the actions or omissions for which relief is sought. If this Court proposes its definition based on any concept that those who are not transgender, nonbinary, or diagnosed with dysphoria are barred from relief on the merits, then this Court is engaging in an unlawful merits analysis at the class certification stage (Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013)).

**The Court's proposed class definitions are not clearly defined.** It is unclear exactly what is meant by the Court's use of the term "non-binary" in its proposed definition. The Court must always clearly define a Rule 23 class (Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592 (3d Cir. 2012)). The Court's clarity breaks down at the term "non-binary". Unless the Court proposed the term "non-binary" as pure decoration, the definition envisages situations where a person applies for a passport with an X marker, yet would be ineligible for relief because they are not non-binary – despite being eligible for the X marker under State Department policy before Defendants initiated their challenged actions.

Even Harrell's class membership would be at risk. Even though Harrell has had legal documents denoting and reaffirming their correct gender longer than four of the seven original Plaintiffs[1], the documents were in California, where like many states, the sex field on the driver's license is entirely based on self-certification (CA Vehicle Code §12800(a)). If this Court does not

---

[1] To clarify, of course it is not a competition. This point highlights the absurdity of excluding Harrell from relief, rather than undermining Plaintiffs' identities.

consider self-certification adequate for class eligibility, one might wonder whether a stable legal identity lasting several years is adequate for class eligibility, where that legal identity is also based on self-certification. One might wonder what kind of intrusive evidence Harrell would be required to show simply to confirm that they are non-binary for class eligibility, even when the previous State Department policy that Defendants disrupted declined to require any such evidence.

**The class, as certified, fails to eliminate the unlawful threat of criminal prosecution.** Plaintiffs correctly fear (ECF 30, p. 20-21) that the challenged policy implicates the right to travel by giving nonbinary and transgender no choice but to travel with documents that incorrectly classify their gender, or not travel at all. But Harrell diverges from Plaintiffs by also noting that for non-binary applicants, the stakes are even worse: we can only travel internationally after indicating on a federal government form that we are either male or female. **That is a lie**. Any time a person lies on a federal government form, criminal charges, such as 18 USC §1001, become a relevant discussion. Still, there should be two sound defenses that bar a conviction: the Fifth Amendment equal protection guarantees, and immateriality. But Defendants have indicated that they do not care about either of these defenses: in this case, Defendants have already argued that (ECF 53, p. 17-20) their policy does not violate the Fifth Amendment. Presumably, this would imply that they believe the Fifth Amendment cannot be an excuse for lying on a government form, even if the government form cannot be completed without selecting male or female. Furthermore, Defendants, through the State Department, have already begun invoking the materiality provisions of similar statutes to deny benefits: In a State Department memo entitled 25 STATE 15576 and published by Truthout[2], the State Department instructed consular officers to deny visas pursuant to INA Section 212(a)(6)(C)(i) when: "For an applicant traveling to the United States for an athletic competition, for example, misrepresentation of sex may be material if it cut off a line of inquiry regarding whether the athlete is permitted to participate in the competition." This guidance is apparently pursuant to Executive Order 14201. Yet no US law allows the State Department to consider sex as prima facie evidence of ineligibility for an athletic competition. An invitation letter from an organizer is prima facie

---

[2] https://truthout.org/articles/did-marco-rubio-just-ban-trans-people-seeking-visas-from-us-entry/ . Accessed May 29, 2025.

"social transition" to include 'calling a child "nonbinary"', a plain implication that nonbinary children do not exist.

3. Defendants Trump and USA, through the Executive-controlled Department of Health and Human Services, published on May 1, 2025 a report entitled "Treatment for Pediatric Gender Dysphoria Review of Evidence and Best Practices". This 409 page report in many ways denies the existence of non-binary people (bold added):

   a. "The same document also **incorrectly** states that sex is not "binary," that it exists "along a spectrum," and that a person's sex can change" (p. 32, fn. 15)

   b. "even highly unusual surgeries such as **non-binary** mastectomies (where **female** breasts are reshaped to resemble gynecomastia in males)" (p. 120, fn. 78)

   c. "A parallel linguistic evolution in society at large has resulted in the increasing adoption of labels such as "nonbinary," "genderqueer," "queer," "gender-fluid," "two-spirit," and "transgender." The individuals who identify with these labels—unlike historical or contemporary "transsexuals"—are not a patient group of any kind." (p. 243)

   d. "The growing use of identity labels such as "transgender" and "nonbinary" among adolescents is an important topic for social science research. In the current U.S. healthcare environment, **self-labeling** of this kind increases the likelihood that a young person will seek input from a gender clinic[...]" (p. 243)

**Conclusion:** Plaintiffs' class definition, specifically inasmuch as it declines to limit the class to transgender and non-binary people and those diagnosed with gender dysphoria, is the only one that will ensure that all people harmed by the specifically challenged policies, including Harrell, will be able to seek relief.

May 30, 2025

_____
Joshua Harrell

## Certificate of Service

I certify that I, Joshua Harrell, served the Motion to Intervene and Intervenor's Brief:

Leaving at the front desk, Floor 54, Salesforce Tower 5/30/2025

Isaac D. Chaput
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105

By USPS mail on May 30, 2025 to:
ELIZABETH B. LAYENDECKER
Or other attorney assigned to Case 1:25-cv-10313-JEK (District of Massachusetts)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044

*/s/ Joshua Harrell*