UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-10313-JEK |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE OR MODIFY PRELIMINARY INJUNCTION AND FOR EXPEDITED BRIEFING**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.    BACKGROUND .............................................................................................................. 3

III.    LEGAL STANDARD ...................................................................................................... 8

IV.    ARGUMENT.................................................................................................................... 8

V.    CONCLUSION............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ............................................................................................................. 8

*Hawkins v. Dep't of Health & Hum. Servs.*,
   665 F.3d 25 (1st Cir. 2012) .................................................................................................. 8

*Maness v. Meyers*,
   419 U.S. 449 (1975) ........................................................................................................... 10

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949) ............................................................................................................. 8

*New York v. Trump*,
   --- F. Supp. 3d. ----, 2025 WL 1009025 (D.R.I. Apr. 4, 2025) ........................................ 8, 11

*New York v. Trump*,
   2025 WL 440873 (D.R.I. Feb. 10, 2025) ........................................................................... 10

*Ricci v. Okin*,
   537 F. Supp. 817 (D. Mass. 1982) ..................................................................................... 11

*United States v. Saccoccia*,
   433 F.3d 19 (1st Cir. 2005) .................................................................................................. 8

I.      **INTRODUCTION**

A week after the Court issued its Order of Preliminary Injunction (the "Preliminary Injunction" or "PI") (ECF 116), Defendants have not complied and are refusing to provide meaningful information to Plaintiffs about when they will be in compliance or what steps they have purportedly taken to comply. Plaintiffs regret that this Motion is necessary and would not have brought it if Defendants had shown that they were working in good faith to promptly comply with the Court's order. As Plaintiffs informed Defendants before filing this Motion, if Defendants provided a date certain by which the Preliminary Injunction would be implemented, or sufficient information about why there is an unexplained delay, Plaintiffs would reevaluate the Motion. But Defendants are slow-walking compliance, stonewalling class counsel's and class members' requests for basic information, and continuing to issue passports with incorrect sex designations in violation of the Preliminary Injunction. Because time is of the essence for many class members, Plaintiffs are forced to seek relief from this Court.

The Court prohibited Defendants from enforcing their unlawful Passport Policy against members of the Classes who are likely to suffer irreparable injury during pendency of this case (the "Preliminary Injunction Class" or "PI Class") and ordered Defendants to "permit members of the PI Class to self-select a sex designation—'M,' 'F,' or 'X'—that is different from the sex assigned to those individuals under the Passport Policy." Preliminary Injunction at 1–2. The Preliminary Injunction took effect "immediately." *Id.* at 3. Yet passport offices—apparently following orders from the Department of State—have turned PI Class members away, refused to issue passports to PI Class members bearing sex markers that differ from the sex assigned to them under the Passport Policy, stated that all applications seeking such a sex marker are not being processed, and continue to only issue passports to PI Class members if they accept the sex marker

1

required by the Passport Policy. The State Department still advises the public on its website that "we will no longer issue U.S. passports . . . with an X marker" and "only issue passports with an M or F sex marker that match the customer's biological sex at birth" as required by the Executive Order.

While Plaintiffs appreciate that government policy cannot always shift on a dime, Defendants were able to implement the now-enjoined Passport Policy within just *days* of the president's Executive Order. *See* Am. Compl. (ECF 76) ¶¶ 84–101. After repeated requests, Defendants have claimed they are working to comply, asserted that compliance is challenging for them, and suggested that members of the PI Class with urgent travel needs obtain a passport that is inconsistent with the Court's order and later submit an application for a correction. This response ignores the Court's clear direction that its Preliminary Injunction ruling took effect immediately and that Defendants have two options for implementing that ruling: (i) process each passport application consistent with the applicant's requested sex designation, or (ii) require applicants to fill out a simple "checkbox" attestation that they entitled to relief under the Preliminary Injunction.

As a result, Plaintiffs respectfully move that this Court issue an order enforcing the Preliminary Injunction by requiring Defendants' full compliance within twenty-four hours of that order's issuance. Or, given the nature of the requested relief, Plaintiffs alternatively request that the Court modify the Preliminary Injunction to achieve the same end. Regardless of the mechanism, Plaintiffs' request is a modest, measured step to ensure compliance with this Court's Preliminary Injunction.

