IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States*, et al., <br><br> *Defendants*. | Civil Action No. 1:25-cv-10313 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO ENFORCE PRELIMINARY INJUNCTION**

**INTRODUCTION**

On June 17, 2025, the Court expanded a prior preliminary injunction to cover a Preliminary Injunction Class ("PI Class"). *See* ECF Nos. 115, 116. The State Department immediately began to work on how to implement the injunction, including, among other issues, how to address the ascertainability problems with respect to the PI Class. As discussed in the Declaration of Ryan M. Dooley, Acting Assistant Secretary for Passport Services of the U.S. Department of State, Bureau of Consular Affairs (Exhibit 1, Dooley Decl.), the Department began issuing passports that are compliant with the injunction on July 1, 2025. The next day, it also posted instructions and relevant forms on its Travel.State.gov website for members of the PI Class to apply for an injunction-compliant passport. The Department issued worldwide guidance to domestic passport centers and agencies and to U.S. embassies and consulates on July 2, 2025. Because the Department has complied and will continue to comply with the injunction, Defendants respectfully request that the Court deny the motion to compel compliance as moot and vacate the hearing currently scheduled for July 10, 2025.

While Defendants only recently have been able to begin issuing injunction-compliant passports to the PI Class members, they have engaged in "diligent, good faith efforts" to accomplish what the Court ordered and to overcome the ascertainability and other challenges presented. *See Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991). These efforts include (1) instructing domestic passport agencies and centers and overseas embassies and consulates to temporarily suspend processing any new or in-process application for any individual who may be requesting a sex marker inconsistent with their sex; (2) drafting for approval a functional form of attestation to be used to ascertain potential class members and developing a plan to incorporate such an ancillary document if approved into existing worldwide workflows, (3) creating a new

Information Request Letter to be sent to potential members of the PI Class who do not include an attestation with their passport application; and (4) establishing an interim passport process for members of the PI class with urgent travel plans. Dooley Decl. ¶¶ 9, 11, 14. These efforts have culminated in the implementation of a process for PI Class members to obtain passports compliant with the injunction. *Id.* ¶¶ 10–13. There is accordingly no need for the Court to address the motion to compel compliance or to hold a hearing on such a motion.

## BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed Reg. 8,615 (Jan. 30, 2025), which declares the Government's policy to recognize two sexes, male and female, and sets forth definitions of sex, female, and male that are to be used across the federal government. The Executive Order also instructs the State Department to implement changes to passports such that they accurately reflect the holder's sex according to those definitions. *Id.* Shortly thereafter, the State Department updated its passport policy in light of the Executive Order. For a more extensive background discussion about the Passport Policy, Defendants respectfully refer the Court to their Opposition to Plaintiffs' Motion to Stay Agency Action and for Preliminary Injunction (ECF No. 53 at 2–5).

Plaintiffs filed this lawsuit on February 7, 2025, and the Court issued a preliminary injunction as to six of seven named Plaintiffs. *See* ECF Nos. 75, 76. As Plaintiffs report, the parties "work[ed] constructively" to implement the preliminary injunction, and the State Department "issued new passports bearing the sex markers that was requested in the passport application." Chaput Decl. ¶ 2, ECF No. 118-1.

Plaintiffs subsequently filed a motion for class certification and a motion to extend the preliminary injunction to the PI Class. *See* ECF Nos. 77, 78, 79, 80. After holding a hearing on both motions, the Court ordered additional briefing from the parties on its proposed class definitions. ECF No. 104. In both its opposition to Plaintiffs' motion for class certification and its brief in response to the Court's order, Defendants emphasized the class ascertainability issues presented. *See* ECF No. 88 at 11–13; ECF No. 107 at 2–3. In particular, Defendants noted that the PI Class membership would be especially difficult to ascertain and stated that "preliminary class members would have to submit some kind of standardized attestation as to their membership in the preliminary class or otherwise self-identify as a class member." ECF No. 107 at 3 n.2.

On June 17, the Court granted Plaintiffs' motions. *See* ECF Nos. 115, 116. To ascertain class membership, the Court's order provides that "[i]f Agency Defendants conclude that it is necessary to request additional information to determine whether a passport applicant is a member of the PI Class, they may instruct applicants to attest, by checking a box" in a sample statement that the Court devised for class members to submit along with their passport application. ECF No. 116 at 2.

Since June 17, 2025, the State Department has been working to implement the preliminary injunction in a manner that will not bring passport adjudications to a grinding halt for all applicants, while ensuring that no passports are issued in violation of the Court's order. *See* Dooley Decl. ¶¶ 8, 10–11. To that end, the State Department took interim measures such as pausing adjudications for applicants who adjudicators believe might be PI Class members and establishing an interim passport process for members of the PI class with urgent travel plans. *Id.* ¶¶ 9, 14.

