UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR, *et al.*,<br><br>                              *Plaintiffs*,<br>         v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>                              *Defendants*. | Case No. 1:25-cv-10313-JEK<br><br>(Leave to file granted on June 26, 2025) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE OR MODIFY PRELIMINARY INJUNCTION AND FOR EXPEDITED BRIEFING**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. DEFENDANTS FAIL TO EXPLAIN THEIR WEEKS OF NONCOMPLIANCE. .......... 2

III. DEFENDANTS STILL ARE NOT IN FULL COMPLIANCE. ....................................... 3

    A. Defendants' Unilateral Modification to the Court's Attestation Form Violates the Preliminary Injunction. ...................................................................... 4

    B. Defendants' Refusal to Issue Compliant Passports with X Markers Abroad Violates the Preliminary Injunction. ...................................................................... 5

IV. DEFENDANTS HAVE CREATED AN UNNECESSARY BARRIER TO VINDICATION OF RIGHTS. ........................................................................................... 7

V. CONCLUSION .................................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AccuSoft Corp. v. Palo*,
   237 F.3d 31 (1st Cir. 2001) ............................................................................................... 3, 6

*In re Dual–Deck Video Cassette Recorder Antitrust Litigation*,
   10 F.3d 693 (9th Cir. 1993) ..................................................................................................3

*Iverson v. City of Bos.*,
   452 F.3d 94 (1st Cir. 2006) ...................................................................................................7

*Langton v. Johnston*,
   928 F.2d 1206 (1st Cir. 1991) ...............................................................................................6

*Morales Feliciano v. Rosello Gonzalez*,
   124 F. Supp. 2d 774 (D.P.R. 2000) .......................................................................................6

*Patane v. Nestle Waters N. Am., Inc.*,
   2025 WL 1633967 (D. Conn. June 9, 2025) .........................................................................6

*Sekaquaptewa v. MacDonald*,
   544 F.2d 396 (9th Cir. 1976) ................................................................................................6

*Vans, Inc. v. Walmart, Inc.*,
   2022 WL 17371058 (C.D. Cal. Oct. 24, 2022) .....................................................................3

*Washington Metropolitan v. Amalgamated Transit*,
   531 F.2d 617 (D.C. Cir. 1976) ..............................................................................................6

I.         INTRODUCTION

Defendants point to steps towards compliance with the Preliminary Injunction that were finally put in place the day before they had to file a brief justifying their inaction. But three weeks since this Court's order became "immediately" effective, what is required is full and complete compliance. And while Defendants claim that they are issuing passports in compliance with the Preliminary Injunction, they are failing to substantially comply with it in two material ways and are creating unnecessary barriers to vindication of rights in a third way.

*First*, Defendants disregard the clear language the Court ordered them to use if they required additional information from PI Class members. Defendants' attestation form requires PI Class members to attest that their "gender identity is different from [their] *sex*," rather than the Court's formulation, which asks a PI Class member to attest that "my gender identity is different from the *sex assigned to me at birth*." *Compare* ECF 123-1, Ex. A (emphasis added) *with* ECF 116 at 2 (emphasis added). This is a meaningful difference. Defendants' formulation imposes their discriminatory conception of sex into the form meant to remedy that discrimination, forcing Class members to attest to a conception of sex that they disagree with and that will cause them harm.

*Second*, Defendants represent that they are not going to issue passports with X markers to people abroad on an emergency basis. They fail to adequately justify this decision, especially because they presumably were able to do so for years under the prior policy.

*Third*, Defendants have created an unnecessary barrier to PI Class members vindicating their rights: Defendants are refusing to allow PI Class members to use the prior passport forms in place on January 19, 2025. Instead, Defendants are continuing to use only old, noncompliant forms that do not permit selection of an X marker, omit the checkbox for indicating that the

1

applicant is *changing* their sex designation, and do not use instructions that match the application process for PI Class members.

Defendants should fully comply with the Court's Order. Plaintiffs respectfully request that the Court direct them to do so.

## II.     DEFENDANTS FAIL TO EXPLAIN THEIR WEEKS OF NONCOMPLIANCE.

As an initial matter, Plaintiffs wish to ensure the record is clear with respect to Defendants' action and inaction. Defendants claim that they have been working since June 18 to implement the Court's Preliminary Injunction, but their proffered evidence shows nothing of the kind. Mr. Dooley's declaration lists exactly three concrete actions: (1) on June 18, the State Department stopped processing the applications; (2) on July 1, the State Department started up again; and (3) on July 2, Defendants purport to have come into compliance by issuing an attestation form and accepting Class members' applications.[1]  *See* ECF 123-1 ¶¶ 9–10. While Defendants claim they took unspecified interim steps, they have not and do not say what *any* of those steps were: neither in their filing, nor in response to Plaintiffs' repeated inquiries. Similarly, Defendants do not articulate why this process was so "labor-intensive" or could not have been accomplished sooner. *Id.* ¶ 8.

