# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**ASHTON ORR**, et al.,

   Plaintiffs,

v.

**DONALD J. TRUMP**, in his official capacity as President of the United States, et al.,

   Defendants.

Civil Action No. 1:25-cv-10313-JEK

## SECOND DECLARATION OF RYAN M. DOOLEY

I, Ryan M. Dooley, do hereby state and declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am Acting Deputy Assistant Secretary for Passport Services of the U.S. Department of State, Bureau of Consular Affairs. I submit this declaration in support of Defendants' Motion to Dissolve the June 17, 2025 Preliminary Injunction and for a Stay of that Injunction Pending Resolution of the Motion to Dissolve and Request for an Indicative Ruling concerning the April 18, 2025, Preliminary Injunction. The statements made herein are based on my personal knowledge and on information provided to me in the course of my official duties with the Department of State (the "Department"). I joined the Department in 1996 and have served in the Passport Directorate of the Bureau of Consular Affairs for 25 years. I have been in my current position since June 6, 2025. I previously served as Senior Advisor for Passport Services and as Director of the Miami and San Juan Passport Agencies.

2. To implement Executive Order 14168 (the "Executive Order"), the Department's current policy (the "Passport Policy") permits issuing passports only with an "M" or "F" sex marker and requires U.S. passports to reflect the holder's sex consistent with the Executive Order.

3. In compliance with the preliminary injunction issued by the Court on April 18, 2025 (ECF No. 75) (the "Preliminary Injunction"), the Department issued passports to Plaintiffs Ashton Orr, Zaya Perysian, Chastain Anderson, Drew Hall, and Bella Boe with an "M" or "F" sex marker, based on their self-selection, to replace U.S. passports issued to them in January and February 2025 under the Passport Policy. In compliance with the Preliminary Injunction, the Department also issued a U.S. passport to Plaintiff Sawyer Soe with an "X" marker, based on that plaintiff's self-selection. The issuance of these six passports required close coordination among Department employees in Washington, DC, Boston, MA, and Vancouver, BC, Canada.

4. On June 17, 2025, the District Court issued a Memorandum and Order on Plaintiffs' Motion for Class Certification and Motion to Apply the Preliminary Injunction to the Classes (ECF 115) ("Class Certification"). In it, the Court defined a "M/F Designation Class" as "all people (1) whose gender identity is different from the sex assigned to them under the Passport Policy and/or have been diagnosed with gender dysphoria, and (2) who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport issued with an 'M' or 'F' designation that is different from the sex assigned to that individual under the Passport Policy." In addition, the Court defined an "X Designation Class" as "all people whose gender identity is different from the sex assigned to them under the Passport Policy and who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport with an 'X' designation."

5. Also on June 17, 2025, the District Court issued an Order of Preliminary Injunction (ECF 116) ("Court Order"). In it, the Court enjoined the Secretary of State and the Department (the "Agency Defendants") from enforcing the Passport Policy as to those members of the M/F Designation Class and the X Designation Class who "either (a) do not have a currently valid passport, (b) need to renew their current passport because it expires within one year, (c) need to make changes to their passport to have the sex designation on it align with their gender identity or to reflect a name change, or (d) need to apply for another passport because their passport was lost, stolen, or damaged." This Court defined these members of the M/F Designation Class and the X Designation Class entitled to relief under the Court Order as the "PI Class."

6. In addition to enjoining enforcement of the Passport Policy as to the PI Class, in the Court Order the Court imposed an injunction requiring the Agency Defendants "to process and issue passports to members of the PI Class consistent with the State Department's policy as of January 19, 2025, and to permit members of the PI Class to self-select a sex designation – 'M,' 'F,' or 'X' – that is different from the sex assigned to those individuals under the Passport Policy." The Court specified that if the Agency Defendants conclude that it is necessary to request additional information to determine whether a passport applicant is a member of the PI Class, they may instruct applicants to attest, by checking a box, to a statement when they submit their passport application.

