# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ASHTON ORR et al.,

     *Plaintiffs*,

v.

DONALD J. TRUMP, *in his official capacity
as President of the United States*, et al.,

     *Defendants*.

Civil Action No. 1:25-cv-10313

**DEFENDANTS' MOTION TO DISSOLVE THE JUNE 17, 2025 PRELIMINARY
INJUNCTION AND FOR A STAY OF THAT INJUNCTION PENDING RESOLUTION
OF THE MOTION TO DISSOLVE AND REQUEST FOR AN INDICATIVE RULING
CONCERNING THE APRIL 18, 2025 PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................1

BACKGROUND .............................................................................................................................3

LEGAL STANDARD ......................................................................................................................4

ARGUMENT ..................................................................................................................................5

I.      Plaintiffs Are Unlikely to Succeed on the Merits.................................................................5

        A.      Under *Skrmetti*, Plaintiffs Are Unlikely to Succeed on Their Equal Protection Claims.........................................................................................5

        B.      Plaintiffs Are Unlikely to Succeed on Their APA Claims.................................11

II.     The Balance of Equities Favors the United States. .........................................................12

CONCLUSION.............................................................................................................................15

## TABLE OF AUTHORITIES

## Cases

*Acevedo-Garcia v. Vera-Monroig*,
  296 F.3d 13 (1st Cir. 2002) .................................................................................4

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ...........................................................................................7

*Brown v. Bussone*,
  754 F. Supp. 2d 163 (D. Mass. 2010) ...............................................................4

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) ...........................................................................13

*City of Dallas v. Stanglin*,
  490 U.S. 19 (1989) .............................................................................................9

*Cook v. Gates*,
  528 F.3d 42 (1st Cir. 2008) ...........................................................................9, 10

*Corbitt v. Sec'y of the Ala. L. Enf't Agency*,
  115 F.4th 1335 (11th Cir. 2024) .....................................................................10

*Dandridge v. Williams*,
  397 U.S. 471 (1970) .........................................................................................11

*Dep't of Educ. v. Louisiana*,
  603 U.S. 866 (2024) ...........................................................................................8

*Doe v. Kerry*,
  Civ. A. No. 16-0654, 2016 WL 5339804 (N.D. Cal. Sept. 23, 2016) ..............13

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ...........................................................................................9

*FemHealth USA, Inc. v. Williams*,
  83 F.4th 551 (6th Cir. 2023) ...........................................................................4, 5

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024) .........................................................................7

*Gonzalez-Droz v. Gonzalez-Colon*,
  660 F.3d 1 (1st Cir. 2011) ..................................................................................9

*Gooch v. Life Invs. Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) .............................................................................5

*Gore v. Lee*,
   107 F.4th 548 (6th Cir. 2024) ................................................................................10

*Haig v. Agee*,
   453 U.S. 280 (1981) .............................................................................................12

*Heller v. Doe*,
   509 U.S. 312 (1993) ...............................................................................................9

*Keller v. State Bar of Cal.*,
   496 U.S. 1 (1990) ..................................................................................................14

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*,
   15 F.3d 1222 (1st Cir. 1994) ..................................................................................4

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...............................................................................................2

*Matal v. Tam*,
   582 U.S. 218 (2017) .............................................................................................13

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) .............................................................................................13

*Nken v. Holder*,
   556 U.S. 418 (2009) ...............................................................................................4

*Ollivierra v. Wilmington Sav. Fund Soc'y, FSB as Tr. for Pretium Mortg. Acquisition Tr.*,
   No. 17-11271 (MLW), 2018 WL 11432714 (D. Mass. Jan. 2, 2018) .......................4

*Orr v. Trump*,
   No. 25-cv-10313-JEK, 2025 WL 1695941 (D. Mass. June 17, 2025) ......................1

*Orr v. Trump*,
   --- F. Supp. 3d ----, No. 1:25-cv-10313-JEK, 2025 WL 1145271
   (D. Mass. Apr. 18, 2025) ............................................................................. 6, 7, 11

