# EXHIBIT S

# SUPPORTING STATEMENT
# FOR PAPERWORK REDUCTION ACT SUBMISSION
## Application for a U.S. Passport
### OMB Number 1405-0004
### Form DS-11

## A. JUSTIFICATION

1. *Why is this collection necessary and what are the legal statutes that allow this?*

   The *Application for a U.S. Passport* (form DS-11) is used by citizens and non-citizen nationals (hereinafter collectively referred to as "nationals") of the United States who are applying for a U.S. passport and who must apply in person. The DS-11 solicits data necessary for the Department of State (Department) to issue a U.S. passport (book and/or card format) in the exercise of authorities granted to the Secretary of State in 22 United States Code (U.S.C.) Section 211a *et seq*., and Executive Order (E.O.) 11295 (August 5, 1966) for the issuance of passports to U.S. nationals.

   The issuance of U.S. passports requires the determination of identity, nationality, and entitlement with reference to the provisions of Title III of the Immigration and Nationality Act (INA) (8 U.S.C. sections 1401-1504), the 14th Amendment to the Constitution of the United States, and other applicable laws, as well as the implementing regulations of 22 C.F.R. Parts 50 and 51. Authority to collect the respondent's Social Security number is also in 26 U.S.C. 6039E and 22 U.S.C. 2714a(f) (see response 11, below). The specific regulations pertaining to the Application for a U.S. Passport are in 22 C.F.R. 51.20 through 51.28.

2. *What business purpose is the information gathered going to be used for?*

   The information collected on the DS-11 is used primarily to facilitate the issuance of passports to U.S. nationals. The primary purpose for soliciting the information is to establish identity, nationality, and entitlement to the issuance of a United States passport or related service, and to properly administer and enforce the laws pertaining to issuance thereof.

   The DS-11 is retained in the files of the Department along with other documentation related to passport applications, adjudication, and issuance. Among other uses within the Department, these records are consulted when a U.S. passport has been lost and the bearer has no evidence of nationality available, or in support of any derivative claims to nationality made by the passport bearer's children. The records may also be consulted by consular personnel in the event of an emergency abroad involving U.S. citizens; the application has a block for the name, address, and telephone number of a person to notify in the event of an emergency. Information from the DS-11 may also be shared with certain parties outside of the Department, as permitted by the Privacy Act of 1974, as

amended, including as set forth in the Department's Prefatory Statement of Routine Uses, the Department's System of Records Notice (SORN) for Passport Records (STATE-26), and the SORN for Overseas Citizens Services Records and Other Overseas Records (STATE-05) available in the Federal Register and online at https://www.state.gov/system-of-records-notices-privacy-office/.  The DS-11 becomes part of the applicant's passport file which is covered by the Privacy Act.  The information contained in this file cannot be released except as provided by the Privacy and Freedom of Information Acts.

3.  *Is this collection able to be completed electronically (e.g., through a website or application)?*

The DS-11 is currently available online at travel.state.gov.  However, the DS-11 cannot be submitted electronically.  As required by 22 U.S.C. 213 and 22 C.F.R. Part 51, all DS-11 applicants (including all applicants under the age of 16) must appear in person to execute their passport application.  The form is posted on the Department's website where it can be filled out online and printed for manual signature and submission.  With the completed application, a 2-D barcode is printed on each application.  This barcode is scanned by the Department and automatically records the applicant's information.  This process increases processing efficiency and reduces data errors.

4.  *Does this collection duplicate any other collection of information?*

Aside from necessary basic self-identification data, the information requested does not duplicate information available elsewhere.  The DS-11 is used by first-time applicants, applicants under the age of 16, and other individuals not eligible to apply for a U.S. passport book and/or passport card using the *U.S. Passport Renewal Application for Eligible Individuals* (form DS-82).

5.  *Describe any impacts on small business.*

This collection of information does not significantly impact small businesses or other small entities.

6.  *What are consequences if this collection is not done?*

The information collected on the DS-11 is crucial for documenting a U.S. citizen's request for a passport and for establishing the applicant's entitlement to a U.S. passport.

