IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHTON ORR et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> *Defendants*. | Civil Action No. 1:25-cv-10313 <br> Defendants' Reply <br> (Leave to file granted 10/27/25) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION FOR A STAY OF BRIEFING SCHEDULE IN LIGHT OF LAPSE OF APPROPRIATIONS**

The Government hereby files this reply in further support of its Motion for a Stay of Briefing Schedule in Light of Lapse of Appropriations (ECF No. 148, "Defs. Stay Mot.") and in response to Plaintiffs' opposition (ECF No. 149, "Pls. Opp'n").

*First*, as previously noted in Defendants' opening brief, the Anti-Deficiency Act requires that absent an appropriation, Department of Justice attorneys and employees of the Defendant agency, the Department of State, are prohibited from working, even on a volunteer basis, "except for emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. The Anti-Deficiency Act specifically states that "the term 'emergencies involving the safety of human life or the protection of property' does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property." *Id.* Plaintiffs do not argue that this case falls within the emergency exception. *See generally* Pls. Opp'n. That is reason enough to grant a stay.

Primarily, Plaintiffs respond that the Court could simply order Defendants to litigate this case as if the Anti-Deficiency Act did not exist. *Id.* at 2. And, to be clear, -if this Court denies

relief, Defendants will be required to—and they will—comply with all applicable court orders. But that practical reality does not render the Anti-Deficiency Act a legal nullity that can be ignored as a matter of course without any consideration of the applicable statutory factors, namely the emergency human life and property protection considerations. *See, e.g.*, *Rubin v. Islamic Rep. of Iran*, 583 U.S. 202, 213 (2018) (noting that "one of the most basic interpretive canons . . . is that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Plaintiffs' failure to respond on that point is dispositive.

*Second*, Plaintiffs' equitable timing argument, including their unfounded accusation that the Government has engaged in "gamesmanship"—shows a complete misunderstanding of the Anti-Deficiency Act. According to Plaintiffs, the Government should be barred from raising the Anti-Deficiency Act because the Government "waited" to file its stay motion until after Plaintiffs filed their opening brief. Pls. Opp'n at 1. But Plaintiffs fail to understand that the prohibitions of the Anti-Deficiency Act are not triggered until some action—here, Plaintiffs' filing of their brief—would require Government attorneys and personnel to work.

Plaintiffs state that the Government should have filed its stay motion earlier because the Government filed its stay motion in the First Circuit a week ago. *Id.* at 1, 2-3. Plaintiffs fail to appreciate that the First Circuit briefing order required the Governent to act next with the filing of its opening brief. *See* Briefing Notice (Sept. 19, 2025), No. 25-1579 (1st Cir.). Thus, a stay motion in advance of the Government's impending deadline was appropriate at that time, unlike here where the filing of Plaintiffs' brief was the next event and Defendants' filing obligations were not triggered until that event occurred.

Plaintiffs further argue "waiting until after Plaintiffs filed their motion for summary judgment . . . significantly prejudices Plaintiffs" because "Defendants ensured that Plaintiffs would not have additional time to prepare and file their Summary Judgment Motion." Pls. Opp'n at 2-3. Surely, if Plaintiffs needed additional time, they could have requested it, but they did not and they timely filed their motion. It is the Government that is impacted by the appropriations lapse, not Plaintiffs or their counsel.

Plaintiffs are incorrect that Defendants are gaining some sort of briefing advantage with this stay. *Id.* at 3. Since Plaintiffs filed their motion on October 17, 2025, Defendants have been precluded from working on matters not excepted under the terms of the Anti-Deficiency Act due to the appropriations lapse. This prohibition will continue until funding is restored. Therefore, the Government requested that, when appropriations are restored, all current deadlines for the parties be extended for the number of days commensurate with the duration of the lapse in appropriations beginning October 17, 2025, when the Government's briefing period commenced, plus an additional 14 days. Defs. Stay Mot. ¶ 4. The Government explained that it "will need [the] additional time following the end of the lapse to restart regular government operations and finalize the brief for filing." *Id.* The Government further explained that "granting an extension calculated in the manner proposed above will avoid having all briefs that would otherwise have been due during the period of a lapse of appropriations from having the same due date following the restoration of appropriations, which would not be practicable for the Government or the Court." *Id.* ¶ 5. "It also preserves the original chronological order of filing in government cases for fairness to all parties." *Id.*

Should the shutdown continue for more than thirty days after October 17, 2025, the Government is amenable to capping its opening-brief deadline at 44 days following the restoration

of funding (the 30-day briefing span as agreed-upon by the parties, plus an additional 14 days for the reasons explained above). The Government is also amenable to maintaining the remaining briefing intervals agreed-upon by the parties (ECF No. 141), subject to potential scheduling concerns presented by the holidays.

*Third*, a stay would not "prejudice Plaintiffs and the Classes." Pls. Opp'n at 1. As Plaintiffs readily acknowledge, "the Court's preliminary injunction prevents immediate irreparable harm from the Passport Policy." *Id.* at 4. Plaintiffs' speculation that the Supreme Court may stay that injunction at some undetermined point in the future does not override the fact that an active injunction is in place. Unlike *Doe v. Noem*, Civ. A. No. 25-10495 (IT), 2025 WL 2898122 (D. Mass. Oct. 9, 2025), the Court's preliminary injunction currently prevents enforcement of the Passport Policy. *See Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025) (vacating district court stay of revocation of immigration parole program). Indeed, Plaintiffs have not identified a single case where a court denied a stay for lapse of appropriations when the challenged government action is subject to an injunction. *See* Pls. Opp'n at 3-4.

Dated: October 27, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JEAN LIN
Special Litigation Counsel

*/s/ M. Jared Littman*
ELIZABETH B. LAYENDECKER
M. JARED LITTMAN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-5578
E-mail: Jared.Littman2@usdoj.gov
*Attorneys for Defendants*

4

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document was served upon Plaintiffs' counsel by the Electronic Case Filing system on October 27, 2025.

/s/ *M. Jared Littman*
M. JARED LITTMAN