## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ASHTON ORR et al.,

      Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

      Defendants.

Civil Action No. 25-10313 (JEK)

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
## AS TO COUNTS 6 AND 7 OF THE AMENDED COMPLAINT
## AND MEMORANDUM IN SUPPORT THEREOF AND IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO THE SAME COUNTS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

   I.   LEGAL BACKGROUND ............................................................................................. 2

   II.   PROCEDURAL HISTORY ......................................................................................... 4

SCOPE OF APA REVIEW ...................................................................................................... 11

ARGUMENT ............................................................................................................................ 12

   I.   THE CHALLENGED POLICY IS NOT REVIEWABLE UNDER THE APA ............... 13

   II.   IN ANY EVENT, PLAINTIFFS' APA CLAIMS FAIL ON THE MERITS. .................. 15

   III.  PLAINTIFFS' PAPERWORK REDUCTION ACT CLAIM IS MOOT. ......................... 18

CONCLUSION ......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agatha v. Trump,*
  151 F.4th 9 (1st Cir. 2025) .................................................................................9

*Bos. Bit Labs, Inc. v. Baker,*
  11 F.4th 3 (1st Cir. 2021) ............................................................................18, 19

*Bos. Redevelopment Auth. v. Nat'l Park Serv.,*
  838 F.3d 42 (1st Cir. 2016) ...............................................................................12

*Camp v. Pitts,*
  411 U.S. 138 (1973) ..........................................................................................11

*Conrad v. Caliber Home Loans, Inc.,*
  No. CV 16-12524-FDS, 2017 WL 1496922 (D. Mass. Apr. 25, 2017) .................20

*Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo,*
  18 F.4th 38 (1st Cir. 2021) ................................................................................15

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) .............................................................................13, 14, 15

*Haig v. Agee,*
  453 U.S. 280 (1981) .......................................................................................2, 13

*Hill Dermaceuticals, Inc. v. FDA,*
  709 F.3d 44 (D.C. Cir. 2013) ............................................................................11

*Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan,*
  802 F.3d 99 (1st Cir. 2015) ...............................................................................11

*Littlefield v. Dep't of Interior,*
  85 F.4th 635 (1st Cir. 2023) ..............................................................................15

*Lowe v. Gagné-Holmes,*
  126 F.4th 747 (1st Cir. 2025) ......................................................................18, 19

*Mangual v. Rotger-Sabat,*
  317 F.3d 45 (1st Cir. 2003) ...............................................................................18

*Massachusetts v. Dep't of Health & Hum. Servs.,*
  923 F.3d 209 (1st Cir. 2019) .............................................................................19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ........................................................................................15, 16

*New York v. Trump,*
    133 F.4th 51 (1st Cir. 2025) ........................................................................16, 17

*New York State Rifle & Pistol Ass'n, Inc. v. City of N.Y.,*
    590 U.S. 336 (2020) ........................................................................ 19

*Orr v. Trump,*
    778 F. Supp. 3d 394 (D. Mass. 2025)........................................... *passim*

*Orr v. Trump,*
    786 F. Supp. 3d 397 (D. Mass. 2025)...........................................................7

*Plourde v. Sorin Grp. USA, Inc.,*
    517 F. Supp. 3d 76 (D. Mass. 2021) ........................................... 20

*State v. Su,*
    121 F.4th 1 (9th Cir. 2024)...........................................................16

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ...........................................................10

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ...........................................................10

*Trump v. Orr,*
    ---S. Ct.---, 2025 WL 3097824 (Nov. 6, 2025) .............................. *passim*

*United States v. Laub,*
    385 U.S. 475 (1967) ........................................................... 2

*United States v. Skrmetti,*
    605 U.S. 495 (2025) ........................................................... 8

*Urtetiqui v. D'Arcy,*
    34 U.S. (9 Pet.) 692 (1835).................................................... 2

*Zzyym v. Pompeo,*
    958 F.3d 1014 (10th Cir. 2020) ...........................................................15

**Executive Orders**

Executive Order No.14,168 (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025)............1, 3, 18, 19

**Statues**

5 U.S.C. § 701 ...........................................................................13

5 U.S.C. § 704 ...........................................................................13

5 U.S.C. § 706 ...........................................................................15, 16

22 U.S.C. § 211a ........................................................... *passim*

44 U.S.C. § 3506...........................................................................19

**Rules**

Federal Rules of Civil Procedure 12(b)(1)................................................................20

Federal Rules of Civil Procedure 56...........................................................................1

Federal Rule of Appellate Procedure 8(a)(1)(C) .........................................................8

**Regulations**

22 C.F.R. § 51.7 ..........................................................................................................2

Act of Aug. 18, 1856, ch. 127, § 23, 11 Stat. 52 ........................................................2

Act of July 3, 1926, ch. 772, § 1, 44 Stat. 887 ...........................................................2

