**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ASHTON ORR et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    Defendants. | Civil Action No. 25-10313 (JEK) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO COUNTS 1, 2, 3, 4, AND 5 OF THE AMENDED COMPLAINT
AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

    I.   Legal Background .................................................................................................... 2

    II.  Procedural History .................................................................................................. 4

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ......................................................................................................................... 7

    I.   Plaintiffs' Equal Protection Claim Fails as a Matter of Law. .................................... 7

        A.       The Challenged Policy Warrants Only Rational-Basis Review ............................ 8

        B.       The Challenged Policy Satisfies Rational-Basis Review ................................... 12

    II.  Plaintiffs' Fifth Amendment Due Process Claims Fail as a Matter of Law ........................... 14

        A.       Right to International Travel ................................................................ 14

        B.       Right to Informational Privacy ............................................................. 16

    III. Plaintiffs' First Amendment Claim Fails as a Matter of Law ................................. 17

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Agatha v. Trump*,
151 F.4th 9 (1st Cir. 2025) .................................................................................................6

*Anderson v. Crouch*,
169 F.4th 474 (4th Cir. 2026) ...........................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................7

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ..........................................................................................................10

*Califano v. Aznavorian*,
439 U.S. 170 (1978) ..........................................................................................................15

*Califano v. Torres*,
435 U.S. 1 (1978) ..............................................................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................7

*Chiras v. Miller*,
432 F.3d 606 (5th Cir. 2005) ............................................................................................19

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985) ..........................................................................................................11

*Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury*,
559 F.3d 595 (7th Cir. 2009) ............................................................................................15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..........................................................................................................14

*Corbitt v. Sec'y of Ala. Law Enf't Ag.*,
115 F.4th 1335 (11th Cir. 2024) ..................................................................................16, 19

*Dearth v. Lynch*,
791 F.3d 32 (D.C. Cir. 2015) ............................................................................................15

*Dep't of State v. Munoz*,
602 U.S. 899 (2024) ..........................................................................................................16

*Doe v. Kerry,*
   Civ. A. No. 16-0654, 2016 WL 5339804 (N.D. Cal. Sep. 23, 2016) ................................................. 18, 19

*Eunique v. Powell,*
   302 F.3d 971 (9th Cir. 2002) ...................................................................................................14

*FCC v. Beach Commc'ns, Inc.,*
   508 U.S. 307 (1993) ....................................................................................................................14

*Free Speech Coal., Inc. v. Paxton,*
   606 U.S. 461 (2025) ....................................................................................................................12

*Freedom to Travel Campaign v. Newcomb,*
   82 F.3d 1431 (9th Cir. 1996) ......................................................................................................15

*Gore v. Lee,*
   107 F.4th 548 (6th Cir. 2024) ............................................................................................... 16, 17

*Haig v. Agee,*
   453 U.S. 280 (1981) .............................................................................................................2, 15, 18

*Heller v. Doe,*
   509 U.S. 312 (1993) ....................................................................................................................12

*Johanna v. Livestock Mktg. Ass'n,*
   544 U.S. 550 (2005) ....................................................................................................................18

*Maehr v. U.S. Dep't of State,*
   5 F.4th 1100 (10th Cir. 2021) .....................................................................................................14

*McKenna v. Maine Dep't of Health & Hum. Servs.,*
   152 F.4th 14 (1st Cir. 2025) .....................................................................................................8, 9

*Nat'l Rifle Assoc. of Am. v. Vullo,*
   602 U.S. 175 (2024) ....................................................................................................................18

*Nguyen v. INS,*
   533 U.S. 53 (2001)........................................................................................................................ 9

*Orr v. Trump,*
   778 F. Supp. 3d 394 (D. Mass. 2025) ................................................................................*passim*

*Orr v. Trump,*
   786 F. Supp. 3d 397 (D. Mass. 2025) ......................................................................................... 5

*Orr v. Trump,*
   --- F.4th ----, 2026 WL 1642666 (1st Cir. June 5, 2026) ........................................................7

iii

*Pleasant Grove City v. Summum*,
　555 U.S. 460 (2009) ..............................................................................................................18, 19

*Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rts. &*
　*Fight for Equal. By Any Means Necessary (BAMN)*,
　572 U.S. 291 (2014) ..............................................................................................................10, 11

*Towns of Norfolk & Walpole v. U.S. Army Corps of Eng'rs*,
　137 F.R.D. 183 (D. Mass. 1991.), *aff'd*, 968 F.2d 1438 (1st Cir. 1992) ...................................14

*Trump v. CASA, Inc.*,
　606 U.S. 831 (2025) ...................................................................................................................... 6

*Trump v. Hawaii*,
　585 U.S. 667 (2018) ................................................................................................................ 6, 13

*Trump v. Orr*,
　146 S. Ct. 44 (2025) .............................................................................................................*passim*

*United States v. Carolene Prods. Co.*,
　304 U.S. 144 (1938) ....................................................................................................................11

*United States v. Laub*,
　385 U.S. 475 (1967) ................................................................................................................ 2, 18

*United States v. Skrmetti*,
　605 U.S. 495 (2025) .............................................................................................................*passim*

*United States v. Texas*,
　599 U.S. 670 (2023) ....................................................................................................................14

*Urtetiqui v. D'Arcy*,
　34 U.S. (9 Pet.) 692 (1835) .................................................................................................... 2, 18