## II.    BACKGROUND

This April, the Court granted Plaintiffs' Motion for a Preliminary Injunction, concluding that Defendants' Passport Policy likely violated the Constitution's Equal Protection guarantee and that the Policy was promulgated in a manner contrary to the Administrative Procedure Act and the Paperwork Reduction Act. *See* Memorandum and Order on Plaintiffs' Motion to Stay Agency Action and for Preliminary Injunction (ECF 74) at 3 (the "April 2025 Preliminary Injunction"). The Court further concluded that six of the named plaintiffs had demonstrated a likelihood of irreparable harm absent an injunction and that the remaining preliminary injunction factors weighted "strongly" in their favor. *Id.* Plaintiffs were able to work constructively with Defendants to implement the April 2025 Preliminary Injunction, and the named plaintiffs covered by that injunction have been issued new passports bearing the sex marker that was requested in their passport applications. Chaput Decl. ¶ 2.

Following additional briefing by the parties, the Court issued an order certifying two classes and applying its April 2025 preliminary injunction to certain members of these classes. Specifically, the Court certified:

1. A class of all people (1) whose gender identity is different from the sex assigned to them under the Passport Policy and/or who have been diagnosed with gender dysphoria, and (2) who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport issued with an "M" or "F" sex designation that is different from the sex assigned to that individual under the Passport Policy ("M/F Designation Class"); and

2. A class of all people whose gender identity is different from the sex assigned to them under the Passport Policy and who have applied, or who, but for the Passport

3

>   Policy, would apply, for a U.S. passport with an "X" designation ("X Designation
>
>   Class").

*See* ECF 115 at 32.

The Court determined that, for the reasons discussed in the April 2025 Preliminary Injunction, members of these classes were likely to succeed on the merits of their constitutional and statutory claims. *Id.* at 22. The Court also concluded that "the risk of irreparable harm faced by the PI-eligible plaintiffs is representative of the risk faced by all PI Class members" and that the remaining equitable factors likewise favored the members of the PI Class. *Id.* at 27, 31. Accordingly, the Court issued an order enjoining Defendants from enforcing the Passport Policy as to members of the PI Class and ordering Defendants to "issue passports to members of the PI Class consistent with the State Department's policy as of January 19, 2025." Preliminary Injunction at 2.

On June 18—the day after this Court issued its ruling—class counsel contacted Defendants' counsel in an attempt to understand the steps Defendants would take to immediately implement the Preliminary Injunction, including: the expected timeframe for when a passport application compliant with the Preliminary Injunction would be available for use; the method of application class members should utilize in the meantime; and the mechanism by which class members who have received a passport with a sex designation inconsistent with their requested sex designation since January 20, 2025 may correct this. Chaput Decl., Ex. A.

Defendants have not meaningfully responded to those questions despite class counsel's repeated attempts to obtain this basic information. In their initial response, on June 19, 2025, their counsel said only that "the State Department is making its best efforts to comply with the preliminary injunction issued by the court on Tuesday and is actively taking steps to implement

4

the order," with no substance or detail of what those "efforts" were or when they would be completed. *Id.* Following further prompting by class counsel, Defendants' counsel again declined to provide substantive responses, instead indicating on June 20, 2025, that they were working to implement the Preliminary Injunction Order "in a manner that ensures uniform administration and consistency with government policies and procedures." *Id.* And, while Defendants' counsel indicated that "class members can continue to submit passport applications," they provided no further information on when or how those applications would be processed. *Id.*

In the meantime, class members remain unable to obtain passports bearing their requested sex marker, and the State Department is either holding their applications or only issuing passports with a sex marker matching their sex assigned at birth to PI class members under the enjoined policy. For example:

- On June 20, the passport agency in Saint Albans, Vermont refused to issue class member Andrew Sass-Cao a passport containing an "M" sex designation. Sass-Cao Decl. ¶ 14. Multiple employees in that office, including a supervisor, told him that the office is awaiting further guidance from their legal team, and that there is nothing they can do in the meantime. *Id.* ¶¶ 14-15.
- On June 20, the passport agency in San Francisco, California refused to issue class member Archer Christian Lombardi a passport containing an "M" sex designation. Lombardi Decl. ¶ 9. An employee at that office responded to Lombardi to the effect of "we don't answer to courts. We get our guidance from the State Department." *Id.* When Lombardi asked that employee, "You're telling me you that you don't have to follow the law," the employee responded, "We don't." And that employee produced a June 18 memorandum from the State Department advising passport offices to stop

5

processing passport applications of anyone seeking to change their sex designation. *Id.* ¶ 11.

- On June 20, a passport office in Seattle, Washington refused to issue class member Rhian Thelma Boarmyn a passport containing an "F" sex designation. Boarmyn Decl. ¶ 13. After asking if "this is a gender thing," an employee found a supervisor, who told Boarmyn that he had received guidance that the office should neither approve nor deny passport applications that request a sex designation different from the applicant's sex assigned at birth. *Id.*

- On June 23, the National Passport Center in Portsmouth, New Hampshire refused to issue class member Chris Schindler a passport containing an "M" sex designation. Schindler Decl. ¶ 11. When presented with a copy of the Preliminary Injunction, a supervisor at that office responded to the effect of, "We are not intending to comply with the injunction. We have been told to only follow the President's Executive Order, unless the Supreme Court directs otherwise." *Id.* ¶ 12. The office subsequently issued Schindler a passport containing an "F" sex designation. *Id.* ¶ 19.