On July 1, 2025, the State Department began issuing passports to PI Class members that are compliant with the injunction. *Id.* ¶ 10. On July 2, 2025, the State Department posted an

4

attestation form and instructions on Travel.State.gov for PI Class members to submit with their passport applications. *Id.*; *see* Exhibits A & B to Dooley Decl. In addition, the State Department created a new Information Request Letter, Exhibit C to Dooley Decl., for use with applicants who the State Department believes may be class members but did not submit an Attestation with their application. *Id.* ¶ 11. On July 2, 2025, the State Department issued worldwide guidance to domestic passport centers and agencies as well as embassies and consulates regarding the use of these new documents to ensure compliance with the preliminary injunction. *Id.* ¶ 13.

## LEGAL STANDARDS

"Under traditional principles of equity practice, courts may impose civil contempt sanctions to coerce a defendant into compliance with an injunction." *Trump v. CASA, Inc.*, --- S. Ct. ----, 2025 WL 1773631, at *10, n.11 (June 27, 2025) (quotation marks and alterations omitted). When moving to hold a party in contempt for violation of a court order, the movant must prove by clear and convincing evidence that 1) the order was violated; 2) the order was clear and unambiguous; and 3) compliance with the order was possible. *Hawkins v. Dep't of Health & Hum. Servs. for New Hampshire, Comm'r*, 665 F.3d 25, 31 (1st Cir. 2012); *United States v. Puerto Rico*, 642 F.3d 103, 108 (1st Cir. 2011). "[S]ubstantial compliance," however, "can avert a finding of contempt," and "substantial compliance" is satisfied with a showing of "diligent, good faith efforts." *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991).

## ARGUMENT

Defendants have complied with the Court's Order. After the Court issued its first injunction with respect to the six named Plaintiffs, the State Department worked expeditiously to develop a process by which those Plaintiffs could obtain passports that complied with the preliminary injunction. *See* Dooley Decl. ¶ 3; *see also* Pls.' Mem. in Supp. of Pls.' Mot. to Enforce

5

or Modify Prelim. Inj. at 3, ECF No. 118 (hereinafter "Pls.' Mem.") ("Plaintiffs were able to work constructively with Defendants to implement the April 2025 Preliminary Injunction."). Indeed, numerous issues arose, and the State Department worked rapidly to resolve them. Defendants' approach to the second injunction has been no different. *See* Dooley Decl. ¶ 8 ("We are dedicated to providing a consistent, effective, and efficient process for the PI Class[.] Since receiving the Court Order, Passport Services has been working diligently to stand up a viable process, to ensure that the passport application process proceeds smoothly for members of the PI Class."). Due to the scope of the injunction, and the difficulty of determining the identities of PI Class members, implementing the second injunction presents far greater challenges, for which the State Department has exerted "diligent, good faith efforts" to overcome and resolve. *See Langton*, 928 F.2d at 1220. Despite these challenges, the State Department worked rapidly to develop and implement a process for PI Class members. *See* Dooley Decl. ¶¶ 9–15.

    As detailed in the Dooley Declaration, the State Department immediately took steps to implement the Court's order as soon as it was issued. The State Department first took measures to ensure, to the best of its ability, that no passports would be issued in violation of the injunction. To that end, the State Department paused adjudication of passport applications where it believed the applicant might be a class member. *Id.* ¶ 9. "Passport Services' Office of Adjudication instructed domestic passport agencies and centers to temporarily suspend processing any new or in-process application for any individual who may be requesting a sex marker inconsistent with their sex[.]" *Id.* "The same guidance was subsequently issued to American Citizen Services units at diplomatic posts abroad." *Id.* Before the State Department's compliance plan was finalized, and to allow PI Class members to obtain a passport if an urgent need for a passport arose, PI Class members could elect to apply for passports under the current Passport Policy. *Id.* ¶ 14. In those

cases, PI Class members will now be able to obtain an updated passport with their preferred sex marker free of charge. *Id.*[1]