For instance, Defendants claim that they had to "develop new manual and electronic systems for identifying members of the PI class" requiring "new workstreams" and "generat[ing] a way for PI Class Members to self-identify when applying." *Id.* Presumably, this means that Defendants had to write the attestation form and post it online, but copying and pasting the Court's language (which, in fact, Defendants failed to do, *infra* Section III.A.) takes seconds, and posting

---

[1] In his June 25 declaration, Plaintiffs' declarant Andrew Sass-Cao stated that he was denied a passport with the correct sex marker on June 20, after issuance of the Court's preliminary injunction. *See* ECF 118-6. Mr. Sass-Cao was subsequently issued a correct passport on July 3.

a form online takes minutes.  Defendants' insistence that they had to take (unspecified) actions to "accommodate and process the multiple types of applications [Class Members] may submit" is particularly striking because the application forms Defendants are requiring to be used *remain entirely unchanged* from the expired forms Defendants started using to implement the Passport Policy.

In short, Defendants' many claims of intense administrative burdens have not been borne out.  In Defendants' telling, they have changed precisely two things: they now have an attestation, and they have created a new information request letter to be sent to applicants who Defendants have "reason to believe" may be PI Class members.  Even though Defendants vaguely claim that they faced administrative hurdles, those claims are undetailed, unsupported, and do not excuse their delay and continued non-compliance.  That is particularly so because Defendants never filed a motion seeking to modify the Preliminary Injunction or to extend the time to comply.

### III. DEFENDANTS STILL ARE NOT IN FULL COMPLIANCE.

Even if Defendants are now issuing Injunction-compliant passports to PI Class members as they claim, they are failing to comply with the Preliminary Injunction in two material ways.

As an initial matter, Defendants invoke the "substantial compliance" standard, seemingly suggesting that they have substantially complied with the Preliminary Injunction and that is all that is required of them.  Opp. 5.  But courts that speak about substantial compliance do so to explain that "a few technical violations" do not merit contempt sanctions "where every reasonable effort has been made to comply." *Vans, Inc. v. Walmart, Inc.*, 2022 WL 17371058, at *1 (C.D. Cal. Oct. 24, 2022) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)) (cleaned up).  Said otherwise, contempt can sometimes be avoided where a party has engaged in all reasonable "diligent efforts" to achieve meaningful compliance, even if they did not ultimately achieve "letter perfect compliance." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st

3

Cir. 2001) (cleaned up). Critically, this standard does not remove a defendant's obligation to *comply* with a Court order, which is what Plaintiffs currently request in this motion. What is more, the two issues that Plaintiffs identify below are not mere "technical violations" that resulted despite Defendants' "diligent efforts." They are intentional decisions not to comply with the Preliminary Injunction—one apparently because of unspecified limitations on State Department printers that were never raised with the Court and one that is never explained at all.

### A. Defendants' Unilateral Modification to the Court's Attestation Form Violates the Preliminary Injunction.

This Court ordered Defendants to permit PI Class members to "self-select a sex designation." ECF 116 ¶ 2. It also explained that if Defendants think "that it is necessary to request additional information to determine whether a passport applicant is a member of the PI Class," they can do one thing—and one thing only: "instruct applicants to attest, by checking a box, to the following statement when they submit their passport application." *Id.* ¶ 3. The Court then set out the precise content (enclosed in quotation marks) of that statement: "If I am selecting a sex marker that is different than the sex on my original birth certificate, or if I am selecting an 'X' sex marker, I confirm that a least one of the following is true: (1) my gender identity is different from the sex assigned to me at birth, or (2) I have been diagnosed with gender dysphoria. I further confirm that I am applying for a passport because one of the following is true: (1) I do not have a currently-valid passport, (2) I need to renew my current passport because it expires within one year, (3) I need to make changes to my passport to have the sex designation on it align with my gender identity or to reflect a name change, or (4) I need to apply for another passport because my passport was lost, stolen or damaged." *See id.* (internal quotation marks omitted).

Despite this clear direction, Defendants unilaterally chose to use different language than that mandated by the Preliminary Injunction, requiring applicants to attest (under penalty of

4

perjury) that their "gender identity is different from [their] sex"—omitting "assigned to me at birth." ECF 123-1, Ex. A.  Defendants seem to suggest that the Court's order was merely a "sample statement" (although their declarant appears to understand that is not so). *Compare* Opp. 4, *with* ECF 123-1 ¶ 7.  Defendants offer no justification for their change.