7. In response to the Court Order, the Department needed to create an attestation ("Attestation") to be submitted by members of the PI Class when applying for a new or replacement U.S. passport, to account for potential operational burden and implementation hurdles. The Department then had to incorporate the Attestation into existing worldwide

workflows, including processing systems for intake, adjudication, and recording in multiple databases. The level of effort to accomplish this between issuance of the Court Order on June 17, 2025, and July 1, 2025, was considerable, but the Department succeeded despite the additional administrative burdens that compliance entailed. The Department intends to maintain the new processes and procedures developed to comply with the Court Order for as long as the Court Order is in force, subject only to necessary alterations to address issues that may arise to ensure full compliance with the Court Order.

8. In compliance with the Court Order, the Department further drafted and issued guidance to domestic passport centers, domestic passport agencies, and U.S. embassies and consulates regarding use of the Attestation to identify members of the PI Class for purposes of compliance with the Court Order. Consular staff at each of the overseas posts and adjudicative staff at each of the 29 domestic passport agencies had to read, review, and know how to apply the guidance. The Department estimates that a total of approximately 2,000 work hours were required for employees responsible for passport adjudication to review the procedures set out in this new guidance. These updates have also been distributed to the National Passport Information Center ("NPIC") to respond to customer inquiries. Since June 17, 2025, NPIC has received over 1,600 inquiries related to sex markers.

9. Each U.S. passport issued by the Department to a member of the PI Class in compliance with the Court Order requires additional time and effort for processing that otherwise would be used for adjudicating and issuing passports to U.S. citizens who are not members of the PI Class. Plaintiffs submitted estimates to this Court that 1.6 million Americans identify as transgender and 1.2 million Americans identify as nonbinary, for a total of 2.8 million potential members of the PI

Class entitled to relief under the Court Order. The Department currently assesses that an extra two minutes per application could be spent adjudicating applications submitted by members of the M/F Designation Class (53,333 extra work hours total for 1.6 million applications) and an extra 60 minutes per application could be spent adjudicating applications by members of the X Designation Class (1.2 million extra work hours total for 1.2 million applications) due to the additional technical processes required. Thus, the total extra work hours that could be spent adjudicating applications by members of the PI Class is assessed to be approximately 1,253,333 extra hours.

10. If an applicant appears to be requesting a sex marker that differs from their sex at birth, their application is suspended, and the Department sends the applicant an Information Request Letter asking if they are a member of the PI Class. Applicants are given 90 days to respond and each letter sent can add several days of processing time to each application. Additionally, to issue a passport with an "X" sex marker, a systems override must be submitted, since the capability was removed from issuance systems to comply with the Executive Order and will take months to add it in a future systems update. Indeed, it took the Department more than nine months after the policy decision to begin issuing routine "X" passport books on a worldwide basis.

11. After issuance of the Court Order and prior to the distribution of official guidance, the Department issued passports for 70 members of the PI Class in their preferred sex marker. To date, the Department has adjudicated a total of 104 passport applications[1] submitted by applicants with an Attestation confirming their membership in the PI Class. The majority of applications

---

[1] At the time of adjudication, a PI Class member may be ineligible to be issued a U.S. passport under applicable statutes and regulations. Accordingly, the number of PI Class members who are issued U.S. passports in compliance with the Court Order is expected to be somewhat smaller than the number of passport applications with Attestations submitted by PI Class members.

submitted with an Attestation are likely still in the initial processing steps and have not begun to be adjudicated. As with all passport applications, adjudication of PI Class members' applications are and will be conducted by Department employees.

12. In developing new administrative processes for compliance with the Court Order, the Department preserved the ability to track passport applications by members of the PI Class for later replacement should the Court Order be vacated by a higher court. With each additional passport issued in compliance with the Court Order, the aggregate cost and administrative burden of a subsequent replacement process grows. The Department estimates that the additional administrative cost of revoking and replacing passports issued in compliance with the Court Order, including notice to holders, taking administrative action as to their existing passports, and adjudicating and issuing them new passports under the Department's Passport Policy, could be as much as $130 per passport and one work hour per passport.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: July 9, 2025.

_____
Ryan M. Dooley