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) .............................................................................................13

*Sherley v. Sebelius*,
   689 F.3d 776 (D.C. Cir. 2012) .............................................................................11

*Stitt v. Fowler*,
   No. 24-801, 2025 WL 1787695 (June 30, 2025) ....................................................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023) ...............................................................................................8

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*,
　364 U.S. 642 (1961) ...................................................................................................4

*Trump v. Hawaii*,
　585 U.S. 667 (2018) ................................................................................................10

*United States v. Allen*,
　573 F.3d 42 (1st Cir. 2009).......................................................................................5

*United States v. Curtiss-Wright Exp. Corp.*,
　299 U.S. 304 (1936) ................................................................................................12

*United States v. Laub*,
　385 U.S. 475 (1967) ................................................................................................12

*United States v. Skrmetti*,
　145 S. Ct. 1816 (2025) ......................................................................................*passim*

*Urtetiqui v. D'Arcy*,
　34 U.S. (9 Pet.) 692 (1835)......................................................................................12

*Vance v. Bradley*,
　440 U.S. 93 (1979)....................................................................................................9

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
　576 U.S. 200 (2015) ................................................................................................13

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
　576 U.S. 1 (2015).....................................................................................................13

## Rules

Fed. R. App. P. 8(a)(1)(C) ...............................................................................................3

Fed. R. Civ. P. 62.1(a)(3) .........................................................................................2, 15

## Regulations

22 C.F.R. § 51.9...........................................................................................................13

Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the
Federal Government,
　Exec. Order No. 14168, 90 Fed Reg. 8,615 (Jan. 20, 2025).............................*passim*

**INTRODUCTION**

On June 17, 2025, this Court issued an order extending to a class of potential passport applicants an April 18, 2025 preliminary injunction that enjoined the State Department from applying its Passport Policy implementing Executive Order 14168 to six named plaintiffs. Among other things, the Court adopted its prior determinations that the Policy—which permits issuance of passports in only "M" or "F" based on the holder's sex at birth—likely discriminates on the basis of sex and is thus subject to intermediate scrutiny. The Court further held that the Policy fails heightened scrutiny because it is not substantially related to an important government interest. *Orr v. Trump*, No. 25-cv-10313-JEK, 2025 WL 1695941, at *11 (D. Mass. June 17, 2025). In assessing the government's asserted harm from the intrusion into foreign affairs, the Court further found that any "such harm is the consequence of the State Department's adoption of a Passport Policy that likely violates the constitutional rights of thousands of Americans." *Id.* at *15.

The next day, the Supreme Court decided *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), a case involving an equal protection challenge to a state law's prohibition on certain medical interventions for gender dysphoria and related disorders in minors. Like Plaintiffs here, the *Skrmetti* plaintiffs argued that the state law discriminated on the basis of sex and "transgender status" and could not withstand intermediate scrutiny. *Id.* at 1829, 1832–33. The Supreme Court rejected those arguments and upheld the law under rational basis review, which requires only the existence of any conceivable state of facts that could provide a rational basis for the classification. *Id.* at 1835.

*Skrmetti* compels the conclusion that rational basis review—not heightened scrutiny—should apply to the equal protection challenge in this case. Plaintiffs here do not challenge the government's use of "sex" as a designation on passports. Indeed, the preliminary injunction that Plaintiffs requested—and that this Court granted—*requires* the government to continue to classify passport holders based on "sex." What Plaintiffs challenge is not the "sex" designation itself, but the Passport Policy's rejection of Plaintiffs' preferred definition of "sex." Whereas under the Passport Policy, the Department adjudicates passport applications based on the applicant's sex at

1

birth, Plaintiffs would prefer to self-select a "sex" marker based on whatever "gender" the applicant identifies as. As *Skrmetti* makes clear, however, the Passport Policy's rejection of Plaintiffs' preferred definition of "sex" does not constitute discrimination based on sex and therefore does not warrant heightened scrutiny. Because the Court applied a more demanding level of scrutiny than what the law requires, and because the Passport Policy clears the highly deferential rational basis standard, the Court erred in concluding that Plaintiffs had demonstrated a substantial likelihood of success on the merits of their equal protection challenge. Moreover, because the Court's assessment of the equities was heavily influenced by its belief that thousands of Americans would likely suffer a constitutional wrong absent an injunction, the Court should now conclude that the balance of harms favors the government.