7.  *Are there any special collection circumstances?*

The DS-11 is one of three information collections currently under review that requires development and testing of multiple supporting systems used to complete, adjudicate, and process the application.  OMB-approved changes to the three collections will require simultaneous systems development and testing.  Therefore, it is necessary to receive OMB approval of the DS-11, DS-82, and DS-5504 together.

8. *Document publication (or intent to publish) a request for public comments in the Federal Register*

The Department published a 60-day notice in the Federal Register on November 26, 2024, to solicit public comments on this collection. The Department received no public comments. The Department then provided 30 days for comment on this information collection, concurrent with OMB's review. Pursuant to 44 U.S.C. 3507 and 3508, OMB's review focused on the burden and the practical utility of this information collection. The 30-day comment period closed March 17, 2025.

The Department received 1620 responsive comments, one of which was in support of these changes. The majority of comments were opposed to these changes. Forty-two comments were not germane to the information collection.  The responses below address the substantive comments.

In addition to public comments, the Department also received a copy of a letter to the Director of the Office of Management and Budget (OMB) signed by 81 Members of Congress dated March 17, 2025, Re: 30-Day Notice of Proposed Information Collection: Application for a U.S. Passport, DS-11, OMB Control Number: 1405-0004; 30-Day Notice of Proposed Information Collection: Application for a U.S. Passport for Eligible Individuals: Correction, Name Change to Passport Issued 1 Year Ago or Less, and Limited Passport Replacement, DS-5504, OMB Control Number: 1405-0160; and 30-Day Notice of Proposed Information Collection: U.S. Passport Renewal Application for Eligible Individuals, DS-82 OMB Control Number: 1405-0020.  In the letter, Congressional representatives raised several concerns, including that the proposed changes: 1) undermine the usefulness of passports in helping correctly identify the passport holder, 2) will subject transgender people to potential harassment and violence and undermine their wellbeing, 3) are not the result of significant deliberations or studies and raise significant constitutional concerns, and 4) contradict the purposes of the Paperwork Reduction Act.  Their concerns mirror many of the concerns raised in the public comments, which are responded to below. Below please find the Department's response addressing the substantive comments listed by topic.  Note that many of the concerns raised by commenters were directed to the Department's underlying policy with respect to identifying biological sex at birth.  These concerns are generally not relevant to the Paperwork Reduction Act review, which evaluates the burden and practical utility of a proposed collection given the Department's chosen policy, not the policy itself. Nevertheless, the Department has responded to these comments below.

**Topic: Impact to Intersex Applicants**

Several commenters noted their concerns that having only "M" and "F" sex markers do not account for and/or correctly identify intersex people and are not the result of significant deliberations or studies.  Some noted that the change also creates an environment where intersex people feel like they are forced to lie or be untruthful by selecting "M" or "F" on the application form, thus perjuring themselves.

**Response:** The policy set forth in the Executive Order 14168, "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government"

of recognizing only two sexes and of referring to individuals by their immutable biological classification as either male or female now "govern[s] all Executive interpretation of and application of Federal law and administration policy." Consistent with the E.O., the Department follows the expanded sex-based definitions issued by the Department of Health and Human Services (HHS), which recognizes that there are only two sexes, male and female, as characterized by the individual's reproductive system, and that rare disorders of sexual development do not constitute a third sex. The Office of Personnel Management (OPM) has also issued guidance to ensure consistency across the Federal government. The Department's compliance with the Executive Order's directive and OPM's guidance furthers that interest.

### Topic: Sex "at Conception" Per E.O. 14168

Some commenters argued that E.O. 14168 provides that sex is determined from conception, and the passport instructions provide for applicants to note their biological sex at birth. Some wondered why the Department was departing from the E.O., while others argued that it is impossible to determine sex at conception.

**Response:** While the Department adjudicates identity using a variety of documents, it does not have the ability to adjudicate "sex at conception." Sex at birth, which can generally be adjudicated using a birth certificate, is ascertainable. Moreover, E.O. 14168 charged HHS, an agency with expertise, to expand on the definitions set forth in the E.O. The Department's interpretation of its obligations under E.O. 14168 is consistent with HHS's guidance.