**Other Authorities**

Elena Kagan, *Presidential Administration*,
    114 Harv. L. Rev. 2245 (2001).................................................................................14

Defendants, by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 56, submit this Cross-Motion for Summary Judgment as to Counts 6 and 7 of the Amended Complaint and Memorandum in Support Thereof and in Opposition to Plaintiffs' Motion for Summary Judgment as to the Same Counts (ECF No. 145), and in support thereof state:

## INTRODUCTION

This case concerns a presidential directive requiring all new passports to display an individual's biological sex, "a historical fact" that does not "subject[] anyone to differential treatment," *Trump v. Orr*, ---S. Ct.---, 2025 WL 3097824, at *1 (Nov. 6, 2025), instead of allowing passport applicants to self-select the sex designations—either "M" or "F" without regard to their sex, or even "X" if they prefer not to identify with either gender.

Defendants now move for summary judgment on Plaintiffs' Administrative Procedure Act ("APA") claims and oppose Plaintiffs' cross-motion as to the same. This Court should grant summary judgment to Defendants because Presidential actions are not reviewable under the APA, and Executive Order No. 14,168 (*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*) dictated the challenged passport policy here. The Department of State (Department) was required to implement the President's decision because the Passport Act, 22 U.S.C. § 211a, authorizes the President himself to determine the contents of passports.

Even if the passport policy were reviewable under the APA, Plaintiffs' contention that the passport policy is arbitrary and capricious has no merit. In staying this Court's preliminary injunctions, the Supreme Court held that Plaintiffs were unlikely "to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Orr*, 2025 WL 3097824, at *1  Nothing in the

administrative record suggests a different outcome.  Because the Department's ministerial actions implementing the President's direction are neither subject to APA review nor arbitrary or capricious, this Court should grant summary judgment to Defendants as to Counts 6 and 7 and deny Plaintiffs' cross-motion.

## BACKGROUND

### I.    LEGAL BACKGROUND

A United States passport is a "political document" issued by the federal government and "addressed to foreign powers[.]"  *Haig v. Agee*, 453 U.S. 280, 292 (1981) (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (9 Pet.) 692, 698 (1835)).  Its purpose is to identify its bearer as an American citizen and to "request[] foreign powers to allow the bearer to enter and to pass freely and safely." *United States v. Laub*, 385 U.S. 475, 481 (1967).  A passport is thus an official communication "by which the Government vouches for the bearer and for his conduct."  *Agee*, 453 U.S. at 293.  And "[a] passport at all times remains the property of the United States."  22 C.F.R. § 51.7(a).

Since "the earliest days of the Republic," the President's Article II authority over "national security" and "foreign policy" has been understood to encompass the power to issue passports. *Agee*, 453 U.S. at 293.  The first Passport Act, enacted in 1856, "confirmed" that power in "broad and permissive language."  *Id.* at 294 (citation omitted); *see* Act of Aug. 18, 1856, ch. 127, § 23, 11 Stat. 52, 60–61.  Today, that language is codified at 22 U.S.C. § 211a, which provides: "The Secretary of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States."  22 U.S.C. § 211a; *see* Act of July 3, 1926, ch. 772, § 1, 44 Stat. 887, 887.

In 1976, the Department introduced "sex" as a required marker on U.S. passports.  *Orr v. Trump*, 778 F. Supp. 3d 394, 401–02 (D. Mass. 2025).  From 1977 to 2021, the Department issued

U.S. passports with one of two sex markers: "M" for male or "F" for female. *Id.* at 402. From 1992 until 2021, the Department required medical documentation to support a passport applicant's change in sex marker. *Id.* In June 2021, at President Biden's direction, the Department adopted a new passport policy (the 2021 policy). *Id.* The 2021 policy permitted passport applicants to self-select their sex marker based on their "gender identity." *Id.* The 2021 policy also added a third option, "X" as a marker for applicants who do not self-identify as male or female. *Id.*

Upon taking office, President Trump issued an Executive Order declaring it "the policy of the United States to recognize two sexes, male and female." AR 005–08; *see* Exec. Order No. 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025) ("Executive Order" or "Order"). The Order defined "'[s]ex'" as "an individual's immutable biological classification as either male or female." AR 005. And the Order distinguished the "immutable biological reality of sex" from "the concept of 'gender identity,'" which the Order described as reflecting "an internal, fluid, and subjective sense of self unmoored from biological facts." *Id.*

The Executive Order explained that because "'[g]ender identity' reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum," it "does not provide a meaningful basis for identification." AR 006. The Order therefore directed the Secretary of State ("Secretary") to "implement changes to require that government-issued identification documents, including passports, . . . accurately reflect the holder's sex, as defined" by the Order. *Id.* The Order further instructed that "[a]gency forms that require an individual's sex shall list male or female, and shall not request gender identity." *Id.*

Soon after, the Department implemented the President's directive to issue passports with a sex marker of either "M" or "F" reflecting the holder's "biological sex." AR 009; *see* AR 013–16.