*W. Va. State Bd. of Educ. v. Barnette*,
　319 U.S. 624 (1943) ....................................................................................................................18

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
　576 U.S. 200 (2015) ....................................................................................................................19

*Washington v. Glucksberg*,
　521 U.S. 702 (1997) ....................................................................................................................16

*Whalen v. Roe*,
　429 U.S. 589 (1977) ....................................................................................................................16

*Wooley v. Maynard*,
　430 U.S. 705 (1977) ....................................................................................................................18

iv

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015) ........................................................................................................ 18, 19

**STATUTES**

22 U.S.C. § 211a ........................................................................................................... 2, 3, 6

Act of Aug. 18, 1856, ch. 127, § 23, 11 Stat. 52 ............................................................... 2

Act of July 3, 1926, ch. 772, § 1, 44 Stat. 887 .................................................................. 3

**RULES**

Fed. R. Civ. P. 1 ................................................................................................................ 7

Fed. R. Civ. P. 56 ........................................................................................................... 1, 7

**REGULATIONS**

22 C.F.R. § 51.7(a) ...................................................................................................... 2, 19

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

Exec. Order No. 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025) .................. 1

**OTHER AUTHORITIES**

David Haig, *The Inexorable Rise of Gender and the Decline of Sex: Social Change in Academic Titles, 1945–2001*, 33 Archives Sexual Behav. 87, 93 (2004) ........................................................ 16

Defendants respectfully move for summary judgment, pursuant to Federal Rules of Civil Procedure 56, as to Counts 1, 2, 3, 4, and 5 (the "constitutional claims") of Plaintiffs' Amended Complaint (ECF No. 76) and in support thereof state:

## INTRODUCTION

This case concerns a Presidential directive requiring all new passports to display a historical fact: the holder's biological sex. Plaintiffs, however, argue that the Equal Protection component of the Due Process Clause requires the State Department ("the Department") to allow passport applicants to self-select the sex designation on their passports—either "M" or "F" without regard to their biology, or "X" if they would prefer that instead. But as the Supreme Court explained in previously staying this Court's preliminary injunction, "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Trump v. Orr*, 146 S. Ct. 44, 46 (2025). That legal ruling is determinative as to Plaintiffs' Equal Protection claim (Count I) because rational-basis review requires only a plausible reason to support the presumptively constitutional government policy and the Department readily satisfies that standard. It was entirely rational for the President to decide that for "a Government document" that has "foreign affairs implications[,]" *id.*, the "internal, fluid, and subjective" nature of "'[g]ender identity'" "does not provide a meaningful basis for identification"; while biological sex—which is grounded in "immutable biological reality"—does. AR 005–06; *see* Exec. Order No. 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025) ("Executive Order" or "Order").

Plaintiffs' other constitutional claims (Count 2 - Right to Travel, Count 3 - Right to Privacy, Count 4 - Freedom of Speech, and Count 5- Administrative Procedure Act ("APA"), Contrary to Constitutional Right) also fail as a matter of law. The right to international travel claim fails because

the government has not restricted Plaintiffs' ability to travel abroad, and in any event, there is no fundamental right to travel abroad.  Nor is there a fundamental right for Plaintiffs to keep their biological sex private.  And absent a fundamental right, rational-basis review applies, which the challenged policy easily satisfies.  Plaintiffs' First Amendment compelled speech claim fails too because there is no compelled speech of Plaintiffs.  As the Supreme Court recognized in this very case, a passport is a government document, so it represents only the speech of the government.  Lastly, Count 5 hingers entirely on Plaintiffs' Fifth Amendment and First Amendment claims, which fail.

For these reasons, the Court should grant the government's summary judgment motion and enter judgment in Defendants' favor on Plaintiffs' constitutional claims.

## BACKGROUND

### I.    Legal Background

A United States passport is a "political document" issued by the federal government and "addressed to foreign powers[.]" *Haig v. Agee*, 453 U.S. 280, 292 (1981) (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (9 Pet.) 692, 698 (1835)).  Its purpose is to identify its bearer as an American citizen and to "request[] foreign powers to allow the bearer to enter and to pass freely and safely[.]" *United States v. Laub*, 385 U.S. 475, 481 (1967).  A passport is thus an official communication "by which the Government vouches for the bearer and for his conduct."  *Agee*, 453 U.S. at 293.  And "[a] passport at all times remains the property of the United States[.]"  22 C.F.R. § 51.7(a).  It is, as the Supreme Court said in this case, a "Government document."  *Orr*, 146 S. Ct. at 46.

Since "the earliest days of the Republic," the President's Article II authority over "national security" and "foreign policy" has been understood to encompass the power to issue passports.  *Agee*, 453 U.S. at 293.  The first Passport Act, enacted in 1856, "confirmed" that power in "broad and permissive language[.]"  *Id.* at 294–95 (citation omitted); *see* Act of Aug. 18, 1856, ch. 127, § 23, 11 Stat. 52, 60–61.  Today, that language is codified at 22 U.S.C. § 211a, which provides: "The Secretary

of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a; *see* Act of July 3, 1926, ch. 772, § 1, 44 Stat. 887, 887.