- On June 23, a passport office in Seattle, Washington refused to issue class member Theodore Stanford Davenport a passport containing an "M" sex designation. Davenport Decl. ¶ 9. When presented with a copy of the Preliminary Injunction, a passport officer responded to the effect of, "We haven't gotten any guidance about complying with the court order. Tomorrow the Fourth Circuit [sic] or Supreme Court could rule against it, so we're not doing anything." *Id.* ¶ 10. The office subsequently issued Davenport a passport containing an "F" sex designation. *Id.* ¶ 11.

On June 23, 2025, in another attempt to resolve this impasse without motion practice, class counsel reiterated the request that Defendants identify the "steps that are being taken to comply with the injunction" and "a date certain by which the injunction will be implemented." Chaput Decl., Ex. A. In that correspondence, class counsel indicated that there may be no need for the Court to intervene if Defendants were to provide comprehensive and reasonable answers to those questions. *Id.* In response, counsel for Defendants reiterated that "the [State] Department is moving as quickly as it is able," but again declined to provide a date certain for its compliance. *Id.* And while this response referred generally to the need "to develop both manual and electronic systems for identifying class members as defined by the court and workstreams to process class members' applications," *id.*, Defendants' counsel declined to provide any further details regarding these "systems" and "workstreams" or explain why they are not simply implementing the "checkbox" attestation permitted by the Court. *See* Preliminary Injunction at 2. Defendants' counsel also stated that if class members have an immediate need for a passport, they should simply accept an incorrect sex designation and come back later to obtain yet another new passport. They offered no explanation for why they are continuing to violate the Preliminary Injunction by issuing such inaccurate passports—even to individuals who appear at passport offices with sworn statements that they qualify for relief under the Preliminary Injunction.

On June 25, 2025, following further inquiry by class counsel, counsel for Defendants confirmed that "passport offices received interim instructions to hold passport applications for applicants who might be class members pending finalization of the State Department's process for PI class members." Chaput Decl., Ex. A.

### III. LEGAL STANDARD

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). Because Plaintiffs presently seek only a date certain that the injunction must be implemented, they submit that their request is in the nature of a modification to the injunction, which rests in the Court's discretion. *See Dombrowski v. Pfister*, 380 U.S. 479, 492 (1965) ("the settled rule of our cases is that district courts retain power to modify injunctions in light of changed circumstances"). Some courts, when considering motions to enforce injunctions, apply the four-factor test for civil contempt. *E.g.*, *New York v. Trump*, --- F. Supp. 3d. ----, 2025 WL 1009025, at *2 n.3 (D.R.I. Apr. 4, 2025). Under that standard, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) ability to comply; and (4) violation of the order. *Id.* at 2 (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)). Under either standard, relief is warranted here.

### IV. ARGUMENT

There is no dispute that Defendants had notice of the order and that the order was unambiguous. The Preliminary Injunction was served on all counsel of record at the time it was docketed, and it is clear that Defendants have actual notice of the order because they "confirm[ed] that the State Department is making its best efforts to comply with the preliminary injunction." Chaput Decl., Ex. A. The Preliminary Injunction directed Defendants to "issue passports to members of the PI Class consistent with the State Department's policy as of January 19, 2025" and took effect "immediately." Preliminary Injunction at 2. Defendants have not sought clarification or an extension of time to comply from the Court and represented (albeit vaguely) they would

8

comply at some indeterminate point in the future, indicating they understand what is required of them.

Defendants are plainly in violation of the Preliminary Injunction. As the attached declarations attest, PI Class members remain unable to obtain passports bearing the sex markers required by the Preliminary Injunction. *See* Sass-Cao Decl. ¶ 14; Lombardi Decl. ¶¶ 9, 11; Schindler Decl. ¶ 11; Boarmyn Decl. ¶ 13; Davenport Decl. ¶¶ 9–10. The online application provided by the State Department remains unchanged since the Preliminary Injunction issued.[1] The State Department webpage on "Sex Marker in Passports" still states, "The White House issued Executive Order 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government' on January 20, 2025. Under the executive order, we will no longer issue U.S. passports or Consular Reports of Birth Abroad (CRBAs) with an X marker. We will only issue passports with an M or F sex marker that match the customer's biological sex at birth."[2] That website nowhere mentions this Court's Preliminary Injunction. And Defendants' counsel has confirmed that passport offices have been instructed "to hold passport applications for applicants who might be class members pending finalization of the State Department's process for PI class members." Chaput Decl., Ex. A.