With these interim measures in place, the State Department worked as quickly as possible to develop and implement the process for PI Class members now in effect. Contrary to Plaintiffs' assertion, this could not have been accomplished in "mere days." Pls.' Mem. at 13–14. "Unlike the earlier implementation of the Passport Policy following issuance of Executive Order 14,168, where the changes applied to all passport applications universally, compliance with the Court Order required the Department to develop new manual and electronic systems for identifying members of the PI Class, and new workstreams to accommodate and process the multiple types of applications they may submit, *e.g.*, in-person applications executed on Form DS-11, renewals by mail on Form DS-82, online renewals on Form DS-82, and data corrections by mail or in person on Form DS-5504." Dooley Decl. ¶ 8. The State Department's development of a process to implement the injunction "was further complicated by the fact that Class Counsel opted not to have notifications sent to potential class members so as to determine who is in the PI Class. The Department therefore needed to generate a way for PI Class Members to self-identify when applying for, renewing, or replacing a passport." *Id.*

Consistent with the Court's order, the State Department "conclude[d] that it is necessary to request" additional information from potential class members to determine PI Class membership. ECF No. 116 at 2; Dooley Decl. ¶¶ 8–9. Accordingly, upon receipt of the Court's order, Passport Services' Office of Adjudication "began to formulate a functional form of

---

[1] Due to limitations of State Department systems, PI Class members seeking passports with "X" markers overseas may not be able to obtain such passports on an emergency basis. Dooley Decl. ¶ 15. Using Form DS-5504 and the attestation, as long as the injunction is in force, PI Class members can replace an emergency passport issued to them with an "M" or "F" sex marker with a passport with an "X" marker, free of charge. *Id.*

7

attestation to be required of members of the PI Class." Dooley Decl. ¶ 9. An attestation of this kind is novel, and "[i]ncorporating an essential ancillary document such as the attestation into existing worldwide workflows, including processing systems for intake, adjudication, and recording in multiple databases, is complex but necessary to ensure that PI Class members are identified for compliance with the Court Order." *Id.* ¶ 9. There are additional challenges relating to the broad scope of the injunction, "includ[ing] differing systems for processing passport applications accepted domestically and those adjudicated at U.S. embassies and consulates abroad." *Id.* After working through these challenges, on July 1, 2025, the Department began "issuing passports with the sex marker requested by the applicant through the submission of an attestation[.]" *Id.* ¶ 10. The Attestation, and instructions for its use, were posted on Travel.State.gov on July 2, 2025. *Id.*

Plaintiffs suggest that this process was not "labor intensive" because the Court's order provides the State Department with discretion to use a checkbox attesting to class membership, thereby ameliorating "any arguable administrative burden" asserted by the State Department. Pls.' Mem. at 13–14. Plaintiffs are mistaken. In addition to the administrative burdens described above, the State Department understands that its obligations extends to all PI Class members, even those who have not submitted an attestation with their passport application. For that reason, the State Department developed other measures to ensure that it does not inadvertently issue a passport in contravention of the expanded injunction. Dooley Decl. ¶ 11. Specifically, the State Department "created a new Information Request Letter . . . to be sent to passport applicants who do not include the Attestation but who the Department has reason to believe may be members of the PI Class." *Id.* The State Department expects that using the Information Request Letter will "enhance

8

customer service and minimize the need to replace passports inadvertently issued to unidentified PI Class members under the Passport Policy while the [preliminary injunction] is in effect." *Id.*

To the extent Plaintiffs suggest that Defendants could have saved time by reverting to the prior policy, Pls.' Mem. at 13, the suggestion is moot and in any event, says nothing about Defendants' good faith compliance efforts. The Court expressly limited relief to PI Class members, ECF No. 115, and rejected Plaintiffs' request to stay the Passport Policy. ECF No. 75. The Court's orders do not require reversion to the prior policy. Instead, preliminary relief is limited to the PI Class, and the Court's order contemplated that the State Department could develop and implement an attestation for PI Class members to submit along with their passport applications. *See* ECF No. 116 at 2. The State Department accordingly developed an attestation, along with other necessary processes to come into compliance with the injunction. No more is required

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to enforce the preliminary injunction as moot and vacate the motion hearing currently scheduled for July 10, 2025.

Dated: July 3, 2025                               Respectfully submitted,

                                                  YAAKOV M. ROTH
                                                  Acting Assistant Attorney General

                                                  JEAN LIN
                                                  Special Litigation Counsel

                                                  */s/ Elizabeth B. Layendecker*
                                                  ELIZABETH B. LAYENDECKER
                                                  M JARED LITTMAN
                                                  Trial Attorneys
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  P.O. Box No. 883, Ben Franklin Station

                           Washington, DC 20044
                           Phone: (202) 514-5578
                           Fax: (202) 616-8470
                           E-mail: Jared.Littman2@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on July 3, 2025.

                                                   /s/ Elizabeth B. Layendecker
                                                   ELIZABETH B. LAYENDECKER