Far from being a minor grammatical deviation, omitting "assigned to me at birth" effectively imposes Defendants' substantive theory of sex on attesting Class members—something the Court found likely unconstitutional.  *See* ECF 74 at 16–33.  Requiring Class members to attest that their "sex" is different than their "gender identity" is not only unlawful, it is harmful for the very reasons this Court already recognized.  *See, e.g.*, *id.* at 22–32, 46–51.  It forces Class members to state under penalty of perjury there is such a thing as an immutable, binary sex that is different from their gender identity and that is defined according to Defendants' (incorrect) conceptions.[2]  Defendants should be ordered to employ attestation forms using the exact language in the Court's order.

### B. Defendants' Refusal to Issue Compliant Passports with X Markers Abroad Violates the Preliminary Injunction.

Defendants admit in a footnote that they will not guarantee that those who seek passports with X markers on an emergency basis while oversees will receive them, *see* Opp. 7 n.1, purportedly because some State Department printers abroad are not "capable of printing all configurations of passports," ECF 123-1 ¶ 15.

Defendants cannot flout a court order simply because they have run into a purported administrative hurdle like printer limitations that conceivably could be addressed in short order.

---

[2] For avoidance of doubt, that some Class members have already submitted attestation forms that Defendants required them to utilize does not indicate their acceptance of Defendants' conception of sex or gender identity.

*See, e.g.*, *Morales Feliciano v. Roselloo Gonzalez*, 124 F. Supp. 2d 774, 786 (D.P.R. 2000) (a party must take "all reasonable steps within its power" to comply with an injunction) (citing, among others, *Wash. Metro. v. Amalgamated Transit*, 531 F.2d 617, 621 (D.C. Cir. 1976); *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976); *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991)).  In addition, Defendants had every opportunity to raise this issue as a barrier to full compliance during two rounds of preliminary-injunction briefing and oral argument but failed to do so.  They have waived it.  *See, e.g.*, *Patane v. Nestle Waters N. Am., Inc.*, 2025 WL 1633967, at *3 (D. Conn. June 9, 2025) (issues not timely raised during briefing are waived).

Even setting those fundamental problems aside, Defendants fail to demonstrate how their noncompliance is warranted or reasonable, let alone how it amounts to substantial compliance.  For instance, they never elaborate on the barriers to remedying this issue, estimate the costs of doing so (which may be de minimis), or lay out what other "diligent" and "good-faith" efforts they made to resolve this without resorting to violating the Preliminary Injunction.  *AccuSoft*, 237 F.3d at 47.  And Defendants' position makes little sense given the prior passport policy, which (as far as Plaintiffs know and as far as the record shows) had no similar "printer limitation" exception.  Defendants never explain what supposedly has changed.

This noncompliance has real, potentially profound consequences for Class members.  As Defendants admit, this will affect passports needed "on an emergency basis" in a foreign country.  Opp. 7 n.1.  Anyone, at any time, can lose a passport or have it stolen, damaged, or destroyed.  And having a usable passport is vital, especially in emergencies abroad.  Defendants' attempted solution of providing a temporary passport with an inaccurate M or F marker creates the precise likely constitutional violations the Court has already found and the barriers and risks Plaintiffs have

6

previously identified. *See, e.g.*, ECF 115 at 24–25 (identifying irreparable injuries that result from the issuance of such passports).

## IV. DEFENDANTS HAVE CREATED AN UNNECESSARY BARRIER TO VINDICATION OF RIGHTS.

The Court ordered Defendants to "process and issue passports to members of the PI Class consistent with the State Department's policy as of January 19, 2025," ECF 116 ¶ 2, and that policy was implemented through passport application forms that allowed applicants to select M, F, or X, *see, e.g.*, ECF 74 at 5 (describing the passport forms that implemented the policy). Yet Defendants have chosen not to utilize the forms in force "as of January 19, 2025," instead using long-expired forms that the Court ruled likely violate the Paperwork Reduction Act ("PRA"). For clarity, Plaintiffs will refer to the forms used as of January 19, 2025 (first issued in 2022), as the "2022 Forms" and the current forms being used that the Court held likely unlawful (first issued in 2020) as the "2020 Forms."

Defendants' exclusive use of the 2020 Forms is unsupported and detrimental to PI Class members. Defendants are utilizing only the 2020 Forms even though they utilized the 2022 Forms for the *named Plaintiffs* under the Court's initial Preliminary Injunction and extended those forms' expiration date when doing so. *See* ECF 123-1 ¶ 3 nn.1–2. The 2020 Forms lack an X marker option, omit a checkbox for *changing* a previously selected sex marker, and use instructions that do not match the process PI Class members will use to apply. Using only likely unlawful and expired forms therefore throws up unnecessary barriers to PI Class members achieving relief by requiring them to use a separate attestation with an "X" selection.