Further, in issuing the June 17 preliminary injunction, the Court also adopted its April 18 determination that the Department's actions likely violate the Administrative Procedure Act ("APA") because, among other things, forms used by the Department to implement Executive Order 14168 were not approved by the Director of the Office of Management and Budget ("OMB") as required by the Paperwork Reduction Act ("PRA"). Since the Court's ruling, however, the Director of the OMB has approved the relevant forms and implementation of those forms is forthcoming, as explained in the attached declaration of the Director of the Office of Program Management & Operational Support for Passport Services (Ex. 1, Agnew Decl.). Plaintiffs therefore are also unlikely to succeed on their PRA arguments.

Accordingly, the Court should dissolve the June 17, 2025 preliminary injunction and issue an indicative ruling that it would dissolve the April 18, 2025 preliminary injunction currently on appeal to the First Circuit, *see* Fed. R. Civ. P. 62.1(a)(3). Given the possibility that the Court may dissolve the June 17 injunction, Defendants further request that the Court stay the injunction pending resolution of Defendants' motion pursuant to its inherent power "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Although the Department has worked diligently to implement new procedures to comply with the June 17 injunction, a stay would avoid, among

other things, expending any further resources and burdening State's passport program when such a burden may ultimately prove to have been unnecessary.   And such a stay is particularly appropriate here because the Solicitor General has authorized appeal of the June 17 injunction, and Defendants intend to promptly appeal from that injunction and seek a stay pending appeal if the Court denies the present motion to dissolve the injunction.   Defendants accordingly further respectfully request that if the Court is inclined to deny the instant motion, that it also indicates whether it is inclined to grant a stay pending appeal based on the present record.  *See* Fed. R. App. P. 8(a)(1)(C) ("A party must ordinarily move first in the district court . . . an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.").

## BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed Reg. 8,615 (Jan. 20, 2025), which declares the government's policy to recognize two sexes, male and female, and sets forth definitions of sex, female, and male that are to be used across the federal government.   The Executive Order also instructs the State Department to implement changes to passports such that they accurately reflect the holder's sex according to those definitions.  *Id.*  To comply with the Executive Order and to further the goal of government-wide uniformity in the definition of sex, the Department changed its policy, issuing passports with only "M" or "F" designations based on birth certificates or other documentation close to birth and removing the "X" marker option from the sex field.   For a more extensive background discussion about the Passport Policy, Defendants respectfully refer the Court to their Opposition to Plaintiffs' Motion to Stay Agency Action and for Preliminary Injunction (ECF No. 53, at 2–5).

Plaintiffs filed this action on February 7, 2025, asserting, among other things, equal protection and APA claims.  Compl., ECF No. 1.  Plaintiffs thereafter moved for a preliminary

injunction, ECF No. 29, which the Court granted on April 18, 2025, on both equal protection and APA grounds as to six of the named plaintiffs, ECF No. 75. After amending the complaint, ECF No. 76, and moving for class certification, ECF No. 77, Plaintiffs further moved to extend the preliminary injunction to a Preliminary Injunction Class ("PI Class"), ECF No. 79. On June 17, 2025, the Court granted the motion and extended the preliminary injunction to the PI Class. ECF No. 116.

## LEGAL STANDARD

Dissolution of a preliminary injunction "should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994). "The familiar quartet includes likelihood of success, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest." *Id.* The third and fourth factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These same considerations also guide a court's determination on a motion to stay a preliminary injunction. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 n.3 (1st Cir. 2002).