### Topic: Biological Sex at Birth: HIPAA and Impact to Transgender People

Several commenters raised the issue that the Department previously allowed passport applicants to self-select if their sex marker changed from their previous passport, but the new changes instruct applicants to provide their biological sex at birth. Some commenters noted that requiring applicants to provide their biographical sex from birth violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as it is a medical record. Many also noted that these changes negatively impact transgender persons who do not identify as their biological sex at birth, and they may experience psychological harm, emotional distress, and this could result in self-harm.

**Response:** In the Department's capacity adjudicating and issuing passports, it is not considered a "covered entity" under HIPAA. HIPAA is therefore inapplicable here.

The Department is cognizant of its prior history of permitting an applicant to self-select a gender identity which could differ from the applicant's biological sex according to E.O. 14168 and guidance issued by HHS. In recognition of the President's policy objectives identified in the Executive Order, the Department determined that it was appropriate to adopt the Executive Order's directive, which has since been supported by HHS's expert guidance, that sex is immutable and that "sex" is not a synonym for and does not include the concept of "gender identity."

**Topic: Eliminating Sex Marker on U.S. Passports**

Several commenters argued that there is no need for a sex marker on the U.S. passport at all and it should be removed.

**Response:** The Department follows standards developed by the International Civil Aviation Organization (ICAO), a specialized agency of the United Nations that develops and promotes standards, specifications, and policies for travel documents that support the civil aviation sector.  ICAO added the sex marker to its uniform specifications for travel documents in 1980 to enable travel documents to be used more effectively to identify the holder.  According to advocacy groups, the vast majority of countries issue passports with the sex of the holder listed as either male or female.  ICAO's sex marker standard ensures interoperability among governments for machine readable travel documents.  Removing the sex marker would conflict with ICAO's uniform specifications for travel documents.

**Topic: U.S. Passport as an Identity Document**

Several commenters argued that having people select biological sex at birth as their passport sex marker weakens the U.S. passport as an identity document because many people do not resemble their biological sex at birth.

**Response:**  An applicant's sex is one of the key data such as name, date of birth, and place of birth that the Department deems material to its adjudication of the applicant's claim of identity and citizenship.  Not only must such data be provided by every applicant, it must also be supported by documentation generated by third parties, such as birth certificates, driver's licenses and applications for social security cards. President Trump determined in EO 14168 that using clear and accurate language and basing Federal policy on biology (sex at birth) rather than gender identity is "critical to scientific inquiry, public safety, morale, and trust in government itself." Additionally, under ICAO guidance a person's identity is defined by their combined biometric and biographic attributes that apply uniquely to that person.  Identity establishment is the process of verifying and associating identity attributes with a particular person, which can then be enrolled into an identity management system. Identity is commonly established in a relatively linear way, with a foundational document or record (such as a birth certificate) forming the first link in an identity chain.  The sex marker on the U.S. passport is one of the attributes used to establish identity, along with other biographical information and a current photo.  The sex marker alone does not establish identity.  To the extent there is a concern about passport holders not resembling their biological sex at birth, the photo in the passport should alleviate such concern.

**Topic: International Travel Impact**

Commenters believe that the removal of the "X" marker option will make international travel more difficult and dangerous for people who do not physically resemble the characteristics of the sex marker on their passport, and/or who will have a foreign visa with a different sex marker.  Commenters believe that these travelers will be subjected to harm, abuse and, in some cases, they could be charged with a crime.  Commenters also

believe that international travel will become less efficient because security and screening delays will increase.

**Response**:  The Department has no greater priority than the safety and security of U.S. Citizens travelling and residing abroad. The Department provides safety and security information on our travel.state.gov website to help U.S. citizens assess the risks of travel. Each **destination** information page contains a Travel Advisory, recently issued STEP messages from the U.S. embassy, and important details specific to that destination such as entry and exit requirements, local laws, etc.