The Department also ceased issuing passports with an "X" marker. AR 013–16. It replaced passport application forms that offered an "X" marker with earlier versions of the forms that offered a marker of only "M" or "F." *Id.* And it adopted procedures for adjudicating a passport applicant's sex using birth certificates and other documentation issued close to the applicant's birth. *Id.*

## II.    PROCEDURAL HISTORY

In February 2025, seven trans-identifying or non-binary individuals filed this instant action against the President, the Secretary, the Department, and the United States. Compl. (ECF No. 1) ¶¶ 16–27. Plaintiffs did not challenge the inclusion of a sex designation on U.S. passports. Instead, Plaintiffs argued that U.S. passports must include a sex designation that "reflect[s] the sex [people] live as and express, rather than the sex they were assigned at birth." *Id.* ¶ 1. Plaintiffs thus challenged what they described as the Trump Administration's "reversal" of the 2021 policy of "permitt[ing] all people . . . to obtain passports with sex designations that reflected the sex they live as." *Id.* ¶ 2.

Plaintiffs claimed that the policy change violated the equal-protection component of the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 193–211. Plaintiffs also asserted an APA claim challenging "[a]gency actions taken under the Executive Order" as "arbitrary, capricious, and an abuse of discretion," *id.* ¶¶ 243–44, as well as an APA claim challenging the change in passport application forms as contrary to the Paperwork Reduction Act ("PRA"), *id.* ¶¶ 247–51. Plaintiffs moved for a preliminary injunction requiring the Secretary and the Department to reinstate the 2021 policy and thus "allow[] Plaintiffs to self-attest to what their sex is," including by choosing "an 'X' sex designation." PI Mot. (ECF No. 29) at 2.

4

On April 18, this Court granted Plaintiffs' motion in part. *Orr*, 778 F. Supp. 3d 394. The Court understood the Department to have "compl[ied] with the Executive Order's directive" by "ma[king] two substantive changes to its prior passport policy":

> First, [the Department] withdrew the option for Americans to obtain a passport reflective of either their gender identity or their sex assigned at birth, and instead required all passports to reflect only applicants' sex assigned at birth. Second, it removed the option for intersex, non-binary, and gender non-conforming applicants to select "X" as the sex marker on their passports.

*Id.* at 400. The Court "refer[red] to these changes as the 'Passport Policy.'" *Id.*

This Court then held that Plaintiffs were "likely to succeed on the merits of their equal protection claim." *Id.*; *see id.* at 408–18. The Court concluded that "[t]he Executive Order and the Passport Policy on their face classify passport applicants on the basis of sex" and failed intermediate scrutiny. *Id.* at 400; *see id.* at 412–14. The Court further concluded that the Executive Order and the Passport Policy were motivated by "animus" toward trans-identifying individuals and therefore violated equal protection even under rational-basis review. *Id.* at 414–18.

As to Plaintiffs' APA claims, which are the subject of the parties' current cross-motions for summary judgment, the Court concluded that Plaintiffs' claims were likely to succeed. *Id.* at 419–26. The Court acknowledged that "[p]residential actions, like executive orders, are not . . . subject to APA review," *id.* at 419; that the Passport Act requires the Secretary to comply with "such rules as the President shall designate and prescribe," *id.* (quoting 22 U.S.C. § 211a); and that the Secretary "adopted the Passport Policy to comply with the directive set forth in the Executive Order," *id.* at 411. The Court nevertheless concluded that the Passport Policy was subject to APA review. *Id.* at 419–22. The Court then held that Plaintiffs were "likely to succeed on their claim that the Passport Policy is arbitrary and capricious" because the Secretary and the Department

"failed to offer a reasoned explanation for" the policy beyond pointing to the Executive Order. *Id.* at 423–25.

The Court further held that Plaintiffs were likely to succeed on their claim that the Department's use of passport application forms that offered a sex marker of only "M" or "F" had not complied with "the procedures required by the [PRA]." *Id.* at 401. The Court stated that, "although the prior passport forms were promulgated in accordance with the PRA's notice and comment requirements, the [Secretary and the Department] were nevertheless required to obtain the [Office of Management and Budget (OMB)] Director's approval before they began using those forms again in January 2025." *Id.* at 426.