In 1976, the Department introduced "sex" as a required marker on U.S. passports. *Orr v. Trump*, 778 F. Supp. 3d 394, 401–02 (D. Mass. 2025). From 1977 to 2021, the Department issued U.S. passports with one of two sex markers: "M" for male or "F" for female. *Id.* at 402. From 1992 until 2021, the Department required medical documentation to support a passport applicant's change in sex marker. *Id.* In June 2021, at President Biden's direction, the Department adopted a new passport policy ("the 2021 policy"). *Id.* The 2021 policy permitted passport applicants to self-select their sex marker based on their "gender identity." *Id.* The 2021 policy also added a third option, "X" as a marker for applicants who do not self-identify as male or female. *Id.*

Upon taking office, President Trump issued an Executive Order declaring it "the policy of the United States to recognize two sexes, male and female." AR 005–08. The Executive Order defined "'[s]ex'" as "an individual's immutable biological classification as either male or female." AR 005. And the Executive Order distinguished the "immutable biological reality of sex" from "the concept of 'gender identity,'" which the Order described as reflecting "an internal, fluid, and subjective sense of self unmoored from biological facts." *Id.* The Executive Order further explained that because "'[g]ender identity' . . . exist[s] on an infinite continuum," it "does not provide a meaningful basis for identification." AR 006. The Executive Order therefore directed the Secretary of State ("the Secretary") to "implement changes to require that government-issued identification documents, including passports, . . . accurately reflect the holder's sex, as defined" by the Executive Order. *Id.* The Executive Order further instructed that "[a]gency forms that require an individual's sex shall list male or female, and shall not request gender identity." *Id.*

3

Soon after, the Department implemented the President's directive to issue passports with a sex marker of either "M" or "F" reflecting the holder's "biological sex[.]"  AR 009; *see* AR 013–16. The Department also ceased issuing passports with an "X" marker.  AR 009; AR 013–16.  And it adopted procedures for adjudicating a passport applicant's sex using birth certificates and other documentation issued close to the applicant's birth.  *Id.*

## II.    Procedural History

In February 2025, seven trans-identifying or non-binary identifying individuals filed this action challenging the 2025 passport policy.  *See generally* Compl., ECF No. 1.  Plaintiffs did not challenge the inclusion of a sex designation on U.S. passports.  Instead, Plaintiffs argued that U.S. passports must include a sex designation that "reflect[s] the sex [people] live as and express, rather than the sex they were assigned at birth."  *Id.* ¶ 1.     Plaintiffs claimed that the policy violated the equal-protection component of the Fifth Amendment's Due Process Clause.  *Id.* ¶¶ 193–211 (Count 1).  Plaintiffs also asserted right to international travel and right to information privacy claims under the Fifth Amendment, *id.* ¶¶ 212–27 (Counts 2 and 3), and a freedom of speech claim under the First Amendment, *id.* ¶¶ 228–35 (Count 4).  Lastly, Plaintiffs asserted APA claims challenging "[a]gency actions taken under the Executive Order" as "contrary to constitutional right, power, privilege, or immunity[,]" *id.* ¶¶ 237–39 (Count 5) (citation omitted), and "arbitrary, capricious, and an abuse of discretion," *id.* ¶¶ 243–44 (Count 6), as well as an APA claim challenging the change in passport application forms as contrary to the Paperwork Reduction Act ("PRA"), *id.* ¶¶ 247–51 (Count 7).[1] Plaintiffs moved for a preliminary injunction requiring the Secretary and the Department to reinstate

---

[1]      The parties are separately briefing Counts 6 and 7.  *See* Pls.' Mot. for Summ. J. on Counts Six & Seven of the Am. Compl., ECF No. 145 (Pls' MSJ); Defs.' Cross-Mot. for Summ. J. as to Counts & 7 of the Am. Compl & Mem. in Supp. Thereof & in Opp'n to Pls.' mot. for Summ. J. as to the Same Counts, ECF No. 174 (Defs' Cross-Mot. and Opp'n).  Plaintiffs are "no longer pursing their PRA-based APA claim."  *Orr v. Trump*, No. 25-1579 (1st Cir.), Appellees' Br. at 9 n.1.

the 2021 policy and thus "allow[] Plaintiffs to self-attest to what their sex is," including by choosing "an 'X' sex designation." Pls.' Mot. to Stay Agency Action & for Prelim. Inj., at 2, ECF No. 29.

This Court granted Plaintiffs' preliminary injunction motion as to six of the seven Plaintiffs finding them likely to succeed on their equal protection, APA arbitrary and capricious, and PRA claims, *Orr v. Trump*, 778 F. Supp. 3d 394 (D. Mass. 2025).[2] Plaintiffs then amended their complaint, adding five more plaintiffs, Am. Compl. ¶¶ 23–27, ECF No. 76 and moved for class certification and to extend the preliminary injunction to certain members of the proposed classes (the "PI Class"), ECF Nos. 78 & 79. On June 17, 2025, this Court granted Plaintiffs' motions. *Orr v. Trump*, 786 F. Supp. 3d 397, 422 (D. Mass. 2025). The Court therefore entered a preliminary injunction requiring the government "to process and issue passports to members of the PI Class consistent with" the 2021 policy and "to permit members of the PI Class to self-select a sex designation—'M,' 'F,' or 'X'—that is different from the sex assigned to those individuals under the Passport Policy." Order of Prelim. Inj. ¶ 2, ECF No. 116.