Although Defendants' counsel represented that Defendants are working "as fast as possible" to implement Court's order, Chaput Decl., Ex. A, this assertion is unsupported by any facts or details. It is also belied by Defendants' prior actions with regards to the Passport Policy. As their own submissions attest, it took the State Department just two days after the issuance of

---

[1] *See generally* Department of State, U.S. Passports, https://travel.state.gov/content/travel/en/passports.html (last accessed June 25, 2025).
[2] *See* Department of State, Sex Marker in Passports, https://travel.state.gov/content/travel/en/passports/passport-help/sex-marker.html (last accessed June 25, 2025).

9

the Executive Order to "instruct[] all domestic passport agencies that the Department would no longer issue U.S. passports with an 'X' marker and to hold all non-urgent applications seeking an X marker or seeking a sex marker other than the applicant's biological sex at birth," and just three days from issuance of the Executive Order to ensure these instructions were "transmitted to all U.S. diplomatic/consular posts abroad." Pierce Decl. (ECF 53-1) ¶ 15. Plainly, prompt compliance with a directive to change policy is possible, yet Defendants have displayed no such urgency in their response to the Court's Preliminary Injunction. *Cf. New York v. Trump*, 2025 WL 440873, at *1 (D.R.I. Feb. 10, 2025) (granting motion to enforce injunctive relief entered only a week prior to the motion's filing because of the "basic proposition that ***all orders and judgments of courts must be complied with promptly***") (emphasis in original) (quoting *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975)).

Defendants' delay is particularly egregious in light of their refusal to provide any information on when they intend to comply with the Court's order. As discussed, within hours of the docketing of the Preliminary Injunction, members of the PI Classes—some of whom have imminent travel plans—began seeking new identity documents. Defendants' refusal to provide useful information to Plaintiffs' counsel prejudices the ability of PI Class members to actually take advantage of the relief the Court granted.

Finally, there is no question that Defendants have the ability to comply with the Preliminary Injunction: it requires only that they revert to the policy they employed for *years* without any difficulty reflected on the record. Defendants' counsel represented that they needed to undertake a purported "labor intensive process" to "develop both manual and electronic systems for identifying the class members," Chaput Decl., Ex. A, ignoring that the Court provided them discretion to permit a "checkbox" attesting to class membership to remove any arguable

10

administrative burden they asserted. Defendants have provided no explanation, let alone any evidence, to demonstrate that such a practical solution "cannot be accomplished in mere days." Defendants are required to take "all the reasonable steps within their power to insure compliance with the order[.]" *Ricci v. Okin*, 537 F. Supp. 817, 824 (D. Mass. 1982). They self-evidently have not.

The Court should therefore exercise its discretion to enforce (or modify) the Preliminary Injunction to require that Defendants come into full compliance within 24 hours of that order's issuance.[3] That is more than reasonable and would still be nearly two weeks after the Court issued the Preliminary Injunction, given the briefing schedule for this motion. Just as other courts have recently done in the face of this Administration's violations of a court order, *see New York*, 2025 WL 1009025, at *5, the Court should remedy Defendants' refusal to comply with its clear order.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court require Defendants to file any opposition to this motion by 11:59 pm ET on June 27, 2025, and to issue an order directing Defendants to fully implement the injunction within 24 hours.

Respectfully submitted,

June 25, 2025

/s/ *Isaac D. Chaput*
Isaac D. Chaput (*pro hac vice*)
William P. Kasper *(pro hac vice)*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
ichaput@cov.com
wkasper@cov.com

---

[3] Plaintiffs reserve all rights to seek further remedies, including contempt sanctions.

11

Jessie J. Rossman (BBO # 670685)
Zoe Kreitenberg (BBO # 715356)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: 617-482-3170
jrossman@aclum.org
zkreitenberg@aclum.org

Jon W. Davidson (*pro hac vice*)
  (admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
  (admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso (*pro hac vice*)
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org
jesseks@aclu.org

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

12

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-5891
Facsimile: 202-778-5891
jothompson@cov.com
sbender@cov.com

Robert C. Gianchetti (*pro hac vice*)
Yuval Mor (*pro hac vice*)
Alyssa L. Curcio (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: 212-841-1000
Facsimile: 212-841-1010
rgianchetti@cov.com
ymor@cov.com
acurcio@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

/s/ *Isaac D. Chaput*
Isaac D. Chaput