Defendants do not defend this decision in their brief, so it is waived. *See Iverson v. City of Bos.*, 452 F.3d 94, 103 (1st Cir. 2006) (issues not raised in oppositions are waived). In his declaration, Mr. Dooley claims that the State "Department does not intend to revise the passport

7

forms." ECF 123-1 ¶ 12. His rationale is that doing so "would likely take months," require a "policy and legal review," and require other administrative changes. *Id.* That makes little sense because the Department could simply revert to the 2022 Forms. To the extent Defendants' concern is that the 2022 Forms are "expired," Defendants already secured one extension of those forms' expiration date; they have provided no reason they could not secure another extension if they tried. *See id.* ¶ 3 nn.1–2 ("To comply with the Preliminary Injunction," Defendants provided forms "for which [OMB] approval was extended to June 30, 2025.").[3] And if Defendants' concern is using 2022 Forms for applicants who are *not* PI Class members, they could (for instance) have made *both* sets of forms available to applicants—the 2022 Forms for PI Class members and the 2020 Forms for everyone else. The 2022 Forms could be easily incorporated into the webpage Defendants have created for PI Class members that currently includes the attestation and 2020 Forms. In any event, if Defendants believe that further administrative steps are needed (which Plaintiffs do not concede), they are obligated to take those steps to comply with a court order.

      Mr. Dooley also claims that issuing new forms "may" implicate statutory obligations, but Defendants have conspicuously not made a legal argument that this is so. And (again) because the 2022 Forms were in place for years, there is no reason they would suddenly lead to these vague statutory issues.

---

[3] For clarity, Plaintiffs do not concede that securing OMB approval to use these forms *is* required when necessary to comply with a court order, and Defendants have never presented authority saying so.

## V.  CONCLUSION

Plaintiffs respectfully request that the Court order Defendants to fully comply with its Preliminary Injunction.[4]

|  |  |
|---|---|
|  | Respectfully submitted, |
| July 7, 2025 | /s/ *Isaac D. Chaput* <br> Isaac D. Chaput (*pro hac vice*) <br> William P. Kasper *(pro hac vice)* <br> COVINGTON & BURLING LLP <br> Salesforce Tower <br> 415 Mission Street, Suite 5400 <br> San Francisco, CA 94105 <br> Telephone: 415-591-6000 <br> Facsimile: 415-591-6091 <br> ichaput@cov.com <br> wkasper@cov.com <br><br> Jessie J. Rossman (BBO # 670685) <br> Zoe Kreitenberg (BBO # 715356) <br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC. <br> One Center Plaza, Suite 850 <br> Boston, MA 02108 <br> Telephone: 617-482-3170 <br> jrossman@aclum.org <br> zkreitenberg@aclum.org |

---

[4] Defendants assert that Plaintiffs' motion is "moot" and that the motion hearing currently scheduled for July 10, 2025 should be "vacate[d]." Opp. 9. As set forth above, Defendants are *not* in full compliance with the Preliminary Injunction. Accordingly, Plaintiffs' Motion is not moot, and the Court should proceed with the July 10 motion hearing.

Jon W. Davidson (*pro hac vice*)
   (admitted only in California)
Li Nowlin-Sohl (*pro hac vice*)
   (admitted only in Washington)
Sruti J. Swaminathan (*pro hac vice*)
Malita V. Picasso (*pro hac vice*)
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Facsimile: 212-549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org
sswaminathan@aclu.org
mpicasso@aclu.org
jesseks@aclu.org

Aditi Fruitwala (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
afruitwala@aclu.org

Ansel F. Carpenter (*pro hac vice*)
Gavin W. Jackson (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424-332-4758
Facsimile: 424-332-4749
acarpenter@cov.com
gjackson@cov.com

Jonathan Thompson (*pro hac vice*)
Sean M. Bender (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-5891
Facsimile: 202-778-5891
jothompson@cov.com
sbender@cov.com

>Robert C. Gianchetti (*pro hac vice*)
>Yuval Mor (*pro hac vice*)
>Alyssa L. Curcio (*pro hac vice*)
>COVINGTON & BURLING LLP
>The New York Times Building
>620 Eighth Avenue
>New York, NY 10018
>Telephone: 212-841-1000
>Facsimile: 212-841-1010
>rgianchetti@cov.com
>ymor@cov.com
>acurcio@cov.com
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, a true copy of the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

>/s/ *Isaac D. Chaput*
>Isaac D. Chaput