"[A] significant change in . . . law warrants revision or dissolution of [an] injunction." *Ollivierra v. Wilmington Sav. Fund Soc'y, FSB as Tr. for Pretium Mortg. Acquisition Tr.*, No. 17-11271 (MLW), 2018 WL 11432714, at *5 (D. Mass. Jan. 2, 2018) (citation omitted); *see also Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 650 n.6 (1961) ("There are many cases where a mere change in decisional law has been held to justify modification of an outstanding injunction."); *Brown v. Bussone*, 754 F. Supp. 2d 163, 166 (D. Mass. 2010) ("The Court may modify or dissolve an injunction where there has been a significant change in the law or facts so as to make modification equitable.") (internal quotation marks and citation omitted)). "Preliminary injunctions require courts to make [an] assessment [of the four factors] at an early stage of the litigation . . . [b]ut as a case progresses, subsequent changes in the law or facts may threaten to convert a previously proper injunction 'into an instrument of wrong.'" *FemHealth*

*USA, Inc. v. Williams*, 83 F.4th 551, 556 (6th Cir. 2023) (quotation marks omitted) (quoting *Gooch v. Life Invs. Ins. Co. of Am.,* 672 F.3d 402, 414 (6th Cir. 2012)); *cf. United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (reconsideration is appropriate when "there has been an intervening change in the law" (citation omitted)).

## ARGUMENT

### I.   Plaintiffs Are Unlikely to Succeed on the Merits.

#### A.   Under *Skrmetti*, Plaintiffs Are Unlikely to Succeed on Their Equal Protection Claims.

The Supreme Court's decision in *Skrmetti* is a significant change in law that warrants dissolution of the preliminary injunction.  There, the Supreme Court considered a state law that restricted certain medical interventions for minors whose "gender identity does not align with their biological sex."  *Skrmetti*, 145 S. Ct. at 1824.  The state statute under review provided that "no minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence" but "minors of any sex may be administered puberty blockers or hormones for other purposes."  *Id.* at 1831.  The plaintiffs argued that the statute classified based on sex, because "a minor whose biological sex is female cannot receive puberty blockers or testosterone to live and present as a male, but an adolescent whose biological sex is male can, while an adolescent whose biological sex is male cannot receive puberty blockers or estrogen to live and present as a female, but an adolescent whose biological sex is female can."  *Id.* at 1830.  The Supreme Court rejected that argument, holding that access to medical intervention did not turn on sex because both boys and girls can get access to the medical intervention if it is not for a restricted use.  *Id.* at 1830–31.

*Skrmetti* undermines this Court's conclusion that the Passport Policy discriminates on the basis of sex and is therefore subject to heightened scrutiny.  As Defendants have previously

explained, for decades, U.S. passports have included a "sex" designation.  The Passport Policy maintains that "sex" designation and requires that it reflect "an individual's immutable biological classification as either male or female."  EO 14168, § 2.  Thus, under the Passport Policy, a person's "sex" designation must represent "biological reality," *id.* § 1; no one is "allowed to self-select their sex marker based on their gender identity," *Orr v. Trump*, --- F. Supp. 3d ----, No. 1:25-cv-10313-JEK, 2025 WL 1145271, at *2 (D. Mass. Apr. 18, 2025).  Here, Plaintiffs do not challenge the government's use of a "sex" designation on U.S. passports.  Indeed, the preliminary injunction that they sought—and that this Court granted—*requires* the government to maintain a "sex" designation on passports.  Instead, Plaintiffs challenge the Passport Policy's rejection of Plaintiffs' preferred definition of "sex"—whereas under the Passport Policy the Department adjudicates passport applications based on the applicant's biological sex, Plaintiffs would prefer to define "sex" to mean whatever "gender" the applicant self-identifies as.