Again, the sex marker is not the only identifying information in the passport.  Another key piece of identifying information is the photo, which should resemble the passport holder.  Moreover, having the "X" marker on one's passport potentially could generate the negative consequences identified by the commenters.  Many countries only recognize male and female sex markers in passports and do not have IT systems at ports of entry that can accept other sex markers, including valid U.S. passports with an X sex marker. If traveling with a valid U.S. passport with an X sex marker, check the immigration regulations for your destination as acceptance can vary by country.

For additional information regarding the recognition and acceptance of sex markers in other countries, please visit the LGB Travel Information page on the Department's website at travel.state.gov.

### Topic: Changing Term "Gender" to "Sex" on Application Form

Some commenters noted that changing the term "gender" to "sex" on the application form does not provide for accurate identification and the passport should serve as an identity document. They stated that allowing applicants to select their "gender" would provide for more accurate identification.

**Response:** While the term "gender" replaced the term "sex" on the Department's passport application forms for a brief period, the field caption for the sex of the holder used on U.S. passports themselves has always said "sex", because ICAO's Doc 9303 specifies that the caption be labelled "sex."

Agencies were instructed, as reflected in E.O. 14168, to remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages.

In implementing the Executive Order, OPM's initial guidance to agencies required agency heads to implement certain steps, including reviewing all agency forms that require entry of an individual's sex and ensure that all list male or female only, and ensuring all applicable policies and documents, including forms, use the term "sex" and not "gender."

For information on the U.S. passport as an identity document, please see response above.

**Topic: U.S. Economic Impact**

Some commenters noted that their businesses or sports teams depend on people, including transgender and nonbinary people, being able to easily obtain or renew passports and these changes would either prohibit their clientele from obtaining passports, slow down passport processing, or prevent Americans from participating in global events, such as international conferences.

**Response:** The Department's form changes do not prevent U.S. citizens from applying for or obtaining passports, nor are any current passport-holders required to renew their passport early to change/update information.

**Topic: Infringement on Rights**

Several comments argued that the new policy infringes on passport applicants' rights enshrined in the Declaration of Independence - the "inalienable right to life, liberty and the pursuit of happiness."

**Response:** The Department's form changes are constitutional and consistent with established legal precedent.

All U.S. nationals remain eligible to apply for a passport in their binary sex at birth to facilitate international travel. The Department's form changes do not restrict the ability of U.S. nationals to travel abroad.

**Topic: Paperwork Reduction Act (PRA) Violation**

Several comments argued that the Department should have restarted the Paperwork Reduction Act (PRA) process with a 60-day notice of proposed information collection because of the proposed changes to this form to conform to the new policy.

**Response:** The Department began the 60-day notice period for this form in November 2024 because OMB approval for this form was set to expire in April 2025. The 60-day notice was published during the previous Administration, pursuant to a policy that is no longer U.S. policy. The Department revised the proposed information collection and published the 30-day notice soliciting comment consistent with normal PRA clearance procedures, which the Department is now responding to. The public had an opportunity to comment.

**Topic: Constitutionality and States' Rights**

Several comments argued that that the Department's form changes are unconstitutional, contrary to prior court decisions, and violates "states' rights."

**Response:** The Department's form changes are constitutional and consistent with established legal precedent.

The Department's form changes, the President's Executive Order 14168, and the guidance issued by HHS do not bind the states. The states remain free to determine their sex marker policy and procedures on vital records they issue.

**Topic: Change to Acts or Conditions Statement**

Commenters believe the change to the Acts or Conditions statement will make it easier for offenders to obtain a U.S. passport, or that the change is unnecessary and is statistically more likely to affect LGBT people.

**Response**: *International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders* (IML) was enacted in 2016 with the goal that the U.S. government should identify the whereabouts of certain covered child sex offenders , including when traveling internationally. *See* Public Law 114-119 (34 U.S.C. §§ 21501-21510). Title 22 was later updated to provide that the Secretary of State "shall not issue a passport to a covered sex offender unless the passport contains a unique identifier and may revoke a passport previously issued without such an identifier of a covered sex offender." 22 U.S.C. § 212b(b). Further, it allows the Department to "require a passport applicant to disclose that they are a registered sex offender." 22 U.S.C. § 212b(e).