After considering the likelihood of irreparable harm and the balance of the equities, the Court concluded that six of the seven plaintiffs were entitled to a preliminary injunction. *Id.* at 428–29. The Court determined, however, that the seventh plaintiff was not "likely to suffer irreparable harm absent a preliminary injunction because he currently possesses a valid passport bearing a sex marker that corresponds to his gender identity and expression, and his passport remains valid until 2028." *Id.* at 432–33. The Court therefore entered a preliminary injunction requiring the government "to process and issue passports" to the other six Plaintiffs "consistent with" the 2021 policy and to "allow[] [them] to self-attest to their sex," including by selecting "an 'X' sex designation." *Id.* at 433

Plaintiffs then amended their complaint, adding five named plaintiffs. Am. Compl. (ECF No. 76) ¶¶ 23–27. Plaintiffs also moved for class certification, emphasizing that the government had "enacted a policy imposing a definition of 'sex' that affects every person in the country in the same way: Americans can only obtain passports that match their sex as this Administration defines it." Mem. of L. In Supp. of Pls.' Mot. for Class Cert. ("Class Cert Mem.") (ECF No. 78), at 1. In

addition, Plaintiffs moved to extend the preliminary injunction to certain members of the proposed

classes.  ECF No. 79.

On June 17, the Court certified two classes under Rule 23(b)(2):

1. A class of all people (1) whose gender identity is different from the sex assigned to them under the Passport Policy and/or who have been diagnosed with gender dysphoria, and (2) who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport issued with an "M" or "F" sex designation that is different from the sex assigned to that individual under the Passport Policy ("M/F Designation Class");

2. A class of all people whose gender identity is different from the sex assigned to them under the Passport Policy and who have applied, or who, but for the Passport Policy, would apply, for a U.S. passport with an "X" designation ("X Designation Class").

*Orr v. Trump*, 786 F. Supp. 3d 397, 422 (D. Mass. 2025).  The Court explained that "enforcement

of the Passport Policy[] uniformly impacts members of [those classes] by preventing them from

obtaining passports with a sex marker consistent with their gender identity."  *Id.* at 411–12.

The Court also extended the preliminary injunction to members of the certified classes

who:

(a) do not have a currently valid passport, (b) need to renew their current passport because it expires within one year, (c) need to make changes to their passport to have the sex designation on it align with their gender identity or to reflect a name change, or (d) need to apply for another passport because their passport was lost, stolen, or damaged.

Order of Prelim. Inj. ("PI Order") (ECF No. 116) ¶ 1.  The Court referred to that subset of the

certified classes as the "PI Class."  *Orr*, 786 F. Supp. 3d at 415.  The Court concluded that members

of the PI Class faced the same risk of irreparable harm as the six original named plaintiffs.  *Id.* at

419.  The Court also concluded that the burden imposed by classwide relief on the government did

"not outweigh the equities favoring the PI Class."  *Id.* at 420.  The Court therefore entered a

preliminary injunction requiring the government "to process and issue passports to members of

the PI Class consistent with" the 2021 policy and "to permit members of the PI Class to self-select a sex designation—'M,' 'F,' or 'X'—that is different from the sex assigned to those individuals under the Passport Policy."  PI Order ¶ 2.

On June 18, the day after the district court granted the classwide injunction, the Supreme Court decided *United States v. Skrmetti*, 605 U.S. 495 (2025), which held that a prohibition on the prescription of puberty blockers or hormones to enable a minor to live as a purported identity inconsistent with the minor's sex did not discriminate based on sex, *id.* at 510–22.  In a motion to dissolve this Court's classwide injunction, the government argued that, under *Skrmetti*, a prohibition on the self-selection of a purported identity inconsistent with a passport holder's sex likewise does not discriminate based on sex.  Defs. Mot. to Dissolve (ECF No. 127) at 5–9.  In addition, the government observed that "a key premise of the [c]ourt's prior APA ruling—that forms used by the Department to implement the Executive Order were not approved by the Director of [OMB] as required by the PRA—no longer exists."  *Id.* at 11.  The government noted that the Director had approved the forms on June 25, thereby "complet[ing] the PRA process."  *Id.* at 12.

On July 11, the Court denied the government's motion to dissolve the classwide injunction. ECF No. 130.  The Court stated that even if *Skrmetti* had undermined its conclusion that "the Executive Order and Passport Policy must be reviewed under intermediate scrutiny," and even if the government had "cured its failure to comply with the procedures required by the PRA," the Court's "prior conclusions" as to Plaintiffs' likelihood of success on their "animus-based equal protection claim" and their "arbitrary-and-capricious claim under the APA" "would remain unchanged."  *Id.*  The Court therefore declined to dissolve its classwide injunction and declined to stay that injunction pending appeal.  *Id.* (citing Fed. R. App. P. 8(a)(1)(C)).

The government appealed both the district court's first injunction and its classwide injunction, ECF No. 111 (original injunction), ECF No. 131 (extension to class). The government also moved this Court to stay the district court proceedings pending the appeals, ECF No. 134, which this Court granted as to Plaintiffs' constitutional claims (Counts 1, 2, 3, 4, and 5) but denied as to the APA claims (Counts 6 and 7).