On June 18, the day after this Court granted the classwide injunction, the Supreme Court decided *United States v. Skrmetti*, 605 U.S. 495 (2025), which held that a prohibition on the prescription of puberty blockers or hormones to treat a minor's gender dysphoria did not violate equal protection, *id.* at 510–22. In light of *Skrmetti*, the government moved to dissolve this Court's injunctions, Defs.' Mot. to Dissolve the June 17, 2025 Prelim. Inj. & for a Stay of That Inj. Pending Resolution of the Mot. to Dissolve & Request for an Indicative Ruling Concerning the April 18, 2025 Prelim. Inj., ECF No. 127, which the Court denied, Order, ECF No. 130.

---

[2]    The Court found that the seventh plaintiff was not "likely to suffer irreparable harm absent a preliminary injunction because he currently possesses a valid passport bearing a sex marker that corresponds to his gender identity and expression, and his passport remains valid until 2028." *Orr*, 778 F. Supp. 3d at 432–33.

The government appealed both this Court's first injunction and the classwide injunction, Notice of Appeal, ECF No. 111 (original injunction), Notice of Appeal, ECF No. 131 (extension to class). The government also sought a stay of the classwide injunction pending appeal, No. 25-1579, Mot. for Stay (1st Cir. July 18, 2025), which the First Circuit denied, *Agatha v. Trump*, 151 F.4th 9 (1st Cir. 2025). Thereafter, the Supreme Court granted a stay pending appeal or disposition of any petition for a writ of certiorari. *Orr*, 146 S. Ct. at 46. First, the Court concluded that "the Government is likely to succeed on the merits" of Plaintiffs' claims. *Id.* The Supreme Court explained that "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id.* The Supreme Court also concluded that Plaintiffs "failed to establish that the Government's choice to display biological sex 'lack[s] any purpose other than a bare . . . desire to harm a politically unpopular group.'" *Id.* (alterations in original) (quoting *Trump v. Hawaii*, 585 U.S. 667, 705 (2018)). The Supreme Court further determined that Plaintiffs are unlikely "to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Id.* (citing 22 U.S.C. § 211a). The Supreme Court also concluded that "the Government will 'suffer[] a form of irreparable injury' absent a stay[,]" because "the District Court's grant of class-wide relief enjoins enforcement of an Executive Branch policy with foreign affairs implications concerning a Government document." *Id.* (alteration in original) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025)).

Meanwhile, in this Court, the government moved to stay proceedings pending the appeals, Defs.' Mot. to Stay District Court Proceedings Pending Appeals of Prelim Injs., ECF No. 134, which this Court granted as to Plaintiffs' constitutional claims (Counts 1, 2, 3, 4, and 5) but denied as to the APA claims (Counts 6 and 7). On January 26, 2026, this Court also stayed the proceedings on the APA claims and continued the stay on the constitutional claims pending the First Circuit's decision on

6

the preliminary injunction appeal.  Electronic Order, ECF No. 175.  Before the First Circuit, Plaintiffs

"abandon[ed] their request for preliminary injunctive relief," which the First Circuit held rendered the

government's appeal moot.  *Orr v. Trump*, --- F.4th ----, 2026 WL 1642666, at *1 (1st Cir. June 5, 2026).

The First Circuit dismissed the appeal and vacated this Court's preliminary injunction orders.

The government now moves for summary judgment on Plaintiffs' constitutional claims.

## LEGAL STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986) (quoting Fed. R. Civ. P. 1).  "Rule 56 must be construed with due regard not only for the rights

of persons asserting claims . . . that are adequately based in fact to have those claims . . . tried to a jury,

but also for the rights of persons opposing such claims . . . to demonstrate in the manner provided by

the Rule, prior to trial, that the claims have no factual basis."  *Id.*

Summary judgment is appropriate when the pleadings and evidence show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A "material fact" is one whose existence affects the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine factual dispute" exists when the

non-movant produces sufficient evidence of a material fact so that a fact finder is required to resolve

the parties' differing versions at trial.  *Id.*

## ARGUMENT

This Court should grant the government's motion for summary judgment on the

constitutional claims.

## I.      Plaintiffs' Equal Protection Claim Fails as a Matter of Law.

For decades, U.S. passports have included a sex designation identifying the sex of the

passport's holder.  *Orr*, 778 F. Supp. 3d at 401–02.  In Plaintiffs' view, that designation should be

based on a person's "gender identity[,]" *id.* at 403, or as Plaintiffs characterized it—"the sex [people] live as and express," Am. Compl. ¶ 1, whereas the Executive Order requires that the sex designation in a passport reflects the holder's "immutable biological" characteristics. AR 005–08. But equal protection does not require the government to adopt Plaintiffs' preferred definition of sex. As the Supreme Court has already determined in this very case, the government fairly could require passports to reflect a historical fact—the holder's sex at birth—without offending equal protection. *Orr*, 146 S. Ct. at 46. Indeed, the classification based on a passport holder's immutable biological characteristics does not discriminate on the basis of sex or trans-identifying status, and thus, the policy is subject to only rational-basis review—which it easily satisfies.

## A.    The Challenged Policy Warrants Only Rational-Basis Review

Equal protection generally demands only rational-basis review, unless a policy discriminates against a suspect or quasi-suspect class or burdens a fundamental right (which is not a component of Plaintiffs' equal protection claim). *See Skrmetti*, 605 U.S. at 509; *McKenna v. Maine Dep't of Health & Hum. Servs.*, 152 F.4th 14, 21-22 (1st Cir. 2025). Because the challenged policy does not discriminate on this basis, heightened scrutiny is unwarranted and the undemanding rational-basis standard applies.