As *Skrmetti* makes clear, however, the Passport Policy's rejection of Plaintiffs' preferred definition does not constitute discrimination based on sex.  In prohibiting the self-selection of a sex marker based on one's gender identity, the Passport Policy does not, in the words of *Skrmetti*, "prohibit conduct for one sex that it permits for the other."  145 S. Ct. at 1831.  Under the Passport Policy, *no one* may self-select their sex marker based on their gender identity; individuals of *any* sex are prohibited from engaging in such self-selection.  *See id.*  Thus, the aspect of the Passport Policy that Plaintiffs challenge—namely, the Policy's prohibition on self-selection—does not discriminate based on sex.  That prohibition applies evenhandedly to men and women alike.  Indeed, such a prohibition on self-identifying as a particular sex no more discriminates based on sex than a prohibition on self-identifying as a citizen discriminates based on alienage.  A state government does not discriminate based on alienage when it denies a non-citizen's application for

an identity document that lists her as a citizen, even if she requests such a designation because she self-identifies as a citizen. Just as such a prohibition on self-identification would not be subject to heightened scrutiny, so too heightened scrutiny is not warranted here.

In fact, on June 30, 2025, the Supreme Court granted the State of Oklahoma's petition for a writ of certiorari in a case challenging the state governor's executive order prohibiting individuals from amending their birth certificates to reflect their gender identities. *Stitt v. Fowler*, No. 24-801, 2025 WL 1787695 (June 30, 2025), *granting cert.* and *vacating Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024). The Tenth Circuit had held that the policy violates the Equal Protection Clause because it unlawfully discriminates based on "transgender status" and sex, and at a minimum, fails rational basis review. *Fowler*, 104 F.4th 770 at 783–97. The Supreme Court vacated the Tenth Circuit's judgment and remanded the case "for further consideration in light of *United States v. Skrmetti*, 605 U.S. ---- (2025)." *Stitt*, 2025 WL 1787695, at *1. Just as *Skrmetti* would affect that outcome in *Stitt*, it similarly compels the conclusion that Plaintiffs are unlikely to succeed on the merits of their equal protection claim here.

In previously concluding that the Passport Policy discriminates based on sex, this Court relied on the Supreme Court's interpretation of Title VII of the Civil Rights Act of 1964 in *Bostock v. Clayton County*, 590 U.S. 644 (2020). *See Orr*, 2025 WL 1145271, at *9. *Skrmetti*, however, recognized that "Title VII's 'because of' test incorporates the traditional but-for causation standard, which 'directs [the court] to change one thing at a time and see if the outcome changes[,]'" and if it does, there is a "but-for cause." 145 S. Ct. at 1834 (quoting *Bostock*, 590 U.S. at 656). As Justices Thomas and Alito explained in their concurring opinions in *Skrmetti*, the "but-for cause" analysis in *Bostock*—derived from "the specific language employed in Title VII"—has no application "in cases in which a law is challenged as an unconstitutional sex

classification." *Id.* at 1859 (Alito, J., concurring in part and concurring in the judgment); *see id.* at 1838 (Thomas, J., concurring) ("Extending the *Bostock* framework here would depart dramatically from this Court's Equal Protection Clause jurisprudence."); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 308 (2023) (Gorsuch, J., concurring) (explaining that *Bostock* does not apply to the Equal Protection Clause because the fact "[t]hat such differently worded provisions should mean the same thing is implausible on its face"); *cf. Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024) (per curiam) (unanimously holding that "preliminary injunctive relief" was warranted to enjoin a rule extending *Bostock*'s reasoning to Title IX of the Education Amendments of 1972).