The revised Acts or Conditions statement now includes language that requires the applicant to submit additional information if they believe they are a "covered sex offender" as defined in 22 U.S.C. § 212b(c)(1). This will help ensure that the proper identifier is printed in the covered sex offender's passport book upon issuance. When the identifier is not printed in a covered sex offender's newly issued passport, the Department must revoke it. Properly including the identifier at the outset reduces revocations and the need to reissue passports with the correct identifier. This improves processing efficiency and provides better customer service by preventing this class of applicant from having to apply twice and potentially leaving them without a valid identity document. The Angel Watch Center (AWC) in the U.S. Department of Homeland Security continues to certify an individual's covered sex offender status regardless of whether an individual self identifies as one, and this change will not make it easier for covered sex offenders to obtain an unmarked passport.

For more information, please visit the Passports and International Megan's Law webpage on travel.state.gov.

**Topic: Government Spending, Waste, and Public Burden**

Commenters believe that the changes and revisions to the paper form to comply with E.O. 14168 are a waste of government resources and taxpayer dollars. Some commenters also believe that passport applications will take longer to process now given the form changes.

**Response**: In April 2022, in compliance with the Paperwork Reduction Act, the Department determined that a new version of the form would need to be published in 2025. There are no additional costs associated with this form renewal process since it is

9

within the Office of Management and Budget's normal renewal cycle. New forms will be printed after the final version has been officially approved.

Passport processing times have not increased since changes to comply with E.O. 14168 were implemented, and processing times are not expected to increase. To find current passport processing times, please check the Processing Times for U.S. Passports page on travel.state.gov.

9. *Are payments or gifts given to the respondents?*

This information collection does not provide any payment or gift to respondents.

10. *Describe assurances of privacy/confidentiality*

This form includes a Privacy Act Statement explaining the routine uses of the information collected under the Act. There are no promises of confidentiality to the respondents. More information on the routine uses for the information collected can be found in the Department's Prefatory Statement of Routine Uses, the Department's System of Records Notice (SORN) for Passport Records (STATE-26), and the SORN for Overseas Citizens Services Records and Other Overseas Records (STATE-05) available in the Federal Register and online at https://www.state.gov/system-of-records-notices-privacy-office/.

11. *Are any questions of a sensitive nature asked?*

The DS-11 collects personally identifiable information from the applicant necessary to establish identity, nationality, and entitlement to the issuance of a U.S. Passport. The DS-11 requires the applicant's photograph which conveys biometric data required to validate the applicant's identity. The DS-11 also requests the applicant's Social Security number to help confirm the applicant's identity. Failure to provide a Social Security number may result in the denial of an application (consistent with 22 U.S.C 2714a(f)) and may subject the applicant to a penalty pursuant to 26 U.S.C. 6039E, which is enforced by the U.S. Department of the Treasury, Internal Revenue Service. Consistent with E.O. 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," the DS-11 also requests the applicant's biological sex at birth.

12. *Describe the hour time burden and the hour cost burden on the respondent needed to complete this collection.*

**Respondent Hour Time Burden and Hour Cost Burden**

The estimated number of respondents for this collection was calculated by taking the average (rounded) number of projected respondents for the next three fiscal years.

|  | **DS-11 Projected Respondents** |
|---|---|
| FY 2025 | 11,973,290 |
| FY 2026 | 12,637,210 |
| FY 2027 | 13,398,000 |

| Average | 12,669,500 |
|---------|-----------|

The estimated number of minutes per response is based on a sampling of the time required to search existing data sources, gather the necessary information, provide the information required, review the final collection, and submit the collection to Passport Services for processing. Passport Services estimates that the average time required for this information collection is 85 minutes per response. Therefore, the estimated **total annual respondent hour time burden is 17,948,460 hours.**

(12,669,500 annual respondents x 85 minutes / 60 = **17,948,460**)