On July 18, the government moved the First Circuit for a stay of the classwide injunction pending appeal. No. 25-1579, Mot. for Stay (1st Cir. July 18, 2025). On September 4, the First Circuit denied the government's motion for a stay, explaining that the government had "not made a strong showing that it is likely to succeed on the merits of its appeal" of plaintiffs' APA claim that "the Department's implementation of its Passport Policy was arbitrary and capricious." *Agatha v. Trump*, 151 F.4th 9, 11–12 (1st Cir. 2025). Without resolving "the ultimate merits" of whether the Passport Policy is subject to APA review, the First Circuit stated that it could not "conclude on the present submissions that the government ha[d] made a strong showing that the Passport Policy is unreviewable under the APA." *Id.* The First Circuit further concluded that the government had not "demonstrate[d] a strong likelihood of success" on its argument that "the Passport Policy, if reviewable, passes muster under the APA." *Id.* at 12.

On the view that Plaintiffs' arbitrary-or-capricious claim was sufficient to "support the preliminary relief that the district court granted," the First Circuit found no need to go "further in considering the likelihood of success on the merits." *Id.* The court expressed the view, however, that the government's stay motion had not "engage[d] meaningfully" with the district court's conclusion that Plaintiffs were likely to succeed on their "Equal Protection Clause claim premised on 'unconstitutional animus toward transgender Americans.'" *Id.* The court then addressed the remaining stay factors and concluded that "the government 'ha[d] not sufficiently demonstrated

that the balance of harms and equities' favors upending the status quo and subjecting the plaintiffs to the immediate harms identified by the district court." *Id.* at 13. On September 19, 2025, the government filed an application for a stay of the preliminary injunctions in the Supreme Court. No. 25A319, Stay Appl. (S. Ct. Sept. 19, 2025).

After Plaintiffs moved for summary judgment on Counts 6 and 7 (the APA claims), ECF No. 145, the Supreme Court granted the government's stay application on November 6, 2025. *Orr*, 2025 WL 3097824, at *1. First, the Court concluded that "the Government is likely to succeed on the merits" of Plaintiffs' claims. *Id.* The Supreme Court explained that "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id.* The Supreme Court also concluded that Plaintiffs "failed to establish that the Government's choice to display biological sex 'lack[s] any purpose other than a bare . . . desire to harm a politically unpopular group.'" *Id.* (alterations in original) (quoting *Trump v. Hawaii*, 585 U.S. 667, 705 (2018)). Most relevant here, the Supreme Court further determined that Plaintiffs are unlikely "to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Id*. (citing 22 U.S.C. § 211a). The Supreme Court also concluded that "the Government will 'suffer[] a form of irreparable injury' absent a stay," because "the District Court's grant of class-wide relief enjoins enforcement of an Executive Branch policy with foreign affairs implications concerning a Government document." *Id.* (alteration in original) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025)). For these reasons, the Supreme Court stayed this Court's June 17 Order "pending the disposition of the appeal in the United States Court of Appeals for the

First Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Id.*

On December 18, 2025, Plaintiffs moved for an indicative ruling to dissolve this Court's preliminary injunctions. ECF No. 168. That motion remains pending, as are the government's motion to stay the district court proceedings as to the APA claims, ECF No. 156, and Plaintiffs' motion to lift the say on the constitutional claims, ECF No. 161.

## SCOPE OF APA REVIEW

Before proceeding to the merits, Defendants contest Plaintiffs' statement of material facts and Plaintiffs' reliance on nineteen exhibits, including a plaintiff's declaration and numerous expert declarations. *See* ECF Nos. 146 (Exhibits A–S), 147 (Statement of Undisputed Material Facts). To the extent Plaintiffs rely on those exhibits in support of their APA arguments, *see* Mem. of L. ISO Pls.' MSJ ("Pls.' Mem.") (ECF No. 146) at 13, the Court should disregard them as well as any extra-record material because this Court may *only* review the administrative record, which is comprised of the material before the Department when it implemented the Passport Policy. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan*, 802 F.3d 99, 114 (1st Cir. 2015); *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (holding that a district court properly disregarded extra-record declarations because "it is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision" (citation omitted)). While in rare circumstances not applicable here a party may move to supplement the administrative record, Plaintiffs have not done so despite being given an opportunity to do so by the Court. *See* ECF No. 138. Plaintiffs are thus precluded from relying on any extra-record materials.

Additionally, because this case involves judicial review under the APA, the usual requirement for a statement of material facts should not apply. *See Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) ("a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious"); *compare* Pls. Mem. at 5–6 (properly articulating that case is a question of law that is determined based on the administrative record), *id.* at 12 (warning Defendants not to introduce extra-record evidence because it would "contravene" APA rules), *with id.* at 13 (Plaintiffs improperly relying on declarations that were not before the decisionmaker), Exhibits A–S (ignoring that legal standard), Statement of Undisputed Material Facts ¶ 20 (same). In the event that the Court prefers or requires such a statement, Defendants respectfully request permission to do so within two weeks.