### 1.    *The challenged policy does not discriminate based on sex*

As the Supreme Court held, "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Orr*, 146 S. Ct. at 46. This holding is binding on this Court and Plaintiffs' equal protection claim fails as a matter of law. Even if the Court were to go further, an analysis of Plaintiffs' claim compels the same result.

In defining sex based on biology rather than on self-identification, the challenged policy does not discriminate based on sex, because the sex designation for every passport must reflect the holder's immutable biological characteristics. This is materially different from a policy that treats members of

one sex differently from "similarly situated" members of the opposite sex. *Nguyen v. INS*, 533 U.S. 53, 63 (2001). In *Skrmetti*, for example, the Court rejected the suggestion that "mere reference to sex is sufficient to trigger heightened scrutiny." 605 U.S. at 512. And the Court held that a law does not discriminate based on sex if it applies equally to each sex without treating any member of one sex differently from a similarly situated member of the opposite sex. *See id.* at 515 (emphasizing that under the challenged statute, "*no* minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence; minors of *any* sex may be administered puberty blockers or hormones for other purposes"). That is the case here. Under the challenged policy, no one may self-select a marker of "M," "F," or "X" based on "gender identity"; every sex marker, for any individual, must reflect immutable biological characteristics instead. The challenged policy thus applies equally to members of each sex—defining sex for everyone in terms of biology rather than self-identification.

Plaintiffs acknowledge as much. In their own words: "Defendants have enacted a policy imposing a definition of 'sex' that affects *every person in the country in the same way*[.]" Mem. of Law in Supp. of Pls.' Mot. for Class Certification, at 6, ECF No. 78 (Class Certification Mem.) (emphasis added). "[The Department] prohibits *all people* from having on their passport a sex designation different from that mandated by the [2025] Policy." *Id.* at 16 (emphasis added). A policy that prohibits "all people" from self-selecting a marker on their passport—and thus "affects every person in the country in the same way"—is not a policy that discriminates based on sex. *Id.* at 6, 16. By analogy, it would not be discrimination based on national origin for a law to define a person's national origin as the country in which the person was born (say, India), rather than the country with which the person self-identifies (say, Pakistan for an Indian born in Kashmir). Plaintiffs may prefer an identity-based definition of sex over a biology-based one, but the government's rejection of Plaintiffs' preferred definition is not sex discrimination.

9

*Bostock v. Clayton County*, 590 U.S. 644 (2020), does not apply, and in any event, does not help Plaintiffs. At the outset, *Bostock* was a Title VII decision whose reasoning does not extend to the equal-protection context. *See Skrmetti*, 605 U.S. at 528 (Thomas, J, concurring); *id.* at 563-64 (Alito, J., concurring in part and concurring in the judgment). And regardless, the challenged policy, like the one in *Skrmetti*, does not discriminate based on sex even under *Bostock*'s reasoning, which requires sex to be the "but for" cause of discrimination. *Id.* at 520 (majority opinion). Here, "changing" a person's "sex" "does not alter the application of" the challenged policy. *Id.* If a female sought to self-select her sex marker as male on a U.S. passport, the challenged policy would prohibit such self-selection— and would require instead that her sex marker reflect her "immutable biological" characteristics, regardless of her "self-assessed gender identity." AR 005. If that person's sex is changed from "female to male," *Skrmetti*, 605 U.S. at 520, the challenged policy likewise would prohibit the person from engaging in self-selection—and would still require that the sex marker reflect the person's "immutable biological" characteristics, regardless of any "self-assessed gender identity," AR 005. Sex is therefore not "the but-for cause[,]" *Skrmetti*, 605 U.S. at 521, of a person's inability to self-select a sex marker under the challenged policy. *See also Anderson v. Crouch*, 169 F.4th 474, 493 (4th Cir. 2026) (distinguishing *Bostock* because "'changing [a Plaintiffs'] sex or transgender status does not alter' West Virginia's choice to decline [Medicaid] coverage" for sex-change surgeries (quoting *Skrmetti*, 605 U.S. at 520)). *Skrmetti* makes clear that the challenged policy does not discriminate based on sex.

### 2. *The challenged policy does not discriminate based on trans-identifying status*

The challenged policy also "does not classify on the basis of transgender status." *Skrmetti*, 605 U.S. at 517. Under the challenged policy, no person, whether trans-identifying or not, may self-select a sex marker of "M," "F," or "X." And again, Plaintiffs have so acknowledged. Class Certification Mem. at 6, 16. It is Plaintiffs who are seeking differential treatment—namely, a special accommodation from that neutral policy based on their "gender identity." *Cf. Schuette v. Coal. to Defend*

10

*Affirmative Action, Integration & Immigrant Rts. & Fight for Equal. By Any Means Necessary (BAMN)*, 572 U.S. 291, 298-315 (2014) (plurality opinion) (concluding that equal protection does not forbid banning affirmative action); *id.* at 316-17 (Scalia, J., concurring in the judgment) (same).