Even if *Bostock*'s reasoning extended beyond the Title VII context, it still would not help Plaintiffs here, any more than it helped the plaintiffs in *Skrmetti*. Here, as in *Skrmetti*, "changing the [applicant's] sex . . . does not automatically change the operation of" the challenged aspect of the Passport Policy. *See* 145 S. Ct. at 1834–35. If a female seeks to choose her own sex marker, the Passport Policy prohibits her from doing so—and requires that her sex marker instead reflect "biological reality," EO 14168, § 1, regardless of whether that reality matches the gender with which she self-identifies. Change that person's sex from "female to male," *Skrmetti*, 145 S. Ct. at 1834, and the Passport Policy would still prohibit the male from choosing his own sex marker— and would still require that his sex marker instead reflect "biological reality," EO 14168, § 1, regardless of whether that reality matches the gender with which he self-identifies. Thus, under the Policy, sex is not "the but-for cause" of one's inability to self-select a sex marker based on one's "gender identity." *Skrmetti*, 145 S. Ct. at 1834. Here, as in *Skrmetti*, the challenged aspect of the policy at issue does not "intentionally penalize[]" a male "for a trait" that the policy

"tolerates" in a female and vice versa, *id.*, and thus does not discriminate based on sex, even under *Bostock*'s reasoning.

Because the challenged aspect of the Passport Policy does not discriminate based on sex, rational basis review applies. Such review "is a paradigm of judicial restraint." *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 9 (1st Cir. 2011) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993)). Under rational basis review, courts should uphold a classification "so long as there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Skrmetti*, 145 S. Ct. at 1835 (citation omitted). It is "the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause[,]" *City of Dallas v. Stanglin*, 490 U.S. 19, 26 (1989), and the challenged law enjoys "a strong presumption of validity," *Beach*, 508 U.S. at 314–15. The challenger "must negate any and all conceivable bases upon which the challenged regulation might appropriately rest." *Gonzalez-Droz*, 660 F.3d at 9. Courts are further "compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller v. Doe*, 509 U.S. 312, 321 (1993). Legislative classifications may be "both underinclusive and overinclusive" and "perfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (citation omitted). And "[r]ational basis review does *not* permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the law; the focus is entirely on the rationality of the state's reason for enacting the law." *Cook v. Gates*, 528 F.3d 42, 55 (1st Cir. 2008) (emphasis in original).

Here, the Passport Policy's prohibition on self-identification furthers the Executive Order's stated purpose of avoiding harms "to scientific inquiry, public safety, morale, and trust in government itself" flowing from efforts to "eradicate the biological reality of sex" and promotes the goal of using "clear and accurate language and policies" that recognize "an individual's

immutable biological classification as either male or female." EO 14168, §§ 1, 2(a).  The Passport Policy's prohibition on self-identification also furthers the government's interest in maintaining a consistent definition of sex throughout the federal government.  As the Department explains, "the Executive Order indicates a government-wide shift to using one uniform definition of 'sex,' so a change in the Department's policies was also needed to support the goal of uniformity."  Decl. of Matthew Pierce ¶ 19, ECF No. 53-1 ("Pierce Decl.").  Passport data would not be useful for other agencies if the State Department adopted definitions inconsistent with the policy of the United States.  *Id.*  Courts have recognized that the government has a legitimate interest "in maintaining a consistent, historical, and biologically based definition of sex," and requiring government documents to reflect only one's biological sex furthers that interest.  *Gore v. Lee*, 107 F.4th 548, 561 (6th Cir. 2024); *see also Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335, 1348 (11th Cir. 2024) (recognizing a "State's interest in ensuring consistency with the State's existing requirements for amending a birth certificate" by "'objectively defining sex' for purposes of driver's license designations").  For these same reasons, the Passport Policy's prohibition on self-identification is not "inexplicable by anything but animus," *Trump v. Hawaii*, 585 U.S. 667, 706 (2018), and thus does not violate the Equal Protection Clause on these grounds either.

To the extent Plaintiffs contend that the Passport Policy fails to account for individuals' desire to identify with the opposite sex or as nonbinary, the law is clear that "[r]ational basis review does *not* permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the law."  *Cook*, 528 F.3d at 55.  Rather, the focus is on the government's conceivable reasons that could justify the law, and here, the Policy clears that very low bar.  *See id.*  And even if the Policy fails to account for the small number of intersex individuals who do not fall within the Executive Order's definition of "male" or "female," a classification does

not fail under rational basis review simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (citation omitted).  Moreover, the Department's decision to revert to a prior policy to ensure prospective uniformity is not irrational and clears rational basis review.  This is particularly so when the State Department has been directed by the President to revert to that policy in order to further the purposes stated in the Executive Order.  *Cf. Sherley v. Sebelius*, 689 F.3d 776, 784–85 (D.C. Cir. 2012) ("[An agency] may not simply disregard an Executive Order.  To the contrary, as an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law.").