The estimated cost to respondents is based on the civilian hourly wage listed in the Employer Costs for Employee Compensation released by the Bureau of Labor Statistics in 2025. The base hourly wage is estimated to be $32.52[i]. We also incorporate a benefit cost of $14.68 and the total hourly wage is calculated to be $47.20. The total hourly wage of $47.20 is then multiplied by the annual time burden of 17,948,460 hours. Therefore, the estimated (rounded) **total annual respondent hour cost burden is $847,167,000.**

($47.20 total hourly wage x 17,948,460 annual hours = $847,167,000)

13. *Describe the monetary burden to respondents (out of pocket costs) needed to complete this collection.*

**Respondent Monetary Burden**

To properly complete and submit a DS-11 passport application, a respondent must provide proof of U.S. citizenship/nationality, proof of identity, and one passport photo. The estimated out of pocket cost associated with submitting the DS-11 includes the following:

- Print front and back copy of U.S. citizenship/nationality evidence (2 pages) and front and back copy of identification (2 pages) - Average copier print fee at $0.40 (x 2 @ $0.20/ea.) per black and white copy based on a quote from Staples[ii]

- Order passport photo - Photo fee of $15.00 based on a quote from the United States Postal Service (USPS)[iii]

The Department estimates that most respondents submit their application to a local U.S. Post Office for processing, which is estimated to be an average distance of approximately three (3) miles one way and six (6) miles round trip. This distance is estimated to take an amount of five (5) minutes each way for a total of 10 minutes round trip. The Department has no way to calculate the average distance overseas applicants may need to travel to execute the form. To determine the travel cost to the respondent, the Department is factoring in the General Services Administration (GSA) reimbursement rate of $0.67 per mile for privately owned vehicles (POV).[iv]

A breakdown of respondent costs is outlined below:

| | | | |
|---|---|---|---|
| U.S. Citizenship or Nationality Evidence (front and back copy) | 12,669,500 respondents (2 pages @ $0.20 each) x $0.40 print fee | = | $5,067,800 |
| Identification (front and back copy) | 12,669,500 respondents (2 pages @ $0.20 each) x $0.40 print fee | = | $5,067,800 |
| Passport Photograph | 12,669,500 respondents x $15.00 fee | = | $190,042,500 |
| Average Travel Cost | 12,669,500 respondents x 6 miles x $0.67 per mile | = | $113,458,210 |
| **Total Cost to Respondent** | **$313,636,310** | | |

The estimated **total annual respondent monetary burden is $313,636,310.**

*14. Describe the cost incurred by the Federal Government to complete this collection.*

**Government Adjudication Cost**

The estimated cost to the government, which is funded by Department fee collections, is calculated by multiplying the estimated number of annual respondents (12,669,500) by the unit cost for adjudication ($134.67).  The cost includes the full cost to the Federal Government for first time passport application, processing, and production.  This cost includes the cost of producing the DS-11 form.  It also includes the suggested hourly rate for clerical, officer, and managerial time with benefits, plus a percent for the estimated overhead cost for printing, stocking, and distributing and processing of this form.  Therefore, the **total Government adjudication cost is $1,706,201,600.**

12,669,500 (number of respondents) x $134.67 (unit cost for adjudication) = $1,706,201,600

**Government Federal Register Notice Cost**

The estimated amount to publish one Federal Register Notice (FRN) is $795.  A 30-day FRN and a 30-day FRN is published with a **total cost of $1,590**.

**Government Printing Cost**

We also take into account the cost to print the form. The DS-11 will be produced by a contractor with cost-plus-fixed-fee line items for materials and/or supplies purchase functions.  The estimate provided to the Department by the contractor includes costs for contractor labor, supplies, equipment, printing materials, delivery, overhead, support staff, etc.  The current cost is $44.78 per 1000 forms.[v]  Based on the projected number of

12

12,669,500 annual respondents per year, at a cost of $44.78 per thousand, the contractor printing cost to the Federal Government is $567,300.