## ARGUMENT

This Court should deny Plaintiffs' summary judgment motion on the APA claims and grant the government's cross-motion on those same claims. To begin, the APA challenge to the Passport Policy is not reviewable because the challenged policy is presidential action. And even if the Department's implementation of that policy were reviewable, it is not arbitrary or capricious because the Department is required to follow the President's directive, as the Supreme Court has indicated. *See Orr*, 2025 WL 3097824, at *1 ("Nor are respondents likely to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow."). Lastly, there is no PRA violation.

## I.    THE CHALLENGED POLICY IS NOT REVIEWABLE UNDER THE APA.

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The President is not an "agency" under the APA. 5 U.S.C. § 701(b)(1); *see Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992).   The President's actions therefore "are not subject to [the APA's] requirements" and "are not reviewable" under the APA.  *Franklin*, 505 U.S. at 801.

The Passport Act commits to the President the power to make rules governing the issuance of passports.  The Act provides: "The Secretary of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a.  The statute thus supplements the President's inherent Article II authority to prescribe rules for the issuance of passports.  *Haig*, 453 U.S. at 293–94.  And the President exercised this statutory and constitutional power in the Executive Order.  AR 005-08.

Plaintiffs challenge as arbitrary or capricious what this Court referred to as the "Passport Policy," which consists of the two changes: the withdrawal of the option to self-select a sex marker of "M" or "F" based on one's purported gender identity, and the removal of the option to self-select "X" as one's sex marker.  *See Orr*, 778 F. Supp. 3d at 401; *supra* at 5.  Both of those changes were dictated by the Executive Order, which declares it to be "the policy of the United States to recognize two sexes, male and female"; instructs that "[g]ender identity" "does not provide a meaningful basis for identification"; provides that "[a]gency forms that require an individual's sex shall list male or female, and shall not request gender identity"; and directs the Secretary to "require that . . . passports . . . accurately reflect the holder's sex, as defined under" the Order. AR 005–08.  Plaintiffs' challenge to the Passport Policy is thus a challenge to a Presidential directive, which the President issued pursuant to his authority under the Passport Act.  Such

presidential action is "not subject to [the APA's requirements]," *Franklin*, 505 U.S. at 801, and thus, Plaintiffs' APA challenge to the Passport Policy is not reviewable under the APA.

Plaintiffs cannot evade that conclusion by purporting to challenge "[*a*]*gency* actions taken under the Executive Order." Am. Compl. ¶ 331 (emphasis added). This is so because the exercise of discretion is "committed to . . . the President" himself by the Passport Act, and the challenged agency action just ministerially carries out the President's decision. *See* Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001). Nor is Plaintiffs' attempt to distinguish *Franklin* persuasive. Pls. Mem. at 7–9. In *Franklin*, the Supreme Court held that the challenge to the method by which Congress apportioned seats in the House was unreviewable under the APA because the President's statement to Congress determined reapportionment, not the Secretary of Commerce's census report that the President considers in issuing his statement. *Franklin*, 505 U.S. at 797–99. Plaintiffs argue that the President was the last-in-time executive actor in *Franklin* but here, he left the nuts-and-bolts implementation to the Department. But the dispositive point is that presidential actions are unreviewable when the President's "duties [we]re not merely ceremonial or ministerial," *id.* at 800, but dictated the substance of the challenged agency action. Here, in exercising his authority under the Passport Act, the President required the Department to use biological sex for passports. The Department is bound by that requirement.

To be sure, the Department did exercise some discretion in determining *how* to implement the Passport Policy. For example, the Department chose to rely on birth certificates and other documentation issued close to an applicant's birth to determine a passport applicant's sex. *See, e.g.*, AR 014. But Plaintiffs do not challenge those ministerial steps to determine a person's biological sex; rather, they challenge whether sex should be defined in terms of biology at all under the policy. *See* Am. Compl. ¶¶ 328–44 (arbitrary and capricious APA claim). And that policy was

indisputably directed by the President. Because the President's actions "are not reviewable" under the APA, *Franklin*, 505 U.S. at 801, Plaintiffs' APA challenge to the policy fails.

## II.    IN ANY EVENT, PLAINTIFFS' APA CLAIMS FAIL ON THE MERITS.

Even if Plaintiffs sought judicial review of final agency action (and not unreviewable presidential action), that claim would fail because Plaintiffs have not identified any "agency action" that was "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Department did not act arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow.