Even if the challenged policy discriminated based on trans-identifying status, heightened scrutiny would still be inappropriate because trans-identifying people are not a suspect or quasi-suspect class. Plaintiffs contend that trans-identifying people satisfy the multi-factor test for recognizing such a class. Mem. of Law in Supp. of Pls.' Mot. to Stay Agency Action for a Prelim. Inj., at 27–28, ECF No. 30. But since the Supreme Court fashioned the test, it has "never embraced" a new suspect or quasi-suspect class under it. *Skrmetti*, 605 U.S. at 550 (Barrett, J., concurring); *see id.* at 574-76 (Alito, J., concurring in part and concurring in the judgment) (observing that the Court has previously declined to recognize the poor, the elderly, illegal aliens, close relatives, and people with disabilities as suspect or quasi-suspect classes).

In any event, trans-identifying people do not satisfy the multi-factor test. First, trans-identifying people are not marked by the "obvious, immutable, or distinguishing characteristics" of a "discrete group[.]" *Skrmetti*, 605 U.S. at 549-50 (Barrett, J., concurring) (citations omitted); *see id.* at 574-76 (Alito, J., concurring in part and concurring in the judgment). Second, trans-identifying people have not "suffered a history of *de jure* discrimination." *Id.* at 554 (Barrett, J., concurring); *see id.* at 574-76 (Alito, J., concurring in part and concurring in the judgment). Third, trans-identifying people are not politically powerless. *Id.* at 576 (Alito, J., concurring in part and concurring in the judgment); *see id.* at 555 (Barrett, J., concurring) (noting that *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152–53 n.4 (1938), "equates political powerlessness with laws burdening those who lacked a vote"). And finally, treating trans-identifying people as a quasi-suspect class "would require courts to oversee all manner of policy choices normally committed to legislative discretion." *Id.* at 551 (Barrett, J., concurring); *cf. City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 445 (1985) (holding that

11

individuals with mental disabilities should not be treated as a quasi-suspect class because governments must have "flexibility and freedom from judicial oversight in shaping and limiting their remedial efforts").

### B.    The Challenged Policy Satisfies Rational-Basis Review

Because the challenged policy does not discriminate based on sex or any other suspect or quasi-suspect class, rational-basis review applies.  Under that standard, the government "has no obligation to produce evidence to sustain the rationality of" the policy.  *Heller v. Doe*, 509 U.S. 312, 320 (1993).  Instead, the policy "is presumed constitutional," and the burden is on the challengers "'to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record."  *Id.* at 320–21 (citation omitted).  "Where there exist 'plausible reasons' for the relevant government action, '[the Court's] inquiry is at an end.'"  *Skrmetti*, 605 U.S. at 522.  The challenged policy easily satisfies this "exceedingly deferential" standard.  *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 469 (2025)

Here, it was entirely rational for the President to decide that "'[g]ender identity'" "does not provide a meaningful basis for identification" on passports, while biological sex does.  AR 006.  As the Executive Order explains, "'[g]ender identity' reflects a fully internal and subjective sense of self," "exist[s] on an infinite continuum," and may shift over time.  *Id.*; *see id.* at 1 (describing the "concept of self-assessed gender identity" as "fluid" and "ever-shifting").  Indeed, a person who identifies as "transgender now may not be transgender later."  *Skrmetti*, 605 U.S. at 576 (Alito, J., concurring in part and concurring in the judgment).  "[S]ome transgender individuals 'detransition' later in life—in other words, they begin to identify again with the gender that corresponds to their biological sex."  *Id.* at 551 (Barrett, J., concurring).  Thus, "gender identity" is not a trait that is "immutable" or "definitively ascertainable at the moment of birth."  *Id.* (citations omitted).

12

Given the "internal, fluid, and subjective" nature of "gender identity," the President rationally rejected it as a "basis for identification" in favor of a "biological" definition of sex—one grounded in facts that are "immutable[.]"  AR 005-06.  Other designations on U.S. passports, such as a person's date or place of birth, similarly reflect immutable facts.  A person cannot simply self-identify as having been born on December 31, 1969, in Richmond, if her birth certificate says she was in fact born on January 1, 1970, in Raleigh, let alone on July 1, 1980, in New York.  The President rationally decided that, just as a person may not self-select a date or place of birth, so too a person may not self-select a sex marker, particularly for a government document such as the passport.  And in the interest of uniformity, the President rationally decided to apply the same biology-based definition of sex throughout the federal government, making no exception for passports.  AR 006.

The challenged policy thus has "a legitimate grounding" or can "reasonably be understood" to serve the government's legitimate interests in properly identifying a passport holder and in a uniform definition of sex, which are "quite apart from any [animus.]"  *Hawaii*, 585 U.S. at 706.  Because "[i]t cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the policy is 'inexplicable by anything but animus[,]'" *id.* (citation omitted), this Court's "inquiry is at an end[,]" *Skrmetti*, 605 U.S. at 522 (citation omitted).  Indeed, as the Supreme Court has noted when staying this Court's preliminary injunction, "[Plaintiffs] have failed to establish that the Government's choice to display biological sex 'lack[s] any purpose other than a bare . . . desire to harm a politically unpopular group.'"  *Orr*, 146 S. Ct. at 46 (quoting *Hawaii*, 585 U. S. at 705).  And given the existence of "plausible reasons" for the challenged policy, *Skrmetti*, 605 U.S. at 522, there is no dispute of any material facts that could affect the equal protection analysis in a rational-basis review.[3]  That is,

---

[3]    Discovery in any event would be inappropriate here because, on August 27, 2025, the government produced a certified administrative record for the challenged policy.  ECF No. 140; AR 001.  This record "'consists of all documents and materials directly or indirectly considered by [the]

Plaintiffs' allegations that something else (*e.g.*, animus) "actually motivated" the policy "is entirely irrelevant for constitutional purposes[.]" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

In sum, consistent with the Supreme Court's conclusion that the challenged policy does not "offend[] equal protection principles[,]" *Orr*, 146 S. Ct. at 46, the Court should conclude that Plaintiffs' equal protection claim fails as a matter of law.