**B.      Plaintiffs Are Unlikely to Succeed on Their APA Claims.**

The above discussion further illustrates that Plaintiffs' APA claims are similarly unlikely to succeed.  The Department's actions were not arbitrary and capricious given Executive Order 14168.  *Cf. Sherley*, 689 F.3d at 784–85 (not arbitrary and capricious where agency failed to respond to comments recommending a course of action that "is diametrically opposed to the direction" of an Executive Order).  Moreover, a key premise of the Court's prior APA ruling— that forms used by the Department to implement the Executive Order were not approved by the Director of the Office of Management and Budget as required by the PRA—no longer exists.

The Court previously held that Plaintiffs were likely to succeed on their arguments that Defendants were using expired passport forms that had not been approved by the OMB director. *Orr*, 2025 WL 1145271, at *19–21.  As the Government explained during prior briefing on the issue, the State Department had initiated the PRA process for the three passport forms: DS-11, DS-82, and DS-5504.  ECF No. 53 at 4–5.  Consistent with the PRA, the State Department issued 60-day notices for all three forms in November 2024 and issued 30-day notices for all three forms in February 2025.  Pierce Decl. ¶¶ 9, 20.

11

Since the Court's grant of a preliminary injunction, the OMB director approved all three forms. Ex. 1 (Agnew Decl.) ¶ 4. As detailed in the Agnew Declaration, the forms were approved on June 25, 2025, and will be available for use in approximately two to three months. *Id.* ¶¶ 4, 6. Thus, Plaintiffs are unlikely to succeed on the merits of the PRA claim because the State Department has completed the PRA process for the new set of forms.

## II.  The Balance of Equities Favors the United States.

Given the above discussion and as further explained, the balance of equities also dramatically shifts in the Government's favor. Among other things, the Government's interest in controlling the content of the passport is significant because a passport, at its core, is an instrument of diplomacy through which the President, on behalf of the United States, "in effect request[s] foreign powers to allow the bearer to enter and to pass freely and safely, recognizing the right of the bearer to the protection and good offices of American diplomatic and consular officers." *United States v. Laub*, 385 U.S. 475, 481 (1967). It is also an official communication "by which the Government vouches for the bearer and for his conduct." *Haig v. Agee*, 453 U.S. 280, 293 (1981). It is "addressed to foreign powers . . . and is to be considered . . . in the character of a political document." *Id.* at 292 (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (9 Pet.) 692, 699 (1835)). Particularly considering the Supreme Court's longstanding recognition that the President is "the sole organ of the federal government in the field of international relations," *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936); *cf. Haig*, 453 U.S. at 293 ("the common perception was that the issuance of a passport was committed to the sole discretion of the Executive"), not even Congress "may . . . force the President" to exercise his Article II foreign affairs powers in any particular way, as "[t]hat congressional command would not only prevent

the Nation from speaking with one voice but also prevent the Executive itself from doing so in conducting foreign relations," *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 30 (2015).