Therefore, the estimated **total cost to the Federal Government is $1,706,770,500.**

($1,706,201,600 + $1,590 + $567,300 = $1,706,770,500)

15. *Explain any changes/adjustments to this collection since the previous submission*

In addition to plain language changes and general format changes, the following content changes have been made to the collection:

The Acts or Conditions statement on the form was revised with the following language:

"The applicant agrees with the following statement:

*I am not currently required to register under the sex offender registration program of any jurisdiction for a sex offense against a minor. I have not been convicted of a federal or state drug offense or convicted of a statutory "sex tourism" crime, and I am not the subject of an outstanding federal, state, or local warrant of arrest for a felony; a criminal court order forbidding my departure from the United States; or a subpoena received from the United States in a matter involving federal prosecution for, or grand jury investigation of, a felony.*

If any of the above-mentioned acts or conditions have been performed by or apply to the applicant, a supplementary explanatory statement under oath (or affirmation) by the applicant is required to be attached and made part of this application."

International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders (IML) was enacted in 2016 with the goal that government should identify the whereabouts of sex offenders, including when traveling internationally. See Public Law 114-119 (34 USC 21501-510). Title 22 was later updated to provide that the Secretary of State "shall not issue a passport to a covered sex offender unless the passport contains a unique identifier and may revoke a passport previously issued without such an identifier of a covered sex offender", reference 22 USC 212b(b). Further, it allows the Department to "require a passport applicant to disclose that they are a registered sex offender", reference 22 USC 212b(e).

The Department believes that modifying the Acts or Conditions section is an important step in furthering the 2023 U.S. National Strategy for Child Exploitation Prevention and Interdiction.

To comply with E.O. 14168, "*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,*" the Department updated the form to replace the term "gender" with "sex." The U.S. Passport conforms with the standards set by the E.O. and the International Civil Aviation Organization, which among other things determine the various fields on the passport's biographical data page. Consistent with the E.O., the revised DS-11 will request the applicant's biological

13

sex at birth, male "M" or female "F." Amendments to the fields and instructions (section 3) have been made to reflect this.

To allow updates as the Department continues to modernize the passport process, including the use of online payment mechanisms, the Department has updated the fees section to direct applicants to travel.state.gov for more information on fees and methods of payment."

The USCIS Registration A-Number (A-Number) field has been added to page 1 of the application section of the form. Adding the A-Number to the DS-11 is a critical part of the Department's Transformation Project to fully achieve an electronic adjudication process. The A-Number would facilitate future electronic adjudication by eliminating the requirement that first-time applicants born outside the United States submit an original Certificate of Naturalization or Citizenship. Instead, adjudicators would be able to verify citizenship by searching by the A-Number in the Person Centric Query Service (PCQS), a USCIS database. The A-Number is the easiest and most efficient way for adjudicators to search in PCQS.

Question 21 - *Have you ever applied for or been issued a U.S. Passport Book or Passport Card?* has been revised to include additional space for applicants to provide a detailed explanation of the circumstances regarding the loss or theft of their card/book, consistent with the requirements of 22 C.F.R. Part 51.8. The applicant will be given a reasonable opportunity to provide a sufficient and credible explanation and to state whether a police report was filed.

16. *Specify if the data gathered by this collection will be published.*

Quantitative summaries of Department passport activities are published periodically on the Department website at travel.state.gov. Such summaries do not involve the use of complex analytical techniques.

17. *If applicable, explain the reason(s) for seeking approval to not display the OMB expiration date.*

The expiration date for OMB approval will be displayed.

18. *Explain any exceptions to the OMB certification statement below.*

The Department is not requesting any exceptions to the certification statement.

**B. Collection of Information Employing Statistical Methods**

This collection does not employ statistical methods.

---

[i] Source: Bureau of Labor Statistics, "Employer Costs for Employee Compensation – December 2024," https://www.bls.gov/news.release/pdf/ecec.pdf
[ii] Source: Staples, https://www.staples.com/services/printing/copies-documents-printing/
[iii] Source: U.S. Postal Service, https://www.usps.com/international/passports.htm#
[iv] Source: General Services Administration, "Privately Owned Vehicles (POV) Mileage Reimbursement Rates," https://www.gsa.gov/travel/plan-book/transportation-airfare-rates-pov-rates/privately-owned-vehicle-pov-mileage-reimbursement-rates.
[v] Source: Passport forms printing contractor Occam Solutions