Under the deferential arbitrary and capricious standard, the reviewing court has "only a narrow role to play." *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 44 (1st Cir. 2021). The court must decide if the agency action—which is presumed to be valid, *Zzyym v. Pompeo*, 958 F.3d 1014, 1022 (10th Cir. 2020)— is "supported by any rational view of the record." *Littlefield v. Dep't of Interior*, 85 F.4th 635, 643 (1st Cir. 2023) (citation omitted). If it is, the agency action must be upheld. *See id.* The court cannot "substitute its judgment for that of the agency" and must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

The Supreme Court has squarely held that Plaintiffs are "[not] likely to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Orr*, 2025 WL 3097824, at *1 (citing 22 U.S.C. § 211a). The Administrative Record confirms that Plaintiffs cannot prevail on this claim. As noted, the Passport Act directs "the Secretary of State [to] grant and issue passports . . . under such rules as the President shall designate and prescribe." 22 U.S.C. § 211a. Thus, the statute itself

requires the Department to follow the President's "rules," *Orr*, 2025 WL 3097824, at *1, and the Department's decision to do so therefore was not "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). To the contrary, it would have been a violation of the Passport Act—and thus "not in accordance with law" under the APA, *id.*—for the Department *not* to have followed the President's rules. And that is precisely what the relief Plaintiffs seek requires: It requests that the Court order the Department to violate the Passport Act by issuing passports *in contravention* of the "rules" that the President has "designat[ed] and prescribe[d]." 22 U.S.C. § 211a.

For the same reasons, "the agency's path" to the Passport Policy was not just "reasonably . . . discern[ible]"; it was obvious—and mandatory. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted). Far from "entirely fail[ing] to consider an important aspect of the problem," *id.*, the Department considered the only aspect relevant here: that the Passport Act required it to follow the President's rules. That requirement rendered irrelevant any other consideration that may typically come into play when the agency has discretion to choose among available options.

The cases that Plaintiffs cite, namely *State v. Su*, 121 F.4th 1 (9th Cir. 2024), and *New York v. Trump*, 133 F.4th 51 (1st Cir. 2025), for the proposition that "there is no [APA] carveout for agency action precipitated by executive orders" are unpersuasive. *See* Pls. Mem. at 7. The Supreme Court's recent stay decision in this case directly undermines that assertion, as the Supreme Court found that Plaintiffs are unlikely to show that the Department has acted arbitrarily and capriciously by "declin[ing] to depart from Presidential rules that Congress expressly required it to follow." *Orr*, 2025 WL 3097824, at *1 (citing 22 U.S.C. § 211a). *Su*, in any event, is inapposite. Whereas the Passport Act directly requires the Secretary to grant and issue passports under the rules designated and prescribed by the President, 22 U.S.C. § 211a, no statute in *Su* gave

the President the authority to issue a minimum wage mandate at issue in that case. *Su* thus says nothing about a situation where, as here, an agency directly carries out a Presidential directive that the President issued pursuant to authority granted by Congress as well as under his inherent constitutional authority.

There was no similar statute in *New York v. Trump*, 133 F.4th 51, either. That case involved an OMB memorandum implementing an Executive Order directing agencies to pause the disbursement of funds appropriated by statute to agencies. *Id.* at 57–59. But there was no statute vesting in the President the authority to pause the disbursement, let alone one that directs OMB to follow the Executive Order without complying with the APA in taking any agency action. Plaintiffs fail to appreciate that this case is not just about "agency actions that implement presidential actions," Pls. Mem. at 7, but instead involves an agency acting pursuant to "Presidential rules that Congress expressly required it to follow." *Orr*, 2025 WL 3097824, at *1 (citing 22 U.S.C. §211a).

Even if there were no Executive Order dictating the challenged changes, the Passport Policy is not arbitrary or capricious. It would have been entirely rational for the Department to adopt a policy that is based on biological sex. As the Supreme Court explained in its stay decision, "[d]isplaying passport holders' sex"—like displaying their country of birth—is "merely attesting to a historical fact." *Orr*, 2025 WL 3097824, at *1. Consistent with the President's determination that "gender identity" is "internal, fluid, and subjective," the Department reasonably could choose a "biological" definition of sex. AR 005–06. Indeed, other designations on U.S. passports, such as a person's date or place of birth, similarly reflect historical facts. Thus, the Passport Policy is not arbitrary or capricious for this reason as well.

17

III.    **PLAINTIFFS' PAPERWORK REDUCTION ACT CLAIM IS MOOT.**

Plaintiffs allege that the Department violated the PRA by using three expired passport application forms (the "2020 Forms") without going through the processes described in the PRA. Am. Compl. ¶¶ 338–39.[1]  Because the Department is no longer using the expired 2020 Forms, Plaintiffs' PRA claim is now moot.

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'"  *Lowe v. Gagné-Holmes*, 126 F.4th 747, 755 (1st Cir. 2025) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)).  Article III requires that there be a live controversy for the duration of the litigation, "[s]o if a case loses its live-controversy character at any point in the proceedings, the mootness doctrine generally stops [courts] from pumping new life into the dispute (regardless of how fascinating the party's claims are) by 'oust[ing]' the federal courts of 'jurisdiction' and 'requir[ing]' us to 'dismiss[]' the case." *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) (citation omitted).  A case becomes moot when "events have transpired to render a court opinion merely advisory." *Mangual*, 317 F.3d at 60.