## II.    Plaintiffs' Fifth Amendment Due Process Claims Fail as a Matter of Law.

### A.    Right to International Travel

Plaintiffs lack standing to assert a violation of their purported right to international travel because the government has not restricted Plaintiffs' ability to travel abroad.  To establish standing to challenge restrictions on international travel, a plaintiff must show that the government has actually infringed on his ability to travel abroad in a concrete manner, for example, by revoking a passport or denying a passport application.  *See Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021); *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir. 2002).  Plaintiffs cannot make that showing here because the government continues to issue passports and every class member who wants a passport can obtain one (assuming he or she complies with all other requirements) and travel internationally.  Any alleged injury from the asserted inability to travel internationally is self-inflicted because the injury stems from a personal decision not to travel with a passport that does not conform to the individual's "gender identity."  A "self-inflicted" injury—*i.e.*, an injury largely of a plaintiff's own decisions—is neither an injury cognizable under Article III nor an injury that is "fairly traceable" to the defendant's challenged conduct.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also United States v. Texas*, 599 U.S. 670, 676 (2023).

---

agency decision-makers and includes evidence contrary to the agency's position[,]'" *Towns of Norfolk & Walpole v. U.S. Army Corps of Eng'rs*, 137 F.R.D. 183, 185 (D. Mass. 1991.) (citation omitted), *aff'd*, 968 F.2d 1438 (1st Cir. 1992), and Plaintiffs did not move to supplement the record or obtain extra-record discovery.

In any event, even if Plaintiffs have standing, their right to international travel claim fails. "The [Supreme] Court has made it plain that the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig*, 453 U.S. at 306; *see also Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) ("constitutional right to interstate travel" is not "equivalent" to "the freedom of international travel"). While "'[t]he constitutional right of interstate travel is virtually unqualified, . . . the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment.'" *Califano*, 430 U.S. at 176 (quoting *Califano v. Torres*, 435 U.S. 1 (1978)) "'As such this 'right' . . . can be regulated within the bounds of due process.'" *Id.* (citation omitted). And policies that merely have "an incidental effect on a protected liberty," *i.e.*, policies that do not have a "direct . . . impact on the freedom to travel internationally[,]" are constitutional unless "wholly irrational[.]" *Id.* at 177; *see also Dearth v. Lynch*, 791 F.3d 32, 38 n.1 (D.C. Cir. 2015) (claimed violation of right to international travel "trigger[s] nothing more than rational-basis scrutiny"); *Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 604 (7th Cir. 2009) ("The Supreme Court affords great deference to restrictions on international travel so long as they are justified by a rational foreign policy consideration."); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996) ("Given the lesser importance of . . . freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for imposing the ban.").

Here, the challenged policy has no more than "an incidental effect" on Plaintiffs' ability to travel internationally. Unlike *Maehr* and *Eunique*, the policy does not preclude Plaintiffs from applying for or obtaining a passport; indeed, Plaintiffs' ability to travel abroad is not infringed whatsoever. The policy merely requires all new passports to display a "historical fact": an individual's biological sex, and as discussed above, the government's justification for the policy is far from "wholly irrational."

15

*Supra* at 12–13 (policy easily clears rational-basis review). Therefore, Plaintiffs' right to travel claim fails as a matter of law.

### B.    Right to Informational Privacy

Plaintiffs' purported constitutional right to keep their biological sex private fares no better. While there is an "individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 599 (1977), "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition'" receive substantive-due-process protection, *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "The right to [having] a [passport] conform[] to one's gender identity[,]" however, "is not 'deeply rooted' in our history[.]" *Gore v. Lee*, 107 F.4th 548, 562 (6th Cir. 2024) (rejecting substantive-due-process challenge to Tennessee law requiring that birth certificates conform to biological sex). "The concept of 'gender identity' did not enter the English lexicon until the 1960s." *Id.* (citing David Haig, *The Inexorable Rise of Gender and the Decline of Sex: Social Change in Academic Titles, 1945–2001*, 33 Archives Sexual Behav. 87, 93 (2004)). As discussed above, it was not until 1992 that passport applicants could request to amend their sex marker on their passport, and even then, they could do so only after proof of sex-reassignment surgery. The Department did not allow "X" gender markers until 2021. "On this historical record, the claimed right to change an individual's sex on a [passport] to reflect the person's gender identity is not deeply rooted in our history." *Id.* It is not surprising then that Plaintiffs cite no Supreme Court precedent recognizing a fundamental right to keep one's biological sex private when applying for a government document such as a passport. *See Munoz*, 602 U.S. at 910 ("Identifying unenumerated rights carries a serious risk of judicial overreach, so this Court 'exercise[s] the utmost care whenever we are asked to break new ground in this field.'" (quoting *Glucksberg*, 521 U. S., at 720)). *See also Corbitt v. Sec'y of Ala. Law Enf't Ag.*, 115 F.4th 1335, 1351 (11th Cir. 2024)

16

(rejecting due process claim based on right to informational privacy because there is no "constitutional privacy interest" in the sex designation displayed on driver's licenses).