The preliminary injunction intrudes into the President's core foreign-affairs prerogatives by requiring the Executive Branch to issue passports addressed to foreign nations that the President deems inappropriate. This weighty concern about constitutional separation of powers is further amplified in that "[t]he information contained in a passport is unquestionably government speech," *Doe v. Kerry*, Civ. A. No. 16-0654, 2016 WL 5339804, at *16 (N.D. Cal. Sept. 23, 2016), and yet the injunction compels the government to convey what it believes to be inaccurate information. *Cf.* 22 C.F.R. § 51.9 (other than "for the convenience of the U.S. Government, no passport may be amended"). The government must have "the authority to control its own message when it speaks or advocates a position it believes is in the public interest." *Chiras v. Miller*, 432 F.3d 606, 612 (5th Cir. 2005); *see also Doe*, 2016 WL 5339804, at *16 (the United States, not the passport holder, must be allowed to control the content of the passport). Without that ability, "government would not work." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). The government would not be able to implement the policy goals and uniformity it seeks "if officials also had to voice the perspective of those who oppose" the Government's message. *Id.* at 208. "'[I]t is not easy to imagine how government could function if it lacked th[e] freedom' to select the messages it wishes to convey." *Id.* (citation omitted); *accord Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009).

Indeed, "[w]hen a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others." *Matal v. Tam*, 582 U.S. 218, 234 (2017). "It is the very business of government to favor and disfavor points of view." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring). "If every citizen were to have a right to

insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed." *Keller v. State Bar of Cal.*, 496 U.S. 1, 12–13 (1990). These concerns are especially pronounced on the topic of gender identity, which is the focus of "fierce . . . policy debates." *Skrmetti*, 145 S. Ct. at 1837. Plaintiffs should not be permitted to force the Executive Branch to take a side on such "ongoing debate," contrary to the Executive's policy determination that the promotion of gender ideology is against the government's interest. *Id.* at 1836; *see also id.* at 1840 (Thomas, J., concurring) (explaining problems with courts deferring "to so-called expert consensus" in field of gender ideology). Thus, in addition to intruding into the President's core foreign affairs prerogatives, the Court's injunction imposes discrete harm on the government each and every time an individual presents a passport to a foreign nation that contains statements that the Executive believes to be incorrect.

In addition to the harms related to the President's core foreign affairs prerogatives and significant resource costs expended in developing and implementing a process for the PI Class, which the Court recently found complied with its Order (Electronic Order, July 9, 2025), "[e]ach U.S. passport issued by the Department to a member of the PI Class in compliance with the Court Order requires additional time and effort for processing that otherwise would be used for adjudicating and issuing passports to U.S. citizens who are not members of the PI Class." Ex. No. 2 (2d. Dooley Decl.) ¶ 9. As the declaration describes, passports issued to the PI class entail processing of an Attestation, processing of an Information Request Letter (if additional information is needed), and a systems override to issue a passport with an "X" sex marker. *Id.* Additionally, if the Court Order is vacated by a higher court and the Department proceeds to revoke and replace passports issued in compliance with the Court Order, the Department will incur

additional administrative costs.  *Id.* ¶ 11.  For these reasons and those previously discussed, the balance of equities favors the United States.

## CONCLUSION

For the foregoing reasons, the Court should dissolve the June 17, 2025 preliminary injunction, stay the June 17, 2025 injunction pending resolution of Defendants' request to dissolve that injunction, and issue an indicative ruling that it would dissolve the April 18, 2025 preliminary injunction currently on appeal to the First Circuit, *see* Fed. R. Civ. P. 62.1(a)(3), and dissolve the June 17, 2025 preliminary injunction.  The Court should also stay the June 17, 2025 injunction pending resolution of Defendant's request to dissolve that injunction.  Moreover, because Defendants intend to appeal from the June 17, 2025 injunction and to seek a stay of the injunction pending appeal if the Court denies the instant motion, Defendants also respectfully request the Court to indicate whether it is inclined to grant a stay of the June 17, 2025 injunction pending appeal based on the present record.

Defendants' counsel has conferred with Plaintiffs' counsel, who stated that Plaintiffs oppose this motion.

Dated: July 9, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JEAN LIN
Special Litigation Counsel

/s/ *Elizabeth B. Layendecker*
ELIZABETH B. LAYENDECKER
M. JARED LITTMAN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-5578

Fax: (202) 616-8470
E-mail: Jared.Littman2@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on July 9, 2025.

/s/ *Elizabeth B. Layendecker*
ELIZABETH B. LAYENDECKER