Prior to January 20, 2025, and since the expiration of the 2020 Forms, the Department had been using forms approved in 2022 (the "2022 Forms").  *See* AR 042–59.  Following Executive Order 14168 and upon the Department's adoption of the Passport Policy, the Department again used the 2020 Forms because they did not contain an "X" designation.   And, as previously explained, the Department had initiated the PRA process to renew all three passport application forms. Defs.' Mot. to Dissolve at 11; AR 060–65.  The Department issued 60-day notices for the forms in November of 2024 and subsequently issued 30-day notices in February of 2025.  *See* AR 95, 102, 110.  The OMB director approved the forms on June 25, 2025, and these forms have been implemented by the Department (the "2025 Forms").  *See* Agnew Decl. ¶ 4, 6, ECF No. 127-1.

Plaintiffs' PRA claim is moot because the Department is no longer using the 2020 Forms and "there is . . . nothing left for [the Court] to do that would make a difference to [Plaintiffs']

---

[1]    The three forms are the DS-11, DS-82, and DS-5504.

legal interests." *Bos. Bit Labs*, 11 F.4th at 9 (holding that a challenge to COVID-19 restrictions was moot because the restrictions had been lifted). In general, when the government rescinds an action, challenges to that action become moot. *See New York State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 590 U.S. 336, 338 (2020) (holding that a challenge to certain firearm restrictions was moot because those firearm restrictions had been removed); *Lowe*, 126 F.4th at 755–56 (holding that claims for declaratory and injunctive relief based on a COVID-19 vaccination mandate were moot because the vaccination mandate was rescinded); *see also Massachusetts v. Dep't of Health & Hum. Servs.*, 923 F.3d 209, 221 (1st Cir. 2019) (holding that procedural challenges to superseded regulations are moot and noting that "[p]romulgation of new regulations and amendment of old regulations are among such intervening events as can moot a challenge to the regulation in its original form" (citation omitted)). Plaintiffs challenged the Department's use of the 2020 Forms as failing to comply with the procedures described in 44 U.S.C. § 3506(c)(2)(A). Am. Compl. ¶ 339. The Department is no longer using the 2020 Forms but is using the 2025 Forms, and thus any controversy over procedural violations in the use of the 2020 forms is moot.

None of the exceptions to the mootness doctrine apply. Because the Department received final approval for the 2025 Forms, and is now using those forms, the Department has no reason to reinstate the use of the 2020 Forms to comply with EO 14168 or otherwise. *See Lowe*, 126 F.4th at 756–58. The PRA process was initiated in November of 2024, well prior to this litigation, because the 2022 Forms were set to expire. The 2025 Forms currently in use were promulgated and finalized as a matter of course, and not in response to this litigation. *See id.* at 758–59. Finally, the PRA issue is not capable of repetition yet evading review. Because the Department has the 2025 Forms in place, the Department has no reason to substitute the 2020 Forms for the forms currently in use. While, as discussed below, Plaintiffs may challenge the promulgation of the 2025 Forms, that is a separate claim and, if properly brought before the Court, the Court would have ample time to review the forms, as they are approved for use for a 3-year period. *See id.* at 759–60.

Accordingly, the Court should enter judgment for Defendants on the PRA claim or, alternatively, dismiss the claim under Federal Rules of Civil Procedure 12(b)(1) on mootness.

Finally, Plaintiffs allege—for the first time—that the 2025 Forms violate the PRA.  To the extent Plaintiffs challenge the 2025 Forms, that claim is not properly before the Court.  Plaintiffs may not raise these new allegations without amending their complaint to challenge the promulgation of the 2025 Forms.  *Plourde v. Sorin Grp. USA, Inc.*, 517 F. Supp. 3d 76, 88 n.3 (D. Mass. 2021) ("The proper method for raising new allegations is by a motion to amend the complaint, not in response to a motion for summary judgment.") (quoting *Conrad v. Caliber Home Loans, Inc.*, No. CV 16-12524-FDS, 2017 WL 1496922, at *4 (D. Mass. Apr. 25, 2017))).

To that end, because the promulgation of the 2025 Forms is not the challenged agency action, materials underlying the promulgation of those forms were not included in the administrative record.   In any event, any amendment of the complaint would be futile because the 2025 Forms complied with the procedural requirements of the PRA.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment on Plaintiffs' APA claims (Counts 6 and 7).

\*       \*       \*

Dated: January 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JEAN LIN
Special Litigation Counsel

/s/ M. Jared Littman

ELIZABETH B. LAYENDECKER
M. JARED LITTMAN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-5578
Fax: (202) 616-8470
E-mail: Jared.Littman2@usdoj.gov
*Attorneys for Defendants*