Plaintiffs allege that the policy "force[s] disclosure" of "highly sensitive and personal medical information[,]" namely their biological sex, Am. Compl. ¶¶ 310, 312, 314, something that all passport holders must disclose. Importantly, the challenged policy "does not disclose [Plaintiffs'] transgender status." *Gore*, 107 F.4th at 563. "It simply maintains a uniform meaning of 'sex'" on federal records, including passports. *Id.* The challenged policy also "does not force or allow disclosure of [the] mismatch" between Plaintiffs' biological sex and gender identity. *Id.* at 563–64. Rather, "sex at birth" on a passport is merely a "historical fact" that the government is attesting to a foreign nation for purposes of requiring entry and protection. *Orr*, 146 S. Ct. at 46.

"At bottom, the plaintiffs' claim fits poorly with the Due Process Clause" because "[t]here is no deeply rooted right to a [passport] matching one's gender identity. And the Due Process Clause does not require [the government] to create one." *Gore*, 107 F.4th at 565. Having failed to establish a fundamental right to keep their biological sex private, rational-basis review applies to Plaintiffs' right to informational privacy claim, and the challenged policy easily clears that standard. *Supra* at 12–13.

## III. Plaintiffs' First Amendment Claim Fails as a Matter of Law.

Plaintiffs' claim that the government is impermissibly compelling them to convey a message— their biological sex—that they disagree with in violation of the First Amendment. Am. Compl. ¶¶ 316–23. This claim is fundamentally flawed because as the Supreme Court has held, an individual's biological sex is a "historical fact[,]" not compelled viewpoint messaging that may implicate the First Amendment. *Orr*, 146 S. Ct. at 46. Moreover, a U.S. passport is "a Government document" that represents the speech of the government "with foreign affairs implications," *id.*, and the First Amendment does not regulate government speech.

17

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Assoc. of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "The Clause prohibits government entities and actors from 'abridging the freedom of speech.'" *Id.* Likewise, "[g]overment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Id.* at 180. But "[w]hen government officials are 'engaging in their own expressive conduct . . . the Free Speech Clause has no application.'" *Id.* (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009)). That is, "[t]he government can 'say what it wishes' and 'select the views that it wants to express.'" *Id.* (quoting *Pleasant Grove City*, 555 U.S at 467–68).

Plaintiffs' First Amendment claim fails as a matter of law because, unlike compelled private speech cases, *e.g.*, *Wooley v. Maynard*, 430 U.S. 705 (1977) (messaging on license plates on privately-owned vehicles); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 627 (1943) (students' salute to the American flag and recitation of Pledge of Allegiance), the government's speech on government property "is exempt from First Amendment scrutiny." *Johanna v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005). A passport is "a Government document" "with foreign affairs implications." *Orr*, 146 S. Ct. at 46. At its core, a passport is an instrument of diplomacy through which the President, on behalf of the United States, "in effect request[s] foreign powers to allow the bearer to enter and to pass freely and safely, recognizing the right of the bearer to the protection and good offices of American diplomatic and consular officers." *United States v. Laub*, 385 U.S. 475, 481 (1967). It is also an official communication "by which the Government vouches for the bearer and for his conduct." *Haig*, 453 U.S. at 293. It is "addressed to foreign powers; . . . and is considered . . . in the character of a political document," *id.* at 292 (quoting *Urtetiqui*, 34 U.S. (9 Pet.) at 698), and passports "will be construed as reflections of American policy," *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 6–7 (2015). Additionally, "the information contained in the passport is unquestionably government speech," *Doe v. Kerry*, Civ.

18

A. No. 16-0654, 2016 WL 5339804, at *16 (N.D. Cal. Sep. 23, 2016), and a "passport at all times remains the property of the United States," 22 C.F.R. 51.7(a). Therefore, "the Free Speech Clause has no application" here. *Pleasant Grove City*, 555 U.S. at 467. *See also Corbitt*, 115 F.4th at 1352 (rejecting compelled speech claim regarding biological sex on driver's licenses because such speech is "government speech—not compelled speech").

Rather than being compelled to speak, Plaintiffs seek to compel the government to convey their preferred sex identifier on a government document. But the government must have "the authority to control its own message when it speaks or advocates a position it believes is in the public interest." *Chiras v. Miller*, 432 F.3d 606, 612 (5th Cir. 2005); *see also Doe v. Kerry*, 2016 WL 5339804, at *16 (the United States, not the passport holder, must be allowed to control the content of the passport); *Zivotofsky*, 576 U.S. at 32 (the President has "the exclusive power" over passport recognition determinations). Without that ability, "government would not work." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). The government would not be able to implement the policy goals and uniformity it seeks "if officials also had to voice the perspective of those who oppose" the Government's message. *Id.* "'[I]t is not easy to imagine how government could function if it lacked th[e] freedom' to select the messages it wishes to convey." *Id.* (quoting *Pleasant Grove City*, 555 U.S. at 468).

In sum, there is no First Amendment violation, and the claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment on Plaintiffs' constitutional claims (Counts 1, 2, 3, 4, and 5).

Dated: June 29, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

/s/ M. Jared Littman

M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-5578
Fax: (202) 616-8470
E-mail: Jared.Littman2@usdoj.gov

*Attorneys for Defendants*

20